**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | |
| MICHAEL RABBITT, | ) | Judge April M. Perry |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and | ) | |
| BRIAN STRAW | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL

The overheated rhetoric in the Government's Response seems to flow from a conspicuous disregard of the undeniable fact that the Trump Administration and the current Department of Justice have shattered the time-honored norms that ensured the independence of the Department and guarded against even the appearance of partisan politics and/or personal vendettas infecting prosecutorial decisions. As such, far from "fevered paranoia" or "delusional speculation" (Govt. Resp., Dkt. 110, at p. 3), Defendants' requests for discovery are entirely reasonable – indeed, necessary – to ensure, as stated in the opening brief, that "the charging decisions in this case were not made for improper purposes directed by the White House or associates of the Trump Administration." (Mot. to Compel, Dkt. 94, at p. 7). Put plainly, one would have to be living under a rock to not recognize that in these unprecedented times, the current Administration has repeatedly placed its heavy thumb on the scales of justice in an effort to use the Department's formidable criminal apparatus as a weapon against those it views as its political enemies.

Rather than addressing the public evidence cited by Defendants, the government accuses defense counsel of being "grossly disingenuous and thoroughly irresponsible" (Govt. Resp. at p.

1

3) for having the temerity simply to ask if there is any evidence in this case – the type of evidence undeniably present in numerous other publicized cases – of the White House or Administration appointees targeting individuals for criminal investigation, demanding or directing prosecutions, or inserting itself into what heretofore had been independent professional prosecutorial decisions. As we noted, the public record is replete with instances of this Administration weaponizing the Department of Justice ("DOJ") to retaliate against and silence perceived political enemies and those that oppose its agenda, including the Clintons, the former Director of the FBI, the New York State Attorney General, the former CIA Director and National Security Advisor, the Fulton County (Georgia) District Attorney, two separate Federal Reserve Board Members including the Chairman, and no less than 6 sitting members of Congress, each of whom is a decorated military or intelligence service veteran. Many of these undeniably politically-motivated investigations and prosecutions pursued by the current DOJ at the behest of the White House were documented in a Washington Post article published on September 22, 2025[1], just four days before the four remaining defendants here went to the ICE Detention Center in Broadview to protest the Trump Administration's Operation Midway Blitz.

Less than three weeks later, on October 9, 2025, Reuters published a story about the Administration deploying the FBI and DOJ to target left-wing groups who protested its policies, raising alarms among civil rights groups.[2] These are just two of a veritable plethora of public media accounts of how *this* White House and *this* DOJ have upended venerable DOJ principles and established traditions that preserved its previously prized independence from direct White House and political pressure.

---

[1] https://www.washingtonpost.com/national-security/2025/09/22/trump-justice-department-prosecutions/

[2] https://www.reuters.com/legal/government/trumps-war-left-inside-plan-investigate-liberal-groups-2025-10-09/

The government's response fails to appreciate that Defendants' discovery requests arose not in isolation, but against the backdrop of this unprecedented climate of White House-directed and DOJ-implemented vindictiveness and targeted retaliation against those who oppose their policies and conduct. This climate never existed before, including during the time that the three former AUSAs defending this case proudly served in the U.S. Attorney's Office for the Northern District of Illinois.

The government assures the Court and the public that "officials in Washington" would never target "politically obscure figures," like these defendants or somehow recognize them as "enemies" of the Administration. (Govt. Resp. at 2). Yet the record makes clear that *a high-level White House official did exactly that with one of the Defendants in this case*. The government must have overlooked the portion of Defendants' submission (Def. Mot. at pp. 3-4) showing that the White House Deputy Press Secretary, Abigail Jackson, explicitly and publicly targeted Defendant Abughazaleh for criminal prosecution on September 19, 2025, based on Ms. Abughazaleh's protest activities at the Broadview Facility. After Ms. Abughazaleh posted video of a CBP officer violently slamming her to the ground, Ms. Jackson directly addressed Ms. Abughazaleh in an official White House statement and called for her prosecution, stating: "Obstructing law enforcement (which is what you just posted a video of yourself doing) isn't a First Amendment right. *It's a crime.*"[3] (emphasis added). Contrary to the government's assertion, the targeting of Ms. Abughazaleh is not a "nonsensical hypothesis," (Govt. Resp. at. 2), it is a demonstrable – indeed, now demonstrated – fact.[4] Quite clearly, White House officials were

---

[3] Post by White House Deputy Press Secretary Abigail Jackson (@ATJackson47), available at: https://x.com/atjackson47/status/1969062022466744425?s=10 (last visited March 9, 2026).

