UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 25 CR 693 |
| v. | |
| MICHAEL RABBITT, et al. | Judge April M. Perry |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS**

## I.      Introduction

Defendants seek to dismiss Count One of the indictment on the grounds that it violates their First Amendment rights to speech and assembly. They spend the first 14 pages of their 18-page brief recounting their own subjective interpretation of the "facts" surrounding the incident and reciting boilerplate regarding the sufficiency of an indictment and the standards to challenge that sufficiency under Fed. R. Crim. Pro. 12. Mot. at 1-14. But their conclusory argument that 18 U.S.C. § 372 is unconstitutional on its face and as applied to them, Mot. at 14-18, fails to demonstrate that this prosecution implicates their First Amendment rights to speech and assembly **_at all_**. In fact, no one—certainly not the government—disputes that defendants had the right to peacefully assemble and protest near the ICE facility on September 26, 2025. However, they are not being prosecuted for their speech or assembly. They are instead charged only with criminal **_conduct_**—specifically, the use of force and intimidation against Agent A to prevent him from discharging the duties of his office. Additionally, defendants have not shown that § 372 fails to provide adequate notice of what conduct is proscribed or encourages the arbitrary

1

enforcement of its provisions. Their motion to dismiss Count One therefore must be denied.

## II. It Is Defendants' Burden to Show That § 372 Is Unconstitutional

Defendants incorrectly claim that because they challenge the indictment on First Amendment grounds, "the burden is on the government to show the constitutionality of the prosecution." Mot. at 8. As support for that erroneous assertion, they rely on the statement in *United States v. Playboy Entertainment Group*, 529 U.S. 803, 816-17 (2000), that "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." But defendants' reliance on *Playboy* presupposes that this case concerns a restriction on speech in the first place. It does not.

If the defendants had simply gathered in Broadview and screamed and waved signs at Agent A, their First Amendment arguments would have force. Yet even the most cursory review of the multiple videos capturing the incident clearly shows that is not what happened. Contrary to their version of events—that Agent A drove his vehicle into their peaceful assembly and thus caused his vehicle to become surrounded—the defendants deliberately blocked the vehicle's progress with their bodies. That is conduct, and not speech protected by the First Amendment.

Moreover, the Supreme Court has made clear that it is defendants' burden to show that a statute is unconstitutional, not on the government to prove the negative. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("Although it is common to place the burden upon the Government to justify

2

impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."); *Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017) ("[I]n proving a First Amendment claim, the initial burden is on the plaintiff to demonstrate that his conduct was constitutionally protected.") (quoting *Yahnke v. Kane County, Ill.*, 823 F.3d 1066, 1070-71 (7th Cir. 2016)). This burden applies both to showing that a statute is unconstitutional on its face, *see, e.g., United States v. Stevens*, 559 U.S. 460, 472 (2010) (explaining that it is defendant's burden to mount a facial challenge to a criminal statute under the First Amendment); *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025) ("To prevail on a facial challenge, [defendant] must show that the statute is unconstitutional in all applications."), as well as to showing that the statute cannot constitutionally be applied to a particular defendant, *see United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) (noting, in the context of a vagueness challenge, that "a litigant challenging the statute ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applied to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios"). Defendants have failed in both regards.

### A.    § 372 is Not Overbroad or Void for Vagueness

The rules governing a facial challenge to a criminal statute are clear:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should

3

uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Village Of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 495 n.7 (1982) (cleaned up). "The first step in a vagueness inquiry is to examine the plain language of the statute." *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010). Defendants must show that § 372 does not give "fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). There is nothing in § 372 that suggests it permits arbitrary enforcement. It is remarkably straightforward and clear—the statute prohibits individuals from conspiring to keep government employees from doing their jobs. *See United States v. Ehmer*, 87 F.4th 1073, 1120 (9th Cir. 2023) (explaining that "the crucial element separating legal innocence from wrongful conduct is that the defendant conspires to prevent an employee from discharging his or her duties by force, intimidation, or threat") (citation and quotation marks omitted); *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010) ("[In] order to sustain a conviction [for § 372], the government must submit sufficient evidence to prove that (1) a conspiracy existed, (2) the [defendants] voluntarily entered into the conspiracy, and (3) the members of the conspiracy conspired to prevent by force, intimidation or threat, an officer of the United States from discharging her duties."). And § 372's terms are readily defined. "Force" and "intimidation" are neither complicated terms nor ones that evade common understanding. *Webster* dictionary

