# EXHIBIT C

IN RE: GRAND JURY     ) GRAND JURY
          INVESTIGATION  ) NO. 25 GJ 994

          BEFORE THE FEDERAL GRAND JURY
          (SPECIAL JUNE 2024 - GRAND JURY)

          October 23rd, 2025 - Thursday
          2:29 P.M.

PRESENT:
          THE HONORABLE ANDREW S. BOUTROS,
          United States Attorney
          219 South Dearborn Street
          Chicago, Illinois  60604
          BY:  MS. SHERI MECKLENBURG (i)
               (Under Seal)
               MR. MATTHEW SKIBA
               Assistant United States Attorneys.

(The Grand Jury, having

reconvened at 2:29 p.m.

on the 23rd day of September

2025, pursuant to adjournment,

met in closed session and

the following is an excerpt of

the proceedings had herein.)

MS. MECKLENBURG:  Good afternoon.
Sheri Mecklenburg and Matthew Skiba.

We are back on 25 GJ 994.

THE COURT REPORTER:  Is it possible
for you to speak in the microphone?

MS. MECKLENBURG:  Can I use your --

MADAM FOREPERSON:  You sure can.

MS. MECKLENBURG:  Okay.  And I will
sit down in a minute, but I have some things
that I want to say first.

25 GJ 994, we are back on that.

A couple of things: I want to remind you that we're at the accusatory stage. People will have defense- -- may have defenses to charges, in which case it all comes out at the -- in the district court, not in the Grand Jury.

I'm not going to ask you today if you can keep an open mind and deliberate

fairly and apply the law to these facts. Instead, I'd like you all to stay and hear our evidence and our -- our law and our testimony. I'm bringing back Professor Skiba, who last time did a great job. But we're going to start over, because some people weren't here, and I think it was valuable to learn the law.

█ ██████████████████████

█ █████████████

█ ███████████████████████

█ █████████████████████

█ ████████

█ ███████████████

█ ██████████████ █████████████

█ ███████████████████████

█ ███████████████████████

█ ████████

█ ███████████████

█ ████████████████████████████ We're going to start over with the law with Professor Skiba and then we're going to call in Dennis Woemlel, and we're going to start over with his testimony so that you can all hear him, see him, assess him.  Thank you.

MR. SKIBA:  All right.  Good afternoon, everybody.  For -- for some of you, this is going to be a review from last week.  For others, this may be a little new.  So part of what we wanted to do after the first session is to spend a little bit more time with the law.

These are complex statutes

written by Congress.  So one of the things that

we wanted to do -- to do is to break down the --
the two statutes that we are presenting to you
today to talk about what are our -- what are
elements and what are irrelevant considerations.
We also -- based on some of the questioning in
the first ses- -- session, we actually wrote
down some answers to your questions from the
first session, which, again, gets to what is and
what is not at issue with the elements that we
are talking about.

So I am first going to present
the felony charge, and that is 18 United States
Code, Section 372.  And this statute is called
"conspiracy to impede or injure an officer."
And so we have the entire statutory text here.
It is pretty lengthy, but I wanted to go through
the elements that I have written down here to --
to kind of break it down piece by piece.

So the first element is that -- that two or more people need to conspire. And then to establish probable cause we need to establish one of the following: The first is to prevent by force, intimidation, or threat the officer from discharging his duties. I am going to talk in a little bit about what force,

intimidation, or threat means.

The second alternative is to injure an officer of the United States or his property on account of his lawful discharge of the duties of his office or while engaged in the lawful discharge of his duties.

So I know in the first session there was some question of "Well, Agent A was on his way to work. Does that matter under these statutes?" So for the 3- -- this 372 charge, the answer is clearly no, because under the second alternative requirement, the injury to

the officer or his property must either be on account of or because of the lawful discharge of his duties or while engaged in the lawful discharge of his duties.

So for this -- this alternative here, it's irrelevant whether he was actively working at the time or was -- he was on his way to work. And we'll talk a little bit more about what the Section 111 question, whether it's relevant that he was on his way to work in a little bit. And the last alternative here is -- and again, this is an "or" -- to injure the property of an officer of the United States, so

as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

So as I mentioned, I'm going to break down some of these requirements in further depth, but does anybody have any questions about these elements under Section 372?

(No response.)

MR. SKIBA:  Okay.

Oh, yes, ma'am.

GRAND JUROR:  Can you talk a little bit about what it means to conspire?

