1

```
                IN THE UNITED STATES DISTRICT COURT.
                  NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

UNITED STATES OF AMERICA          )  Case No. 25 CR 693
                                  )
          v.                      )
                                  )
                                  )
MICHAEL RABBITT,                  )
KATHERINE MARIE ABUGHAZALEH,      )
ANDRE MARTIN, CATHERINE           )
SHARP, BRIAN STRAW, and           )  Chicago, Illinois
JOSELYN WALSH                     )  April 7, 2026
            Defendants.           )  10:30 a.m.


              TRANSCRIPT OF PROCEEDINGS - HEARING
              BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

For the Government:   HON. ANDREW S. BOUTROS
                      UNITED STATES ATTORNEY
                      BY:  MS. WILLIAM HOGAN
                           MR. MATTHEW D. SKIBA
                           MR. ANDRES ALMENDAREZ
                      219 S. Dearborn Street, Suite 500
                      Chicago, Illinois 60604

For Defendant
Michael Rabbitt:      TAFT STETTINIUS & HOLLISTER, LLP
                      BY:  MS. NANCY L. DePODESTA
                      111 East Wacker, Suite 2600
                      Chicago, Illinois 60601

For Defendant
K. M. Abughazaleh:    LAW OFFICE OF JOSHUA G. HERMAN
                      BY:  MR. JOSHUA G. HERMAN
                      53 West Jackson Boulevard, Suite 404
                      Chicago, Illinois 60604


For Defendant
Andre Martin:         COTSIRILOS, POULOS & CAMPBELL, LTD.
                      BY:  MR. TERRENCE H. CAMPBELL
                           MS. VALERIE A. DAVENPORT
                      55 East Monroe Street, Suite 3250
                      Chicago, Illinois 60603
```

APPEARANCES (Cont'd):

For Defendant
Catherine Sharp:          LAW OFFICE OF MOLLY ARMOUR
                          BY:  MS. MOLLY ARMOUR (via telephone)
                               MR. MICHAEL PODGURSKI
                          53 West Jackson Boulevard, Suite 1424
                          Chicago, Illinois 60604

For Defendant
Brian Shaw:               CHERONIS & PARENTE
                          BY:  MR. CHRISTOPHER PARENTE
                          140 South Dearborn Street, Suite 404
                          Chicago, Illinois 60603

For Defendant
Joselyn Walsh:            PEOPLE'S LAW OFFICE
                          BY:  MR. BRAD THOMSON
                               MS. TAYLEECE PAUL
                          1180 North Milwaukee Avenue, Third Floor
                          Chicago, Illinois 60642

Court Reporter:           Noreen E. Resendez, CSR, RPR, CRR
                          Official Court Reporter
                          219 S. Dearborn Street, Room 1728
                          Chicago, Illinois 60604
                          312-582-5267
                          Noreen_Resendez@Ilnd.uscourts.gov

                          *   *   *   *   *

                PROCEEDINGS REPORTED BY STENOTYPE
     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURTROOM DEPUTY: Calling case 25CR693, *USA vs. Rabbit*, et al.

MR. HOGAN: Morning, Judge. William Hogan, Matt Skiba, and Andre Almendarez on behalf of the United States.

THE COURT: Good morning.

MR. PARENTE: Good morning, Your Honor. Chris Parente for Brian Straw, who is to my right.

MR. CAMPBELL: Good morning, Your Honor. Terry Kimball on behalf of and Andre Martin, who is with his parents for the holiday.

MR. HERMAN: Good morning. Josh Herman on behalf of Kat Abughazaleh, who is present to my right.

MS. DePODESTA: Good morning, Your Honor. Nancy DePodesta on behalf of Michael Rabbitt, who is here and present to my right.

MR. CAMPBELL: Sorry, Judge. Valerie Davenport is also here.

THE COURT: Good morning, everyone. We are up this morning on an oral ruling on the motion to compel. First, let me just say the motion to seal, which is at Docket 115, is granted. I have read all of the briefs submitted.

Does anyone have anything they want to add that isn't in the briefs already?

MR. HOGAN: I do, briefly.

THE COURT: Okay.

MR. HOGAN: Rather than file a motion for a surreply, Judge, I thought I'd just bring this up this morning. In the defendants' reply brief on page 7, they say twice in the middle paragraph, quote, The government claims -- the government claims they declined to prosecute other similarly situated individuals. The government claims no others who participated in this same, similar conduct as the defendants that day were charged because no one else could be identified because they were wearing masks or other coverings that obscured their faces making positive identification nearly impossible. They then say that that claim by the government, quote, again, That no one else engaged in the same behavior as the defendants could be identified because they were all wearing masks is incorrect. They say it twice within two sentences.