[4] The government's assertion that it as a "nonsensical hypothesis" that "officials in Washington" would have an interest in "local Illinois government" (Response, at 2) is also belied by the documented fact that

3

following Ms. Abughazaleh's protest activities at the Broadview Facility, accused her of criminal conduct for those activities, and expressly called for her prosecution.[5]

And it was not just White House officials that showed interest in Ms. Abughazaleh and the political activities of the other Defendants. Recently produced discovery in this case indicates that Agent A (the ICE agent who drove his SUV into the protesters) reported to senior ICE officials that several public office-holders and political candidates were indicted in this case based on his testimony. In an October 23, 2025 email, produced on March 25, 2026 to the defense, Agent A wrote to three senior ICE officials, and shared that an indictment had been returned, adding:

> Of note, Among the 6 defendants, there is a US congressional candidate, a 45th ward Committee Person, and a Oak Park/Oakbrook Board of Trustees Member.

(FBIMAIN_003-000134).

Similarly, in a text message to unknown associates dated October 29, 2025, the day the indictment was unsealed, Agent A initiated the following exchange, which highlighted a post about Ms. Abughazaleh and the charge against her:

___

high-ranking Washington officials expressly targeted politicians at every level of government who dare oppose this Administration's war on immigrants. *See*, https://www.foxnews.com/politics/operation-midway-blitz-inside-dojs-push-tackle-crime-illegal-immigration-chicago (detailing FBI Director Kash Patel and Deputy Assistant Attorney General Todd Blanche, two "officials in Washington" commenting on statements made by "local politicians" regarding protesting activity in the Chicago area and pushing for the arrest and prosecution of protestors Mr. Blanche refers to as "domestic terrorists."). It bears noting that Mr. Blanche personally provided a lengthy quote in the DOJ's October 29, 2025, press release announcing the indictment in this case, which began, "No one is above the law and no one has the right to obstruct it."

[5] As we previously noted, Lara Loomer, a trusted confidante and influencer of the president, publicly relished the violence inflicted upon her. *See*, Laura Loomer, Sept. 19, 2025, X, ("I love watching communists get body slammed by ICE. Communist and Palestinian. Pick a struggle. @KatAbughazaleh"). Ms. Abughazaleh was a right-wing target before her congressional candidacy due to her reporting on right-wing extremism. Her candidacy amplified her platform and increased her exposure to being targeted— especially after she focused on the Administration's aggressive immigration enforcement actions, particularly at the Broadview Facility where she was a frequent protestor. *See* Maia McDonald, *Inside the Viral Kat Abughazaleh ICE Rally Tear-Gassing Video: "Fascism 101"*, TeenVogue, Sept. 30, 2025 (available at: https://tinyurl.com/493ujnkj) (last visited Mar. 31, 2026).

(FBIMAIN_003-000038).

Against the backdrop outlined in Defendants' Motion to Compel and further bolstered by recently produced discovery, Defendants' Motion to Compel was – and is – both well-founded and amply supported by the facts pled and those documented in the record. It was not filed cavalierly, but with the seriousness and urgency warranted by this Administration's now clear pattern of vindictively targeting individuals for prosecution and its unprecedented weaponization of the DOJ for political ends, coupled with the White House's explicit attention to Ms. Abughazaleh and its public urging that she and other Broadview protesters were criminals. Numerous other factors

5

outlined in Defendants' opening brief – which will not be repeated here – further buttress the necessity and propriety of the motion.

We presume the government's rhetoric is an expression of indignation based on its erroneous view that the "*only* logical conclusion" (emphasis in original) to be drawn from Defendants' motion is that defense counsel believe that the AUSAs who indicted this case (and their supervisors) would willingly violate multiple ethical and legal standards to go along with illegitimate orders.  (Govt. Resp. at pp. 2-3).  That is far from the "only" logical conclusion to be drawn from the motion, and it is not the assertion made by Defendants here.  For example, even if the local prosecutors acted ethically and without animus, the fact of a directive from the White House or other Administration appointee, would nonetheless support dismissal of the indictment. As Defendants took pains to explain in our opening brief:

> Importantly, to prevail on such a motion, **the Defendants do not need to show animus of the line AUSAs or to the U.S. Attorney here in Chicago, nor are we alleging such.** Rather, the required animus may be imputed to a prosecutor when an external force "in some way prevailed upon the prosecutor in making the decision to seek an indictment." *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996). *See also United States v. Adams*, 870 F.2d 1140, 1146, 1148 (6th Cir. 1989) (vacating conviction and granting defendant's request for discovery on the issue of whether "the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken"); *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (recognizing that vindictive prosecution may be established when prosecutor was "prevailed upon to bring the charges by another with animus").