4

defines "force" as "physical strength, power, or effect." *See Mirriam-Webster Dictionary*, http://www.merriam-webster.com. The term "intimidation" is equally clear, where *Webster* defines "intimidation" as "to make (someone) afraid." *Id*. As such, they are not constitutionally vague. *See, e.g., United States v. Payne*, No. 216CR00046GMNPAL, 2017 WL 8941311, at *4 (D. Nev. Jan. 3, 2017), *report and recommendation adopted*, No. 2:16-CR-46-GMN-PAL, 2017 WL 480392 (D. Nev. Feb. 2, 2017) ("The statutory terms 'force, intimidation, or threat' are not complicated terms or terms difficult to understand; rather, they are common in federal criminal law and defined in dictionaries."); *United States v. Fulbright*, 105 F.3d 443, 452 (9th Cir. 1997), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (rejecting vagueness challenge).

Any claim that § 372 is ambiguous is not the same as demonstrating that it is so standardless that it fails to give fair notice or invites arbitrary enforcement. *See Heyman v. Cooper*, 31 F.4th 1315, 1323 n.6 (11th Cir. 2022) ("A word or phrase is ambiguous when the question is which of two or more meanings applies; it is vague when its unquestionable meaning has uncertain application to various factual situations." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 32 (2012)); *see also id*. (text is not vague where its "possible applications are finite").

At bottom, defendants' vagueness claim appears to be no more than a bald assertion that § 372 should not apply to them—a question to be resolved at trial. Although they argue that the indictment's allegations are premised upon their

protected First Amendment activities, saying so repeatedly does not make it so—and the cases they rely upon involved laws that actually punished speech and are clearly distinguishable from § 372's focus on *mens rea* and physical conduct. Mot. at 12, *citing Edwards v. South Carolina*, 372 U.S. U.S. 229 (1963), and *Hill v. Colorado*, 530 U.S. 703 (2000).

Their claims regarding overbreadth are equally meritless. That doctrine permits an attack on "overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *United States v. Bonin*, 932 F.3d 523, 536 (7th Cir. 2019) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)). A successful overbreadth challenge requires a showing that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Sheikh*, 164 F.4th 629, 634 (7th Cir. 2026) (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)); *see also United States v. Williams*, 553 U.S. 285, 292 (2008).

Facial challenges are "hard to win" by design. *NetChoice*, 603 U.S. at 723. That is so because "[c]laims of facial invalidity often rest on speculation about the law's coverage and its future enforcement" and "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id*. And overbreadth challenges are even harder still where a challenged statute, on its face, addresses conduct and not speech, such as § 372. *See Virginia v. Hicks*, 539 U.S. 113, 124 (2003) ("Rarely, if ever, will an overbreadth challenge

succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).").

Defendants do not even attempt to provide any evidence or case law suggesting that a substantial number of § 372's applications are unconstitutional. Nor can they. As they acknowledge, the relevant clause of § 372 has been on the books since the Civil War.[1] Mot. 4 n.5. Yet defendants have not identified a *single* successful First Amendment challenge to a § 372 prosecution since that time. The government has likewise not found any. To the contrary, the government has only identified cases *rejecting* First Amendment challenges to § 372.