MR. SKIBA:  Absolutely.  You read my mind.

Under this -- the next sheet that I have for you is "What is a conspiracy?" And so it -- and this is coming from the Seventh Circuit's instructions.

A conspiracy is an express --

MS. MECKLENBURG:  And just so you know, we are in the Seventh Circuit.

MR. SKIBA:  Yep.

MS. MECKLENBURG:  That's who g- -- governs our law.

MR. SKIBA:  So a conspiracy -- and this is a direct quote.  "A conspiracy is an

express or implied agreement between two or more persons to commit a crime."

So I underlined here "express and implied."  So an express agreement is you walking up to somebody and say [sic], "Let's do this."  An implied agreement between two or more people does not need an express agreement.

And this next bullet point here I think really gets at another question that you-all had in the first section is, do you need to do any advanced planning?  And the answer is no.  A conspiracy can be based on the spontaneous actions, plus the overt acts of the co-conspirators.  And once there is a conspiracy, then each person is accountable for the foreseeable actions of his co-conspirators.

MS. MECKLENBURG:  Let me just add something.  And that is that when I was doing drug cases, sometimes the co-conspirators didn't even know each other.  They knew there were other people in their conspiracy working on the drug sales, but they didn't necessarily know each other, and they don't have to know each other.

Here it looks like some of the

potential defendants do know each other, but that's not the issue, that they met ahead of time and were all introduced and knew each other and went out and said, "Let's do this."

MR. SKIBA:  Does anybody have any other questions about the elements?

(No response.)

MR. SKIBA:  Okay.  Seeing --

MS. MECKLENBURG:  Did that help?

GRAND JUROR:  Yes.

MS. MECKLENBURG:  Okay.

MR. SKIBA:  Seeing none.

And so we went over this last week.  But this -- I think this quote from this case in New Jersey, I think, really hits -- it makes a very straightforward point.  And this is a -- a direct quote from the case.  "Section 372 is straightforward.  It prohibits individuals from conspiring to keep government employees

from doing their job."

And that's precisely what happened here. As you-all will hear in a little bit from Agent A, Agent A is a government employee. And based on the video footage that we've reviewed a couple of times, it's clear

11

that the -- the co-conspirators here prohibited -- excuse me. They -- it -- the -- these individuals conspired to keep Agent A from doing his job.

And so un- -- under this case from -- excuse me -- the District of Nevada -- again, it's a straightforward statute -- prohibits individuals from conspiring to keep government employees from doing their jobs.

Another question on the -- the elements is, what is force, intimidation, or threat? Well, you only need to prove one, but we think all three are satisfied here. Now,

I -- I pulled a couple of quotes from a case out of the Western District of Texas. This is a civil statute, but it is a civil statute that is mirrored exactly in relevant part like the 372 statute that we're presenting here.

And so a really great quote from this case is -- and, again, quote -- "the most commonly understood dictionary definition of 'intimidate' is to place a person in fear." And as you-all will hear in a little bit, Agent A was placed in fear by the actions of the co-conspirators here based on the actions of

surrounding his car and preventing him from going forward.

Another quote from this case that I think is pretty telling here is surrounding a bus with about 100 cars in the interstate and attempting to block and control its movements by physically blocking it with

their vehicles and driving dangerously could reasonably constitute force.

Now, I want to stop here and tell you that that is not what happened here. We are not saying that 100 cars surrounded Agent A. But the point is -- and the reason why we have this quote up -- is that the co-conspirators here, both the individuals named in the indictment and the other individuals in the video, surrounded and physically blocked Agent A's vehicle and tried to prevent it from going forward and going -- to prevent it from going into the Broadview facility.

Does anybody have any questions about this sheet of paper?

(No response.)

MR. SKIBA: Okay. Seeing none.

And here is just a summary

of -- again, the question is, is there probable

cause that the facts meet the law here? And we'll walk through this, but I think the answer we posit is yes.

So here there was a conspiracy implied by the conduct. The individuals you saw in the video surrounded the car of Agent A. They were banging on his car and windows. Some were scratching his car. Several of them moved to the front of their -- Agent A's car together to try to block it.

And each person we included in the indictment engaged in conduct that they used force and intimidation and threats that directly hindered or impeded Agent A and prevented him from moving his government-issued vehicle towards the Broadview facility.