What we said in our brief was -- and I'm quoting again at page 10, The vast majority of individuals who engaged in criminal obstruction similar to that of the defendants wore masks and could not be identified, even after concerted efforts by the government. And then we go on to say that there were others who were, in fact, identified and who were not charged and we didn't identify them. Although one of them spoke out to the *Tribune* and identified themself as a Chicago alderman, I believe.

And I would just note that, you know, one mistake like that might be an oversight; two in the same paragraph is a little bit more than careless to paraphrase Oscar Wilde.

THE COURT: Okay. Thank you for that. Anything on the defense side to add?

MR. PARENTE: So I'm clear, Judge, is he saying that -- I think at the last hearing was the first time we learned that there was facial recognition software used. I guess is the government saying that there was a list of other people that they do have identified that they didn't choose to prosecute?

THE COURT: No. He's just taking issue with your statement that there were no people who were identifiable when, in fact, he said most of the people were not identifiable.

MR. HOGAN: And, in fact, in our brief we did say that there were a number of people identified, and that we did not charge them specifically and we gave several examples. I think, four.

THE COURT: Okay. Anything else to add?

MR. PARENTE: No, Your Honor.

THE COURT: All right. I have rarely seen a case where the parties are in such violent and aggressive agreement. All right. The level of vitriol and emotion in the brief makes that very unclear, but you actually agreed on

about 95 percent of what matters here. So I'm going to ask that everybody, for their blood pressure, if not for mine, just take it down a few notches. Save your drama for the jury, and even then I reserve the right to tell you all to cut it out if it gets out of hand.

With respect to the merits of the motion, you did all agree on the vast majority of it here. The defendants have expressly predicated their theory of vindictive and selective prosecution on external forces having some type of impact on the Chicago-based prosecutors. They stated in writing repeatedly that they are not alleging any animus by the line AUSAs or the Chicago U.S. Attorney's Office. To the end, the prosecutors agreed to provide evidence of external forces communicating with the Chicago U.S. Attorney's Office about this case, and they have now said there is no such evidence. There are no White House communications, there are no main justice communications, and I quote, There are no communications of any nature from, to, or with anyone outside of the U.S. Attorney's Office other than local FBI investigators assigned to the case regarding any investigatory or charging decisions. Based upon that, I am finding that the defendants' Requests Number 1, 2, 3, 4, 6, 7, and 11 all of which are predicated on improper influence by those outside of the U.S. Attorney's Office, on those inside the U.S. Attorney's Office are moot.

There may be discriminatory intent or vindictive motive in all sorts of places outside of the U.S. Attorney's Office, but for the purposes of your potential motion as you have defined it, the only thing that matters is what affected the people who made the charging decision. Given that you have said you aren't proceeding on any discriminatory intent inside of the U.S. Attorney's Office, without any evidence of those outside of it having any influence here, there is no relevant evidence of discriminatory purpose or intent, which is the second element of the vindictive prosecution claim.

So that leaves us with Requests 5 and 10 and 8 and 9. With respect to Requests 5 and 10, those are all focused on internal U.S. Attorney's Office communications that focused on political views or party status. You also agree here the government has said they will give it to you if it existed. If you have not gotten it, I am going to assume it doesn't exist. So those requests also are moot.

With respect to Requests 8 and 9, those who were present and uncharged. Let's start by talking about *Armstrong*. Under the Supreme Court decision in *Armstrong*, to prove a selective prosecution claim, the claimant must demonstrate that the prosecution policy had a discriminatory effect and was motivated by a discriminatory purpose. With respect to those present and uncharged, for that to be relevant, they must differ in some material respect from the

charged defendants that would demonstrate discriminatory effect.

So for example, if there were counter protestors who had different political beliefs or were exercising the reverse First Amendment rights to those who were there, who did same or similar things to those who were charged, that would be great evidence of some type of discriminatory effect. No one has told me that that happened. No one has told me there were any people who were differently situated from these defendants who were present at the scene doing anything remotely like what these defendants are alleged to have done.

As everybody, or all the attorneys at least here know, the government never charges everyone that it could charge with a crime, and that's generally considered to be a good thing. To the extent the defendants' theory is they were charged because of their political beliefs, everyone on the scene seems to have had the same political beliefs. To the extent they believe they were charged based on the exercising of their First Amendment rights, everyone on the scene seems to have been exercising the same political opinions and the same type of speech. So to the extent that there were some of those people who were uncharged, that is not evidence that your clients were selected because of their political beliefs or their First Amendment speech.