(Def. Mot. at p. 23)(emphasis added).  Indeed, many of defense counsel have worked on numerous matters with the AUSA who indicted this case and has since withdrawn from it, and while we may disagree with that AUSA's willingness to bring this case, none of us has had occasion to question that AUSA's ethics and do not do so now.  Unfortunately, rather than engaging with the evidence

and Defendants' reasoned arguments, the government rashly characterized Defendants' sincere assertions in this regard as "pusillanimous." (Govt. Resp. at p. 2). The government is entitled to its uncharitable view of this discussion and the salient facts of record.  But it nonetheless remains an accurate statement of the law.  If the White House or another Administration official had directed or demanded the indictment of these individuals, regardless of the good faith of the local prosecutors, Defendants are entitled to those communications. And the request for them was properly made without impugning the honor of anyone in the Chicago U.S. Attorney's Office.

The government spends some time discussing *United States v. Armstrong* which, for present purposes, stands for the proposition that in order to obtain discovery on a motion to dismiss for selective prosecution (a motion not yet filed by Defendants), the Defendant must put forward evidence that the government declined to prosecute other similarly situated individuals. 517 U.S. 456 (1993). The government then claims no others who participated in the same/similar conduct as the Defendants that day were charged because no one else "could [] be identified because they were wearing masks or other coverings that obscured their faces, making a positive identification nearly impossible." (Govt. Resp. at 4).  And to prove its point, the government pastes in its brief a few screenshots showing people with facemasks around the SUV driven by Agent A. *Id*. at 4-5. That claim by the government – that no one else engaged in the same behavior as Defendants could be identified because they were all wearing masks – however, is easily disproved.  Attached as Exhibit A is a sampling of screenshots from videos of the incident showing several people who were engaged in the same interaction with Agent A's SUV as Defendants and whose faces are clearly unmasked and identifiable – particularly given the fact reported to the Court by the government that it (the government) employed facial recognition software in its investigation of

this case. In short, even though not required at this pre-motion stage, Defendants *have* made the threshold showing described in *Armstrong*.

We can certainly dispute other aspects of the government's response proffering an explanation as to why these defendants were indicted and others – including, as described above, a good number who were *not* wearing face-masks and were present at the same protest, on the same day, and engaged in the same conduct – were not. We will not do so at this time because, vitriol aside, the government's response contains the following affirmative and categorical statements:

> [T]here are **no** communications of any nature from, to, or with **anyone** outside the USAO (other than the local FBI investigators assigned to the case) regarding any investigatory or charging decisions. To be crystal clear, this specifically includes anyone in the White House and all components and offices of Main Justice.

(Dkt. 110 at pp. 2-3)(emphasis in original)(footnote omitted).

We do not question the good-faith of the prosecutor making that assertion (who was just recently assigned to this case), nor do we have a basis at this point to dispute its accuracy. But by the same token, ***the government has not shown either the Court or the Defendants that it has conducted a proper search for any such communications***, and therefore it has not set forth the factual basis for this broad categorical assertion. This is a glaring omission. Accordingly, upon receiving the Government's brief, Defense counsel sent an email to the prosecution team asking them to inform us what investigation was done to ascertain whether evidence of any such communications exists. (Ex. B, highlighted). To date, the government has not responded to that request.

We respectfully submit that absent a proper search of defined email, text, and phone records, and inquiring of the principals (at a minimum), neither the Defendants nor the Court can

8

be assured that no such evidence exists. Accordingly, we respectfully make the modest request that the Court direct the government to disclose what specific investigation and record searches it undertook to look for the requested information, and the foundation for the government's unequivocal representation that no such information exists. Without knowing these very rudimentary, foundational pieces of information – *e.g.*, Where did they look? What record searches were conducted? Who did they interview? – the Defendants cannot fairly urge their position, and the Court cannot fairly come to any conclusion on this issue. If the government did, in fact, conduct a proper investigation and thorough search for the requested records, it would be no burden at all to provide that information to us. But if it has not yet done that, we respectfully submit it must be ordered to do so promptly.

Respectfully submitted,

<div style="display:flex;">
<div>

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2900
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Theodore Thomas Poulos**
**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tpoulos@cotsiriloslaw.com
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

</div>
<div>

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com
*Attorney for Katherine Marie Abughazaleh*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*

</div>
</div>

9

## CERTIFICATE OF SERVICE

Terence H. Campbell, an attorney, hereby certifies that in accordance with Fed.R.Crim.P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

- Defendants' Reply in Support of Motion to Compel

served pursuant to the District Court's ECF system as to ECF filers, including the United States Attorney's Office.

/s/ *Terence H. Campbell*