Courts have observed that several features about § 372 ensure its constitutionality. For example, consistent with *Hicks*, courts have rejected facial challenges to § 372 because the statute—by its terms—"criminalizes conduct and not merely speech." *See Payne*, No. 2:16-CR-46-GMN-PAL, 2017 WL 480392, at *9; *United States v. Bundy*, No. 3:16-CR-00051-BR, 2016 WL 3156310, at *3 (D. Or. June 3, 2016) (holding that "Section 372 does not regulate or chill speech otherwise protected by the First Amendment," as it is a "conspiracy statute that, by its nature, requires an intent to prevent a federal officer from discharging his or her duties by force, threat, or intimidation."). Indeed, § 372 has been applied to a wide variety of

---

[1] Defendants lament that they were indicted under a statute whose drafters "intended to target those bent on seditious conspiracy and to protect elected officials." Mot. at 4 n.5. That is not how statutory interpretation works. Nothing about the plain text of § 372 suggests that it is so limited. And of course, the interpretation of a text is not limited by the unstated intent or imagination of its drafters. *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674 (2020) (holding that the plain text of the Civil Rights Act of 1964 prohibits discrimination for gay and transgender employees).

contexts that do not bear on expressive activity at all. *See, e.g., United States v. Gerhard*, 615 F.3d 7, 12 (1st Cir. 2010) (conviction for "supporting two convicted criminals during a well-publicized, nine-month standoff with federal authorities," including through the acquisition of firearms and explosives); *United States v. Barber*, 442 F.2d 517, 523 (3d Cir. 1971) (conviction for "a concerted effort, albeit somewhat spontaneous in plan and execution, to assist a neighborhood youth to escape from the custody of federal agents").

Moreover, even where § 372's "force" and "intimidation" clause does implicate speech, it is not *protected* speech. *See Fulbright*, 105 F.3d at 452 (finding that § 372 was not an overbroad content and viewpoint regulation in violation of the First Amendment and no legitimate free speech interest was implicated). As the Supreme Court has long held, the First Amendment does not create an "immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *see also United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) (citing § 372 in highlighting that "speech is not protected by the First Amendment when it is the very vehicle of the crime itself"); *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970) (same). Here, § 372's "prohibition is on the nature of the speech or conduct, not simply the speech or conduct itself." *Payne*, No. 2:16-CR-46-GMN-PAL, 2017 WL 480392, at *3.

Finally, even when speech is involved, courts have appropriately interpreted § 372's "intimidation" language to avoid any constitutional problems. Section 372 ensures that protected speech is not covered because the defendant "must intend his

8

or her words or conduct to intimidate or to be a threat," and the "words or conduct" must be such that "a reasonable person hearing or observing them would foresee that they would be interpreted as a serious expression of intent to harm or assault." *United States v. Ehmer*, 87 F.4th 1073, 1121 (9th Cir. 2023) (upholding jury instruction to that effect in a § 372 case); *Payne*, No. 216CR00046GMNPAL, 2017 WL 8941311, at *9 (D. Nev. Jan. 3, 2017) ("The *mens rea* requirement of § 372 prevents the statute from applying to mere hyperbole or criticism of government officials or to circumstances in which an official subjectively felt intimidated or threatened because this type of conspiracy requires proof the defendant intended to prevent the officer from discharging his or her duties, and proof the defendant accomplished that objective by using force, intimidation, or threats.").

In short, § 372 does not run afoul of the First Amendment on vagueness or overbreadth grounds. At a minimum, defendants' rank speculation to the contrary is not enough to bear their burden of showing that § 372 is facially invalid. *See NetChoice*, 603 U.S. at 723.

> **B.      Defendants' Claim that § 372 is Unconstitutional as Applied is Not Suitable for Resolution Pretrial and is Otherwise Meritless.**

Defendants fare no better on their as-applied claim. At best, defendants' as-applied challenge is premature because it depends on disputed facts. Regardless, as explained below, defendants' as-applied challenge is meritless.