So Michael Rabbit -- you saw from the video -- hung onto the passenger's side. He pushed and banged on the side of the vehicle. Again, I'm not a car expert, but I believe -- I believe you heard the testifying agent a couple weeks ago. The thing that he was hanging on was the A-frame of the vehicle. Kat Abughazaleh placed herself in the front of the

vehicle.  She pushed on the front of the vehicle with her hands and her body to prevent it from continuing.

Cat Sharp was more or less right next to her.  Also placed herself on the front of the vehicle, also pushed on the front of the vehicle with her hands on the body to prevent the -- the car from going forward.

Brian Straw, he moved through the crowd to the front of the vehicle, and he pushed up against the vehicle with his hands and leveraged his body, like the others, to prevent the car from continuing forward.

MS. MECKLENBURG:  And just to remind you, Brian Straw is the one who had the orange hat, and you saw him making his way to the car.

You have a question.

GRAND JUROR:  Yeah, just a quick question.

MS. MECKLENBURG:  Yeah.

GRAND JUROR: Are you going to show the video again? Because --

MS. MECKLENBURG: Yeah. We will do that, yeah.

GRAND JUROR: Okay. Because the

notes I have written down don't 100 percent match up with that. That's why I just wanted --

MS. MECKLENBURG: Okay. Yeah. No. We will show it to you.

GRAND JUROR: -- an opportunity to view it again --

MS. MECKLENBURG: Absolutely.

MR. SKIBA: Certainly.

GRAND JUROR: -- to make sure I didn't make a mistake.

MR. SKIBA: And then -- so Andre Martin was close to -- close in proximity to Kat Abughazaleh and Cat Sharp. He had placed himself in the front of the vehicle. He pushed

on it with his hands and -- hands and his body to prevent the vehicle from continuing.

And, finally, Joselyn Walsh -- excuse me -- Joselyn Walsh wrapped her arm around the driver's side mirror to prevent the vehicle from continuing.  This was the -- the individual who had the guitar in the video.

And then each person -- again named here -- they were pushing on the vehicle to hin- -- hinder and impede it, not to protect themselves from being hit.  And as you will

recall from the video, there were chants surrounding Agent A's duties.

Some were yelling, "Get a real job."  I believe some were yelling, "Fuck this pig."  Pardon my language.  So it's clear that they -- they knew that he was related to ICE, and they had surrounded his vehicle because of his -- his role related to the Broadview

facility.

Does anybody have any questions here before I turn to the other statute?  And then at the end, there's some other miscellaneous Q & A for both of these statutes that we will go over in just a second.

MS. MECKLENBURG:  And then we'll watch the video.  Then, we'll have the testimony.

MR. SKIBA:  Yeah.

(No response.)

MR. SKIBA:  Okay.  Seeing none.

About 372, I am going to turn to Section -- this is the misdemeanor count. This is 18 United States Code, Section 111.  And this statute is called "assaulting, resisting, or impeding certain officers or employees."

This is a shorter statute.  In relevant parts, I'll just read it to you.

This applies to whomever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any personnel designated in Section 111- -- excuse me -- 1114 [sic] -- that's a law enforcement officer -- of this title while engaged in or on account of the performance of the official duties.

So breaking that -- this down further, first, you need to find that there was a forcible -- so the -- the term "forcible" applies to each of these verbs that follow. So forcibly assaults, resists, opposes, impedes, intimidates, or interferes. And there needs to be a federal officer.

And, finally, again, in relevant part, the actions were done while the officer was engaged in or was on account of the performance of his official duties. So the -- again, the question under this statute -- one of the questions is, does it matter that he was on his way to work?

And the answer to -- under this

statute is no for two reasons. The first reason is just as a legal question, the statute requires that he be either engaged in his official duties or that the incident be on account of his official duties.

So, again, what that means is he doesn't actually need to be engaged in his official duties so long as the incident was on account of or because of his official duties. But the more fundamental point here is just as a factual matter. As you will hear from Agent A, Agent A was duty-bound to protect his vehicle. It was a government-issued vehicle. He is only able to use it for work-related purposes.

So he can't go to the movies using his government-issued car. He can't go out to dinner with his wife in his government-issued car. No. He is only able to do government -- government-sanctioned activities while in that government-issued vehicle. And as you will also hear is -- he was

duty-bound to ensure that nothing bad happened to that vehicle.