The Supreme Court in *Armstrong* specifically stated

that the particular prong of the malicious prosecution test requires similarly situated individuals of a different protected class. Given that I have no reason to think that there were any who fall into that category, I would deny this motion to the extent that the defendants have not already given you what you are seeking on it.

Let me just say as an aside, you are asking for personal identifiers of people who were present in a public location exercising their First Amendment rights. I have serious privacy concerns about that frankly. Setting aside the fact that I don't think that you have met the *Armstrong* test. I am not ordering it on that basis.

Now, you pointed out that there are internal communications where certain of those affiliated with the defendants talk about public officials being charged. You all know public officials being charged is the bread and butter of the U.S. Attorney's Office. Public officials of every political strife, that is always considered a plus factor both because public officials are believed to be good deterrent effects on the rest of the people who might commit crimes and because we believe that public officials should be upholding the law rather than violating it.

Being a politician is not a protected class. So you can't base a malicious or selective prosecution theory on the fact that your client is a politician. Now being a member of

a certain political party, that would be a protected class. But you have not shown me any evidence that that was considered here.

The internal communications that I have seen, specifically the ICE one, notes a U.S. congressional candidate, a 45th Ward committeeperson, an Oak Park, slash, Oak Brook board of trustees member was charged. That does not reference any political affiliation and, frankly, you can't infer one especially based on the fact that it says Oak Park, slash, Oak Brook. I mean, to the extent we're going to try to infer based on broad stereotypes, there is a big difference between an Oak Park politician and an Oak Brook politician.

So I don't see anything in the communications that indicate that one particular political class was targeted here. As for the request that the government report exactly how it went about its searches, I don't think it's appropriate to order that. The prosecutors know how to do their jobs. They know that their law licenses in this case are on the line if they do them inappropriately. I am not going to micromanage the specific way they go about the search, and I don't think there's any judge in this building who would.

The Supreme Court has repeatedly affirmed that there is no general right of discovery in criminal cases, which distinguishes them significantly from civil cases. To be entitled for a selective prosecution claim for discovery on

that claim, you must have a colorable basis for the claim, which means some evidence of the claim, which means some evidence of Element 1, discriminatory effects and Element 2, discriminatory motive. That is from *United States vs. Heidecke*, H-E-I-D-E-C-K-E, 900 F.2d 1155, Seventh Circuit 1990. At this point I have not seen some evidence for either prong. So to the extent that there are remaining requests for discovery along this line that have not been mooted, the requests are denied.

Now, there are two other buckets of discovery that you asked for. Neither of which seemed to fall into the vindictive or selection prosecution category. So if they aren't falling under *Armstrong*, they would instead, I think, fall under Rule 16. The first is for Agent A's training records. It's Request 12. The government has stated that it provided discovery regarding Agent A's training that he remembers and has promised to furnish any communications to Agent A about how to interact with demonstrators.

We discussed this a little bit last time, but I just don't see how the policies or procedures are training unknown to Agent A or to the defendants would be relevant in this particular case. With one caveat, if there was a policy in place that the defendants were allowed to stand where they stood or do what they did or otherwise were proceeding in a way that the government plans to argue was impeding the agent,

that would be, I think, material to guilt or innocence.

MR. HOGAN: Along those lines, we just recently interviewed some Broadview Police Officers who we are preparing 302s to turn over shortly that discuss that issue. As far as I'm aware, there's no such federal policy at all.

THE COURT: Okay. So I would ask you if there is any policy in place that what the protestors were doing, defendants were doing, was acceptable per the rules, et cetera, that I do think would be relevant and should be disclosed. But otherwise, the request is denied.

MR. HOGAN: We just inquired into that, and we'll turn it over shortly.

THE COURT: Thank you. The last category requested is internal communications, that was Request 13. When we talked about it at the last hearing, I noted that it was extremely broad on its face. I asked you to narrow that request by March 19th. I have not heard anything back about that. No one mentioned Request 13 in their briefs, so I'm considering that moot at this point; but if there is still some outstanding issue that we should talk about, let's do it now.

MR. PARENTE: That's fine, Judge.

THE COURT: So that is my motion to compel ruling. Your motion to dismiss is still being briefed.

MR. HOGAN: Along those lines, we would request a

13

short extension. Mr. Skiba and I have a trial on Monday before Judge Kness and our brief is due this Thursday. We are preparing for trial, and we would request until Monday to file our response brief.