> **1. Defendants' as-applied challenge rests on factual disputes and is thus inappropriate for pretrial resolution.**

Defendants' argument that § 372 is unconstitutional as applied to the facts of this case cannot be resolved pretrial because the motion depends on factual disputes that must be resolved by the trier of fact. *See* Fed. R. Crim. P. 12 (b)(1), (3) (pretrial motions are limited to those that can be determined "without a trial on the merits"). The Supreme Court has long recognized that motions can only be resolved pretrial "if trial of the facts surrounding the commission of the alleged offense would be of *no assistance* in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969) (emphasis added). Thus, as-applied constitutional challenges are inappropriate for resolution pretrial where they are inherently fact-laden. *See, e.g., United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010) (Gorsuch, J.) (concluding that as-applied Second Amendment challenge to § 922(g)(9) could not be brought pretrial because the defendant "contends the statute is unconstitutional only in light of the 'facts surrounding the commission of the alleged offense'—the very facts a court may not consider before trial" (citation omitted)).

Courts have applied these principles to reject pretrial as-applied challenges to § 372. *United States v. Santilli, Jr.*, No. 216CR00046GMNPAL, 2017 WL 1305231, at *9 (D. Nev. Jan. 6, 2017), *report and recommendation adopted sub nom. United States v. Santilli*, No. 2:16-CR-0046-GMN-PAL, 2017 WL 343902 (D. Nev. Jan. 23, 2017) (rejecting pretrial as-applied challenge that speech did not count as true threat under § 372, as "the court does not decide whether the government can prove its case"); *Bundy*, No. 3:16-CR-00051-BR, 2016 WL 3156309, at *2 (rejecting claim that conduct

10

was protected by the First Amendment because "[d]efendant's Motion presents arguments that can only be determined after the government has a full opportunity to present its case at trial"). Defendants are instead free to challenge any conviction in post-trial motions—either based on the sufficiency of the evidence or based on proof their conduct constitutes protected speech under the First Amendment. *See Santilli*, No. 216CR00046GMNPAL, 2017 WL 1305231, at \*9.

Here, pretrial resolution of defendants' as-applied challenge is not warranted because defendants' theory rests on clearly disputed factual contentions, including that:

- Defendants' conduct was "quite benign" and consistent with "passive resistance protest." Mot. at 3;

- Agent A "initiated contact with the protestors, including Defendants," Mot. at 13—a claim consistent with defendants' previous assertion that Agent A was the "real aggressor," Dkt. 87 at 18;

- Defendants braced themselves only in a defensive manner against Agent A's SUV. Mot. at 13; and

- The only evidence for the conspiracy is that "all Defendants were in the same location, participating in a public assembly [and] advocating the same political message." Mot. at 14.

The indictment and discovery belie these contentions. In fact, they are nothing more than defendants' subjective framing that they intend to present to the jury. But it will be the jury alone that will determine whether their account is correct, and it is not for this Court to preempt that core function. *See United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) ("a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial") (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)). Defendants' contention that no

11

conspiracy existed is particularly unripe for resolution in a pretrial posture, as this Court has already concluded in rejecting their motion for a bill of particulars.

### 2. If this Court does consider defendants' pretrial as-applied challenge, it should reject it.

Even in a pretrial posture, it is clear that defendants cannot succeed in showing that § 372 is unconstitutional as applied to them.

Much of defendants' Motion merely recounts undisputed platitudes about the First Amendment. *See* Mot. at 6-12. No one disputes that the First Amendment protects the right to free speech or assembly, or that such rights are "broad" and "important." *Id.* at 9-10. Nor does anyone dispute that members of the public are free to express their political views—including their opposition to ICE and immigration enforcement efforts—through peaceful protest. *Id.* at 12. Nor does the government contest that certain of the demonstrations outside the Broadview facility did constitute peaceful protest activity protected by the First Amendment. *Id.* at 12-13.

However, none of these undisputed observations bear on this case. The question in defendants' as-applied challenge—and this case more generally—is whether defendants and their co-conspirators were entitled to cross the line from peaceful protest to impeding Agent A from going to work at the Broadview facility through force or intimidation, in violation of § 372. They were not. Defendants' arguments that their actions—as alleged in the indictment, and as shown in discovery—"are inseparable from the exercise of their constitutional right to assemble" are nothing but wishful thinking. Mot. at 3. To the contrary, choosing to deliberately join a mob of like-minded people and knowingly engaging in concerted