Another question that was posed the last few times is, did Agent A need to be

19

assaulted? And the answer to that question is also no, because Section 111 also applies -- applies to those who forcibly resist, oppose, impede, or intimidate an officer, again, while engaged in or on account of the performance of his official duties. And as the video shows, you know, these -- not only were these verbs met, but Agent A was both engaged in his official duties, and this incident was on account of the performance of his official duties.

And, finally, the last question under this statute that we have down -- and, again, we will have a few other questions and answers for you in just a minute -- what does

the term "forcible" mean? And, again, this is also from the Seventh Circuit's pattern jury instructions. We are in the Seventh Circuit.

"Forcible" means by use of force. Physical force is sufficient, but actual physical contact is not required. So a person also acts forcibly if he threatens, attempts to inflict bodily harm upon another with a present ability to inflict bodily harm.

And, again, this is a -- a

quote from the comments. "Direct contact is not required so long as the conduct places the officer in fear for his life or safety." And as you will hear in a little bit, Agent A was in fear for his life or -- excuse me -- his life or safety.

Does anybody have any questions about Section 111?

(No response.)

MR. SKIBA: Okay. Seeing none.

And, finally, just on the law piece, we will -- we'll conclude with some just -- these are just miscellaneous questions that -- that a few of you asked related to both statutes.

So the first question is, what is Agent A's duty? Shouldn't he have stopped his vehicle?

And so the answer to that is -- there is several-fold answers to that. So neither statute we are presenting today requires that he have stopped his vehicle. So it's an irrelevant question. This is not a personal injury case where the question is who is more at fault.

But the -- the more fundamental point is even if he had stopped his vehicle entirely, they still -- the co-conspirators

still would have been hindering and impeding him from driving forward. He also did not -- and this is true for both statutes. He didn't have a duty to retreat once these individuals surrounded his car and were preventing him from going forward.

You will also hear from -- from Agent A -- and he had mentioned this last week. I am sure he will mention it today. The thing that was going through his head is he was scared to be a sitting duck at that point. He was worried that if he had stopped his -- his car entirely, he was going to be pulled out of his vehicle. The glass would have been broken, and he would have been subject to more harm if he had just stopped entirely.

And so that's why -- again, in the interest of not hitting anybody -- to try to inch forward as slowly as he could -- as slowly but as surely as he could so that he can get to safety at the Broadview -- Broadview facility.

Another question is, what about

the other witnesses?  There is a -- a truck driver.  There was local police in the area. Why aren't we hearing from them?

The -- the answer to that is this is a probable cause determination.  The video itself is as plain as day on whether the -- there is probable cause to establish that the evidence marries up to the law here.  So we don't need to in the Grand Jury present every conceivable witness that may have been there that day.

Another question was, what about the other individuals surrounding the car? Again, that's also irrelevant to the task today, which is just to determine whether there is probable cause to charge the six individuals that we had named in the indictment.

And then, finally -- and then I will get to the video in just a moment -- can the government charge the misdemeanors without the Grand Jury?

And the answer to that is we

are seeking a felony and so we cannot charge the Section 111 misdemeanor -- if we are seeking a felony on the 372 charge, we can't bifurcate

that.  So we ask that you return a true bill on each count, including the Section 111 misdemeanor count.

And so you have to consider the evidence and whether there is probable cause, considering the elements for each charge.

Yes, sir.

GRAND JUROR:  That -- I am confused a little bit by that.  I was under the impression or my understanding that you don't need to seek an indictment for a misdemeanor.

And am I completely mistaken on that?

MS. MECKLENBURG:  If you are only charging that misdemeanor.  But you can't have two cases against people.  You can't seek a

felony charge and then separately bring -- you can't bring misdemeanors and seek a felony charge. So you can't have two cases.

GRAND JUROR: Right. But then --

MS. MECKLENBURG: Given that the government has chosen to seek a felony, they also have to ask you for the misdemeanor. We also have to ask you for the misdemeanor, so --

GRAND JUROR: But in this case, the

felony is conspiracy.

And then the misdemeanor, isn't that a different charge?

MS. MECKLENBURG: Always. Yeah. They are different charges.

GRAND JUROR: Yeah.

MS. MECKLENBURG: But you can't bring them separately. You can't have two cases against somebody. That wouldn't be fair to them, to defend themselves in two courtrooms.

Am I not answering your question?

GRAND JUROR: Yeah. I guess I'm --

MS. MECKLENBURG: Okay.

GRAND JUROR: -- I'm still a little bit -- understanding if he -- for the moment, if you were to not charge a felony conspiracy charge, could you -- couldn't you still charge that with a misdemeanor charge?