THE COURT: This coming Monday?

MR. HOGAN: Yes, please.

THE COURT: Okay. That is fine. How long then would that make the reply date?

MR. CAMPBELL: Do you know our reply is scheduled now?

MR. PARENTE: Seven days.

THE COURT: So Monday's date is, what, the 13th? So that would be the 13th and the 20th. Okay. Anything else we should talk about today?

MR. HOGAN: Not from us, Judge.

MR. PARENTE: Just a few little things. First is sort of -- I guess we requested, like, a redacted indictment whatever the indictment is going to look like.

THE COURT: Narrowed.

MR. PARENTE: Yeah. I know Mr. Hogan has said multiple times sort of where they're headed. We would want something definitive so that we can know if we need to adjust accordingly or file additional motions.

THE COURT: That seems fair.

MR. HOGAN: And I quoted in the brief that we filed

with the Court exactly what the language should be. I put it in an e-mail to the defendants before we filed a brief to the Court. I repeated both of those things in response to Mr. Parente's three separate requests yesterday for that information. I repeated it again, and I will get it to them later today.

THE COURT: Later today is good.

MR. PARENTE: Great. And then, Judge, the only other issue is these text messages. So, you know, we requested Agent A's text messages, and the government has provided us with some of those. I have two concerns. One is that it seems to me that the way the text messages were gathered is that the agent met with ICE counsel, like agency counsel, and ICE counsel sat with the agent and decided what to turn over to the government. So based on Mr. Hogan's prior representation that ICE is not part of the prosecution team, I am just a little concerned that that decision was sort of outsourced to agency counsel.

MR. SKIBA: That was Ms. Mecklenburg.

MR. PARENTE: I'm sorry, Ms. Mecklenburg. But, two, so I guess, one, is we would be -- we would ask that the government themselves or someone from the prosecution team actually look at the text messages like in a prior case in a very -- in the same operation, Midway Blitz, the FBI agent who is the case agent actually went out, met with the agent,

looked at the texts, photographed them all, and provided them to the U.S. Attorney's Office who then decided which ones to give to us.

Even after that happened, we asked the Court at the time, the Judge, to look at them; and the Judge looked at them and agreed that there were 30 additional texts that should have been produced that the government didn't produce. So I guess what we're asking for in this case is sort of a similar procedure, which is, one, to have someone on the actual prosecution team look at the agent's phone. And then, two, we have a lot of redactions here where it seems to me just common sense that there's things that are missing that are probably discoverable. So if the government would then provide it to the Court to look at, we would feel more comfortable.

THE COURT: Let me ask first. Did a member of the prosecution look at the text messages?

MR. HOGAN: We all looked at them before they were turned over.

THE COURT: The entire body of information?

THE GOVERNMENT: As far as I'm aware, we turned over the entire body. I don't think there was anything --

THE COURT: Well, you wouldn't have given every text message on a phone, right?

MR. HOGAN: I'm sorry?

THE COURT: You wouldn't have given them every text

message on the phone, right?

MR. HOGAN:  No, no.

THE COURT:  So who made the cut decisions?

MR. SKIBA:  So we received a snapshot of texts that we turned over to the defense.  We received that via PDF.  So, I guess, if the question is, did we go through Agent A's phone or did a case agent go through Agent A's phone --

THE COURT:  I think that is the question.

MR. SKIBA:  The answer to that question is no, we have not.

THE COURT:  I mean, if I were you, I would be very uncomfortable leaving it up to some random third party to make my Brady decisions.

MR. HOGAN:  Absolutely.  We'll look into it more.

THE COURT:  Okay.  Look into it more.

THE GOVERNMENT:  I can say the only thing that's been redacted, I think, are initials or names of to whom the texts were sent if they were private parties.

MR. PARENTE:  I don't think that's correct.  I have a copy for the Court if you want to see it.

THE COURT:  Let's let Mr. Hogan and team do their due diligence.  One of you should be looking at all of the text messages or doing something that you can fairly state meets your Brady obligations to look for exculpatory information.

MR. HOGAN:  We understand.  We'll do that.

THE COURT:  Anything else?

MR. PARENTE:  I think that's it, Judge.

THE COURT:  All right.  Thank you, all.

THE GOVERNMENT:  Thanks, Your Honor.

   (Concluded at 10:50 a.m.)


                    *   *   *   *   *


    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


*/s/Noreen E. Resendez*                    *April 24, 2026*
Noreen E. Resendez, CSR, RPR, CRR          Date
Official Court Reporter