12

unlawful action is what is commonly known in the law as an illegal conspiracy. The First Amendment does not give the defendants free rein to join a large group and use force and intimidation to prevent the discharge of a federal official's duties under the guise of voicing their displeasure with ICE or immigration enforcement. And they cite no authority for the proposition that their **actions** to obstruct and impede a federal law enforcement officer were protected by the right to free assembly. The First Amendment does not give defendants and their co-conspirators *carte blanche* to impede and prevent by force and intimidation a law enforcement officer from discharging his duties. *See Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940) ("When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious."); *Utley v. City of Houston*, No. 21-20623, 2022 WL 2188529, at *1 (5th Cir. June 17, 2022) (holding that where defendant was arrested as part of a protest in the wake of George Floyd's death, that defendant was not engaged in "constitutionally protected activity when he was arrested—he was obstructing a roadway in violation of [a local statute]"); *see also Thayer v. Chiczewski*, 705 F.3d 237, 249 (7th Cir. 2012) ("the act of blocking the free flow of pedestrian or vehicular traffic on public ways will support a conviction for the offense of disorderly conduct" under Illinois law).[2]

---

[2] Defendants' apparently unbounded view of their right to protest in a public roadway is one that even the ACLU has declined to endorse. *See* ACLU, *When Else Can Government Regulate the Time, Place, and Manner of Protest?* (Jan. 14, 2015) ("Protesters do not have a First Amendment right to block pedestrian or vehicle traffic, or to prevent entry and exit from buildings.") available at https://www.aclu-il.org/news/when-else-can-government-regulate-time-place-and-manner-protest/, last visited March 31, 2026.

13

In another particularly bizarre claim, defendants suggest that they were "entrap[ped]" because the Broadview Police Department permitted them to protest at the corner of 25th and Harvard during the morning of September 26, 2025. Mot. at 13. Needless to say, the government does not expect there to be any evidence at trial that the Broadview Police Department gave the defendants and their co-conspirators any express or tacit permission to impede law enforcement vehicles through force or intimidation, let alone through property damage.

Similarly absurd is defendants' claim that the government charged these defendants on the basis that "*any* protestor may be held criminally liable for the actions of another protestor if both participate in the same public assembly." Mot. at 8. First, that is not remotely close to the government's understanding of § 372 or the nature of the conspiracy. Indeed, defendants continue to misrepresent the government's theory of the nature of the conspiracy despite the government's representations in its filings and in open court. As the government explained in its Response to defendant's Motion for a Bill of Particulars, a conspiracy can be inferred through conduct. Dkt. 81 at 7-8. Specifically, and as courts have recognized in § 372 prosecutions and otherwise, a conspiracy can be inferred through concerted physical action for a matter of minutes. *See* Dkt. 81 (citing *United States v. Scott*, 979 F.3d 986, 990 (2d Cir. 2020) and *Barber*, 442 F.2d at 523). The government has repeatedly made clear that mere presence at a protest is not sufficient to sustain a conspiracy charge under § 372. Dkt. 81 at 12. Indeed, any doubt on this point has been dispelled through the government's response to defendants' Motion to Compel, which made

14

clear that the government identified both public figures and civilians who were present at Broadview during the incident but declined to charge them based on an evaluation of their individual actions. Dkt. 110.

Second, and more fundamentally, any question of how the law applies to others is a facial overbreadth argument, not an as-applied argument. *Ferber*, 458 U.S. at 767 ("The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."). Indeed, the whole premise of the overbreadth doctrine is that it allows "a person [to] challenge a statute that infringes protected speech *even if the statute constitutionally might be applied to him.*" *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 462, n. 20 (1978) (emphasis added). In other words, if defendants cannot succeed on their overbreadth claim (and they cannot), the question of how § 372 may be constitutionally applied to others is irrelevant.

### III.    Conclusion

For the foregoing reasons, defendants' Motion to Dismiss should be denied.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    /s/ *William R. Hogan, Jr.*
WILLIAM R. HOGAN, JR.
MATTHEW SKIBA
ANDRES Q. ALMENDAREZ
Assistants U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

15