MS. MECKLENBURG: Could we charge the conspiracy with the misdemeanor?

GRAND JUROR: No, not the --

MS. MECKLENBURG: Could we charge the 111 misdemeanors --

GRAND JUROR: Yeah.

MS. MECKLENBURG: -- if we decided strategically that we were not going to bring any felony?

We have the authority under the

law to bring misdemeanors without a Grand Jury, but that should not affect your decision as to whether we have proven probable cause for each of these.

GRAND JUROR: Yeah.

MS. MECKLENBURG: You still have to consider each. We have chosen to present this to you with a felony, and so you still have to consider each of these. You can't say, "You can do it without."

GRAND JUROR: Okay.

MS. MECKLENBURG: Does that answer your question a little better? You still look like you are not so sure.

Matt, do you want to give it a shot? Maybe you --

MR. SKIBA: Yeah. I was going to say, so, again, the question for these charges is probable cause.

GRAND JUROR: Yeah.

MR. SKIBA: So the question of, you

know, which charges we -- you know, again to Sheri's point -- we are strategically considering bringing, that's sort of outside the purview or outside the scope of the question of probable cause.

Because we are presenting both a felony and a misdemeanor, we have to present both to you today. So I think what you are asking about is if you were only bringing a misdemeanor, can't you just do that on your own? I think that the point is, that's not what we are doing. We are presenting both a felony and a misdemeanor. And we can't, like, pick and choose what we are going to do. We can't only present the felony to you and then try to charge it as a misdemeanor ourselves.

We are presenting both to you. And, again, the question is --

GRAND JUROR: Yeah. I think I get that, that you -- the fact that you intend to do it all, but --

MS. MECKLENBURG: Whether we can do it on our -- we can do misdemeanors on our own

should not affect your decision as to whether there is probable cause for each of these

counts.

Does that make any sense to you?

GRAND JUROR:  Yeah, I think so. Well, it's just the one conspiracy count.  I mean, the misdemeanor --

MS. MECKLENBURG:  We want you to also consider each of the misdemeanors with it.

GRAND JUROR:  Right.  Okay.

MS. MECKLENBURG:  Yeah.  We're presenting it all to you.

GRAND JUROR:  Yeah.  I get that, but the --

MS. MECKLENBURG:  Yes.

GRAND JUROR:  Okay.

MS. MECKLENBURG:  Your consideration should not be in assessing a -- an indictment,

"Well, they could bring this charge without us. So we don't need to consider probable cause on that." That shouldn't be one of your considerations.

GRAND JUROR: Yeah, I understand that.

MR. SKIBA: Just said differently, if you as a Grand Jury were to find probable cause

for both a 372 felony and the Section 111 misdemeanor, it's not -- it's no answer to say like, "Well, we don't need to" -- we could just let them do the misdemeanor. If there is probable cause, there is probable cause no matter how the case is charged.

Any other questions about the law before we turn back to the video?

(No response.)

MR. SKIBA: Okay. Seeing none.

Just bear with me on the

technology.

MS. MECKLENBURG:  Matt, do you feel comfortable doing the video?

MR. SKIBA:  Yeah, I do.





41



MS. MECKLENBURG: Okay. So I am not going to do the IDs again, because most of you

were here when we did the IDs and there didn't seem to be a lot of questions.  And, frankly, if I do that, you might be here for a while longer.

So these were the six people who we identified:  Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, Catherine Sharp, Brian Straw, Joselyn Walsh.  And the indictment says that Agent A was a law enforcement officer, which is required by the statute, and that on or about he was de- -- and that on or about September 23rd, he was detailed to serve on assignment for ICE, that he was in -- that Broadview was an ICE facility, and that each of these six people are people in -- who were residing or found in the Northern District of Illinois.

And I have that Andre Martin

was an individual found in the Northern District of Illinois because that's where he was that

day. On or about September 26th at approximately 7:45 a.m., Agent A was wearing civilian clothes. He was in a government-owned vehicle, and he was reporting for official duties -- in his official duties. And then he told you that these were -- this included his official duties. I will leave you a copy of this if you want to look at that. I won't read it to you.

And that on that date, September 26th, they conspired with one another -- and that's under the meaning of "conspiracy" as we explained it, because that's the law -- to prevent by force, intimidation, and threat Agent A -- the United States law enforcement officer -- from discharging the duties of his office, and to injure him in his person or property on account of his lawful discharge of the duties of his office and while engaged in the lawful duties and to injure his property so as to interrupt, hinder, and impede him in the discharge of his official duties.

So that's the crux of this, is

a conspiracy with the interruption, hindering, and impeding. It was part of the conspiracy that as he drove there, these six people were among the people -- a group of individuals, including these six people surrounded his car with the intent to hinder and impede the car -- to hinder and impede Agent A from dis- -- from proceeding and discharging the duties of his office.

It was part of the conspiracy that while surrounding the car, these six people with others, among other things, banged aggressively on the car and the back windows, the hood, and other vehicle body parts, crowded together in front of -- in the front and side of the government vehicle and pushed against the vehicle to hinder and impede its movement, scratch the body of the vehicle, including etch -- etching a message into the body of the vehicle -- specifically the word "pig" -- broke one of the government vehicle's side mirrors,

and broke a rear windshield wiper off the government vehicle.

And it was part of this conspiracy that each of these six people

physically hindered and impeded Agent A in the government vehicle such that he was forced to drive at an extremely slow rate of speed to avoid injuring any of these people, and in doing so slowly progressed toward the building so that he could discharge his duties.

Then for each of these people we say what -- something that they did. So we picked out -- and I told you this both of the last two times. We didn't pick out people who were just walking alongside. We identified people who were actually doing something. Mr. Rabbitt was the one with the orange hat. He was one of the people surrounding the vehicle, bracing his --

GRAND JUROR:  That's not right.

MS. MECKLENBURG:  Oh.  Mr. -- I keep getting those two mixed up.  Mr. Rabbitt was the one on the side of the vehicle.

GRAND JUROR:  That's right.

MS. MECKLENBURG:  And he was the one with the gray shirt and the black sleeves.

So I apologize again.

He was -- surrounded the vehicle from the side, bracing his hands and

body against the vehicle, and hitting the windows.

Then came Ms. Abughazaleh.  She joined the crowd at the front of the car with her hands on the hood, bracing her body and hands against the vehicle, while remaining directly in the path of the vehicle.

Mr. Martin did the same thing.  He pressed -- also pressed his shoulder against

the vehicle while remaining in the path of the vehicle.

Ms. Sharp joined the crowd at the front with her hands on the hood and braced her body and hands against the vehicle while remaining in the path of the vehicle.

And Mr. Straw joined the crowd at the front of the vehicle.  He is the one in the orange hat and with his hands on the hood and braced his body and hands against the vehicle while remaining directly in the path of the vehicle.

And Mr. Walsh joined the -- Ms. Walsh, she was the one with the guitar.  She joined the crowd near the front driver's side window of the government vehicle and wrapped her

46

arms around the driver's side mirror as she pushed against the vehicle.  All of these were hinder- -- movements were hindering and impeding

Agent A and the vehicle from proceeding to the Broadview building, and all in violation of Title 18, United States Code, Section 372.

Then we have count -- one count for each of the defendants under 111 -- Section 111(a)(1) and (2). (2) just says that they either -- they also assisted -- or basically aided and assisted. So very often we'll include (2) in there along with that.

So, for instance, on that date, Michael Rabbitt forcibly impeded, intimidated, and interfered with an officer of the United States, namely Agent A, while engaged in or on account of the performance of his official duties in violation of these sections. And for each person, that is the language that we used. They're all the same, just the different names: Andre Martin, Catherine Sharp, Brian Straw, Jocelyn Walsh.

Do you have any questions for us?

GRAND JUROR: So all of the -- the

second -- I mean, the counts, those are the misdemeanors?

MS. MECKLENBURG:  Yes.

GRAND JUROR:  And so the misdemeanors -- you are charging the same actions as a felony and -- and as a misdemeanor?

MS. MECKLENBURG:  Yes.  And you --

GRAND JUROR:  Is that right?

MS. MECKLENBURG:  Yes.  And that is permissible charging.  You can do that.  You can charge the same actions under different statutes.  Well, it's actually a little bit different, because one is a conspiracy.

GRAND JUROR:  Okay.

MS. MECKLENBURG:  And the misdemeanors are what they did individually, which is why they each have a separate count. So they're not the exact same thing.

For instance, if just Mr. Straw had been out there, we would -- could charge him with the 111, but we wouldn't charge him with the conspiracy.

GRAND JUROR:  Okay.  And then the list of -- I think of one to seven -- I'm not sure how many there were -- does there have to

be agreeance on all seven of those?

MS. MECKLENBURG:  You mean the counts?

GRAND JUROR:  Not the count.

MR. SKIBA:  The individuals?

GRAND JUROR:  No.  The -- in the first count, there were several things that you described.

MS. MECKLENBURG:  You have to -- you have to pick one of the things that they did, and you have to say it threatened, intimidated, hindered, or impeded.

GRAND JUROR:  Okay.

THE COURT REPORTER:  Sorry.  I have to --

MS. MECKLENBURG:  You can go ahead.

Let's turn on the recorder at this point.

(Whereupon, a short break was
taken and the testimony was
recorded via audio recorder and
transcribed.)

MS. MECKLENBURG:  I think what you
are asking -- is it in paragraph 5?

GRAND JUROR:  Yes.

MS. MECKLENBURG:  Whether each of

these people had to do each of these things.

Is that what you are asking?

GRAND JUROR:  Or if we have to agree
that each of those four or five, six, whatever
are true.

MS. MECKLENBURG:  Here is what it
says, though, that they each and others among
other things.  So remember you learned the law,
in a conspiracy, that you are responsible for
other things that people do.  So they don't --

they don't have to actually scratch the car. You don't have to know that they're the ones who scratched the car.

The people who surrounded scratched the car, and they are part of that bigger conspiracy. That was the law that we were talking about.

GRAND JUROR: Okay.

MS. MECKLENBURG: I know. It's a -- it's a hard one. I agree. I have been doing this for a long time, and even when I look at it, I have to think about it a lot. So I appreciate your questions. I think they're insightful.

GRAND JUROR: I kind of have a

50

hypothetical -- hypothetical, but kind of not.

MS. MECKLENBURG: Okay. We'll try.

GRAND JUROR: So are -- is it basically arguing that pretty much anybody who

walked in front of that car could be charged with a conspiracy even if they weren't actually touching the car and somehow impeding it, even if they were just walking along with it?

MS. MECKLENBURG:  That is not what we charged.  And I don't want to answer hypotheticals.  We charged only people who were actually doing things.

GRAND JUROR:  I --

MS. MECKLENBURG:  So if you are going to talk about could we charge this person or that person, it's not relevant to the probable cause against these people.

GRAND JUROR:  Right.  Except that what I'm getting to is I watched that video again.  And specifically with regards to Cat Sharp --

MS. MECKLENBURG:  Mm-hmm.

GRAND JUROR:  -- maybe I completely missed it, but at no point did I ever see her touching the car.  Or she looked in that video

to me to be more walking behind two people in close proximity but not actually touching it. And so I -- that's where I'm kind of -- that's how I feel. If somebody is there walking in -- in front but not actually engaging the car, are they somehow still part of this conspiracy? Because --

MS. MECKLENBURG: Well, okay. I'm not going to -- I'm going to let you figure out your facts as to what you saw on the video, and in deliberation you can talk about that. Whether you saw her reaching forward as well or pushing on other people to hold off the car, you decide what you saw. I -- I showed you the video, gave you the testimony, and you draw your conclusions.

I will tell you that if somebody is also in front of the vehicle in the crowd preventing the car from -- standing in front of the car from it going, then they can be part of the conspiracy.

GRAND JUROR: There is a question over here.

MS. MECKLENBURG:  Yes.

GRAND JUROR:  Can you leave the

videos for us to look at if we -- while we
deliberate or not?

MS. MECKLENBURG:  Yeah.  There is a
password ███████

Thank you, everyone, for your attention and for being here today. We really appreciate it.

GRAND JUROR: Thank you.

(Whereupon, there being no questions by the Grand Jurors,

(the Grand Jurors were left to deliberate.)

58

CERTIFICATE

Kari Wiedenhaupt, being first duly sworn, on oath says that she is a Certified Shorthand Reporter doing business in the City of Chicago, County of Cook, and the State of

Illinois;

That she reported in shorthand the foregoing audio recording of the proceedings of the Federal Grand Jury in the Grand Jury Room in the United States Courthouse in Chicago, Illinois;

That all speakers have been identified within the transcription based on the content of the said audio recording;

And that the foregoing is a true and correct transcript of her shorthand notes so taken as aforesaid and contains the full content of the said audio recording which was audible and discernible.

_____

Kari Wiedenhaupt, CSR.

C.S.R. NO. 084-004725