**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | Judge April M. Perry |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES TO THE
GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, and Brian

Straw (collectively, "Defendants"), by and through their respective undersigned counsel, respond

to the government's consolidated motions *in limine* ("Motion") (Dkt. 124) as follows:

**I.      The Government's Motion to "Exclude Impermissible
Legal Testimony and Opinion" Should be Denied.**

The government's first motion *in limine* (Motion, pp. 1-7) is overbroad, unsupported, and

should be denied. As detailed below, although the government purports in its headings to take issue

with improper testimony regarding legal conclusions and instructions, it asks this Court to go much

further than excluding only improper legal testimony from lay witnesses—an ask which, by itself,

would be uncontroversial. Rather, the government makes an extraordinary request of this Court to

exclude all evidence and argument relating in any way to the First Amendment—including probative

factual evidence regarding why the Defendants were at Broadview, what they were doing there, why

they said and acted as they did, and—critically—whether they *believed* (correctly or not) their

1

presence, actions, and statements were protected by the First Amendment. Federal courts have found that such evidence is not unlawful legal testimony but factual evidence, probative of defendants' mindset and intent, and to whether they acted in conspiracy. The government's overbroad request to "exclude all such evidence" should be denied.[1]

> **A.      The Defense Does Not Dispute that "Instruction on the Law is the Province of This Court," but Denies that this Means All Evidence Relating to the First Amendment Should be Excluded.**

The government first argues that instruction on the law is the province of the court. (Motion, p. 1). The Defense does not dispute this basic principle. Indeed, the Defense will follow the applicable Rules and this Court's orders regarding presenting jury instructions for this Court to adopt or deny in its sound discretion. This Court will instruct the jury accordingly. Whether and how to instruct the jury on the First Amendment as a defense to the charges is a legal question under the purview of this Court. *See United States v. Lomax,* 816 F.3d 468, 475 (7th Cir. 2016) (explaining that the availability of a defense, and the related decision to instruct on such defense, is a question of law decided by the court). *See also United States v. Beale*, 620 F.3d 856, 865-66 (8th Cir. 2010) (instructing jury in 18 U.S.C. § 372 case regarding the First Amendment and the jury's role in determining factual questions relating to whether charged conduct was protected). *See also* Motion, pp. 1-2. The Defense has no intent to offer improper legal testimony from lay witnesses on legal matters reserved to the Court.

---

[1] A note on organization of this Section of the brief: Section I of the government's Motion contains three subparts (A-C) with topics and points that are overlapping, repetitive, and somewhat circular. The Defense had some trouble delineating these arguments. However, in an effort to respond to each argument in such a manner that this Court could easily track the arguments and responses, this Section of the Response mirrors the government's organization and similarly contains three subsections in response to the opening arguments. Overall, and throughout this response, the Defense did its best to eliminate redundancies in the subsections while responding to each of the government's points, but some overlap was inevitable due to the nature of the government's motions.

The government is misguided, however, when it inexplicably and without support suggests that the Court's role in *instructing* the jury on relevant law implies that the defense may not present *evidence or argument* relating to such law. *See*, *e.g.*, Motion at 1 (seeking "an order precluding defendants from *eliciting evidence or arguing* that their speech or conduct at the Broadview facility . . . was protected by the First Amendment" (emphasis added)). *See also, e.g.*, *id.* at 2-3 (arguing that "[a]*ny argument or evidence* on the First Amendment should be excluded[.]") (emphasis added).

Contrary to the government's suggestion, and for at least three reasons, the Defendants should be permitted to present evidence on whether, and why, they believed their conduct was protected by the First Amendment:

**_First_**, this evidence—which would include details about why the Defendants were at Broadview, their purpose and intent for being there, what they saw and heard while there, why they acted the way they did on that date, and whether and why they believed their conduct was protected by the First Amendment—bears directly on the Defendants' mindset at the time of the charged conduct. Criminal conduct requires a guilty mindset. *Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001, 2003, 192 L. Ed. 2d 1 (2015) (explaining the "basic principle" that "a guilty mind is 'a necessary element in the indictment and proof of every crime'" and thus "criminal statutes are generally interpreted 'to include broadly applicable *scienter* requirements, even where the statute . . . does not contain them.'") (internal citations removed). So too here. *See*, *e.g.*, *United States v. Ehmer*, 87 F.4th 1073, 1120-21 (9th Cir. 2023) (explaining that a "culpable mental state" is required to prove unlawful conduct under 18 U.S.C §372, which has an both a subjective intent and objective standard); *United States v. Graham*, 431 F.3d 585, 590 (7th Cir. 2005) (explaining

that assault in violation of 18 U.S.C. §111(a) is a general intent crime, requiring that defendant had knowledge of his assaulting conduct).

Whether, and why, Defendants believed they were acting in accordance with the law is directly relevant to their mindset at the time, and the evidence should be admitted on that basis. For example, in a recent ruling in *United States v. Dugan*, another district court in this Circuit ruled that evidence about a defendant's "good motivation" when she was allegedly resisting immigration officers was relevant to her mindset during the time of the charged conduct. There, the government had similarly moved to bar evidence of the defendant's "good motives" for her acts resisting immigration officers, and the defendant argued in response that she intended to present evidence of her motives on the day at issue, which was relevant to her mental state at the time. The court agreed, ruling that the defendant is "*allowed to present relevant evidence touching on her mental state*" *on the day and time she allegedly committed the offense*. *See United States v. Dugan*, 25-CR-89, 2025 WL 3301760, at \*4 (E.D. Wis. Nov. 25, 2025) (emphasis added). That reasoning applies equally here, and Defendants should likewise be permitted to present evidence of their motives, beliefs, and state of mind on the day in question, including whether they believed they were acting under the protection of the First Amendment at all or some of the time—regardless of whether that belief was legally correct. This is especially uncontroversial given that the government may offer counter-argument on these points and cross-examine any witnesses from whom this evidence is adduced (including Defendants in the event they testify at trial).

Other federal courts have similarly admitted evidence regarding a defendant's belief at the time of charged conduct, as well the statements made by others at the time, as relevant to showing the defendant's knowledge and mindset. *See, e.g.*, *United States v. Griffith*, 2023 WL 2043223, at

4

*3 (D.D.C. Feb. 16, 2023) ("[T]o prevail on all charges, the government . . . must show that defendant specifically intended to impede or disrupt Congressional proceedings. Statements by political leaders and the conduct and statements made by the mob surrounding defendant both bear on defendant's mental state at the time of the charged offenses."). What a defendant may have seen or heard at the time "goes precisely to his knowledge and intent" because "[w]hat he was able to observe around him . . . inform[ed] his actions and 'mental state at the time of the charged offenses.'" *United States v. Gunby*, No. CR 21-0626 (PLF), 2023 WL 4993483, at *4 (D.D.C. Aug. 4, 2023) (citing *id*.). *See also United States v. Glaub,* 910 F.3d 1334, 1341-42 (10th Cir. 2018) (noting "the first amendment issue hinged on [defendant's] state of mind" and defendant was allowed to present evidence and argument regarding First Amendment to the jury). Here, too, such evidence regarding what Defendants witnessed at the time of the charged conduct, and whether such events impacted their belief that their conduct was protected under the First Amendment, is relevant and must be admitted.

**<u>Second</u>**, and relatedly, offering such "First Amendment" evidence and argument is also relevant to disproving the conspiracy charge under 18 U.S.C. §372. To show conspiracy the government must prove, beyond a reasonable doubt: (1) an agreement to accomplish an *illegal* objective; and (2) a defendant knowingly became a member of the conspiracy with the intent to achieve the illegal object of the charged conspiracy. Understanding the individual Defendant's beliefs about what they were doing and why is critical for the jury to assess the conspiracy charge, especially whether the Defendants were in an agreement to accomplish an illegal objective and whether they acted in furtherance of what they believed to be illegal conduct. *See*, *e.g.*, *United States v. Ali*, 870 F. Supp. 2d 10, 19-22 (D.D.C. 2012) (ruling that evidence of defendant's reasons

5

for involvement in [charged conduct] was admissible and relevant to the charge of conspiracy to commit [charged conduct] because evidence bore directly on issue of whether defendant had the required specific intent for conspiracy). *See also United States v. Bundy*, 2017 WL 4803931, at *4 (D. Nev. Oct. 23, 2017) (holding in case charging defendants with conspiracy that, "[t]o preliminarily exclude all evidence of Defendants' state of mind . . . would improperly prevent Defendants from fully presenting defenses to the jury").

Nevertheless, the government argues in passing that even if this Court decides that the First Amendment is relevant to the Defense, still "the Court should . . . exclude any questioning and argument along those lines under Fed. R. Evid. 403" because the evidence would confuse the issues, waste time, and unfairly prejudice the jury. (Motion, p. 3). It is not clear from government's argument how precisely factual evidence regarding the context, meaning and intent of the charged conduct is prejudicial, confusing, or a waste of time—the government protests without elaborating. *Id.* Moreover, the government's argument fails to appropriately apply Rule 403's test for excluding testimony. To exclude probative evidence under Rule 403, it is not enough for the evidence merely to be prejudicial, confusing, or a waste of time; rather, the danger of these harms must "*substantially outweigh*" the probative value of the evidence. FED. R. EVID. 403 (emphasis added); *see Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (refusing to exclude probative, if prejudicial, evidence under Rule 403 because "Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, 'the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value.'"). *See also United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015) ("[E]xclusion of evidence

offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly.") (internal quotation omitted).

Rule 403 does not support excluding the evidence at issue here. As explained above, evidence relating to the First Amendment in this case—including why the Defendants were at Broadview, what they intended to do there, what they witnessed there, what their intent was when they acted, and whether they *believed* their conduct and speech was protected by the First Amendment—is highly probative to elements of the charges, including showing Defendants' mindset and, most fundamentally, whether they were in a conspiracy. *See supra* § 1(A) at 3-6. This factual evidence is highly probative of key issues in the case and is integral to the defense. Its probative value is not overweighed by a danger of unfair prejudice, confusing the issues, misleading for a jury, or wasting time. In fact, its exclusion would significantly risk danger of unfair prejudice and misleading the jury. As explained above, this Court will provide the jury with an appropriate jury instruction regarding the relevance of the First Amendment and testimony relating thereto. *See supra* § 1(A) at 2. This relevant evidence should be admitted. *See* Fed. R. Evid. 403.

Relatedly, barring any evidence regarding the First Amendment as it impacted Defendants' beliefs and mental state would improperly preclude Defendants from having an appropriate instruction given to the jury on the law impacted by this critical evidence. It is no surprise, in light of the arguments raised in Defendants' pending Motion to Dismiss (Dkts. 100, 120, 122) and this Response to the Motions *in limine*, that Defendants intend to ask this Court to instruct the jury on relevant law relating to the First Amendment. And when the time comes to discuss the contours of any such instruction, the Court will need to assess "whether a defendant presented sufficient

evidence to become entitled to a jury instruction on [the] theory of defense." *Lomax*, 816 F.3d at 475.

Put differently, Defendants must be permitted to present factual evidence which necessarily touches upon the First Amendment—*i.e.,* why they were at Broadview, what they heard and saw while there, why they did what they did, and whether (and why) they believed their acts were constitutionally protected by their rights to assemble and to free speech—not only to present highly probative evidence as to their mental states and negate elements of the offenses the government must prove, but also for this Court to have the factual bases necessary to assess the jury instruction(s) the Defense will seek. *Lomax*, 816 F.3d at 475. To preclude the evidence outright at this stage would prematurely (and improperly) rob Defendants of even the opportunity to lay the factual grounds for their defense. This Court should not do so. *See Fieldman v. Brannon*, 969 F.3d 792, 801 (7th Cir. 2020) (collecting U.S. Supreme Court cases explaining that "the Constitution guarantees a criminal defendant 'an opportunity to be heard in his defense,'" which includes "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies").

***Finally,*** as explained in more detail below (*infra* § 1(C)), it is misleading for the government to dismiss any evidence touching on the First Amendment as improper legal testimony. Evidence and argument about the *facts* that Defendants believed they were acting within the confines of the First Amendment is not impermissible legal opinion testimony offered by a lay witness; it is *factual* testimony about what the Defendants believed to be true, whether or not they were correct in such belief—evidence which is clearly both admissible and highly probative given the charges here. *See Bundy*, 2017 WL 4803931, at *5-6 (admitting testimony

8

regarding what a witness believed was his legal responsibility, denying that such testimony was unlawful legal testimony, and ruling instead that it was factual testimony regarding mindset).

### B. Factual Evidence About What Defendants Did, Saw, Heard, and Believed While at Broadview—and Argument Incorporating such Factual Testimony—is Not Improper "Legal Opinion Evidence."

The government next argues that Defendants should not be permitted to share their views on the validity of federal law, nor to argue that they think a certain federal law should not apply to them. (*See* Motion, p. 4-5). The government's argument in this section is not specific, and it is not entirely clear to Defendants what evidence the government believes Defendants will offer that falls into this category. Defendants do not intend to argue that the charged statutes are *invalid*. Rather, as discussed above, by adducing relevant factual testimony regarding the First Amendment, the Defendants make two points. First, the Defendants elicit this evidence to show the jury the *context* of the charged conduct and the Defendants' *mindset* and intent at the time—evidence, as explained above, that goes directly to elements of the charge including intent, mindset, and whether there was a "spontaneous" criminal conspiracy. The point here is not that the charged statutes are *invalid*, but that the government cannot meet its burden to prove the necessary mindset or that a criminal conspiracy existed for the jury to convict. Second, for the reasons detailed in Defendants' Motion to Dismiss (and assuming *arguendo* here that such Motion does not prevail), Defendants may be arguing—with a good deal of law on their side—that the First Amendment provides an available defense to the charged conduct. Here again, the Defendants' point is not that the charged statutes are facially *invalid*, but that the evidence will not support the charges in part because of the First Amendment.

The government also baldly asserts that "[a]ny First Amendment argument from the defense is likely to be nothing more than an appeal to the jury's emotions and sentiments." (Motion

at 4). Not so. As outlined extensively above, this evidence is not about "jury's emotions" but about the *Defendants'* mindset and whether an alleged criminal conspiracy existed—things that are the heart of both the charges and the defense. (*See supra* § 1(A)). Defendants are not proposing to offer legal testimony regarding the legal parameters of the First Amendment's protections that might confuse the jury. (*See* Motion at 4). Rather, Defendants will present factual, lay testimony and evidence regarding what they believed about their conduct at the time of the events; Defendants' counsel will make arguments in compliance with the Federal Rules that incorporate such factual evidence; and this Court will instruct the jury as to the First Amendment's parameters. Armed with accurate statements of the law, the jury will then assess the evidence presented. This is all as it should be.

### C. The Evidence is Admissible Fact Opinion, not Improper Legal Testimony, and is Admissible under the Rules of Evidence.

As touched on above (*see supra* § I(A)), it is misleading and improper for the government to dismiss all evidence touching on the First Amendment as unlawful legal testimony. (*See* Motion, pp. 5-7). Evidence and argument about the *fact* that Defendants believed they acted within the confines of the First Amendment and the law and believed they were at an authorized location to peacefully assemble, is not impermissible legal opinion testimony offered by a lay witness. Again, it is *factual* testimony about what the Defendants *believed* to be true. Federal courts recognize this distinction—that a belief about legality may be relevant to mindset, even if the belief is wrong. For example, in *United States v. Bundy*, a defendant filed a motion *in limine* much like this one, which attempted to exclude testimony about what an individual believed to be their "legal responsibility" during the relevant events. *Bundy*, 2017 WL 4803931, at *5–6. The defendant there argued, as the government does here, that such testimony would amount to "legal conclusions by

a lay witness." *Id.* The court there disagreed and denied the motion *in limine*. *Id.* The court correctly explained that the statement at issue showed the person's "state of mind" when he acted on the relevant day. *Id.* Indeed, such a statement "is rationally based on his [lay] perceptions,." *Id.* Admission "does not tell the jury what result to reach," and therefore is not a "legal conclusion." *Id.* Such is the case here as well. Evidence about the Defendants *belief* that their conduct was protected and why they had such belief demonstrates their "state of mind" and their "perceptions." It does not carry legal weight, does not tell the jury what result to reach, and is not offering a legal conclusion as to the correctness of the Defendants' belief. The evidence should be admitted.

## II.     The Defendants Will Not Make Jury Nullification Arguments.

The government seeks an order precluding counsel for Defendants from suggesting "the jury should acquit even if it finds that the government has met its burden of proof." (Motion, p. 7). Counsel for Defendants are all experienced trial attorneys and have no intention of making improper jury nullification arguments in this matter.  To be clear, however, although a defendant may not use evidence "for the purpose of encouraging jury nullification," a good deal of evidence the government might think supports nullification may well be "relevant to other material matters in the case and should therefore be allowed." *United States v. Gray*, 2010 WL 1258169, at *1 (N.D. Ind. Mar. 26, 2010). Thus, we do not take the government's motion to be seeking to exclude any particular evidence, but simply the improper nullification argument no Defendant will make.[2]

---

[2] If the government believes that an argument made a trial is improper, then its recourse is to object. But, to be clear, there is a significant difference between improper advocacy and challenging the government's evidence. The problem with the government's motion is that, even if inadvertently, its requests sweep so broadly that legitimate advocacy would be barred under the guise of preventing discretely defined illegitimate tactics.

### A. The Defendants Do Not Intend to Make Arguments Regarding Charging Decisions or Selective/Vindictive Prosecution.

The government further seeks to preclude Defendants "from arguing or eliciting evidence about" charging decisions or selective prosecution matters to the jury. (Motion, p. 8). Absent a ruling from the Court allowing it, counsel for Defendants do not intend to make any arguments regarding selective prosecution to the jury. However, counsel do anticipate occurrence witnesses testifying in this matter who were present at the protest on September 26, 2025. If the government were to imply in any way that those individuals have some sort of criminal exposure by testifying, it could open the door to arguments regarding selective prosecution or charging decisions in this matter. Counsel for Defendants would raise this issue with the Court prior to making any such argument in front of the jury.

### 1. Defendants Oppose Government's Request to Prohibit Inquiry Into Subjective Intentions or Motivations of Government Agents.

The government additionally argues that "the subjective intentions or motivations of government agents are also extraneous and should not be the subject of inquiry." (Motion, p. 9). Defendants note at the outset that the subjective intentions or motivations of Agent A are almost certainly relevant and material to this matter. For example, one issue at trial will likely be why Agent A decided to drive his SUV into a crosswalk full of people which is what set the actions the government classifies as a "spontaneous conspiracy" into motion.

According to Agent A's text message to an unknown individual, Agent A viewed the people in the crosswalk as "trash in the street." *See* Dkt. #131-2, p. 13 (providing a copy of Agent A's text message). This text message will likely be the subject of cross-examination, because such statement could likely explain why he attempted to drive through them in his vehicle and met what could only be described as a natural reaction to having a three-ton SUV drive into you. Agent A's

subjective intentions and motivations in deciding to drive that three-ton vehicle into a crowd of people is relevant and should be subject to exploration and cross-examination.

Separately, questioning a witness about his *bias*, interest, and/or *motive* is a foundational aspect of the trial process. As the Seventh Circuit has ruled, ***"Bias is always relevant***, and parties should be granted reasonable latitude in cross-examining target witnesses." *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999) (emphasis added) (citations omitted); *id.* ("[I]t is well established that a witness may be cross-examined for bias. . . . ***Indeed, it is the 'quintessentially appropriate topic for cross-examination.'"***) (emphasis added) (citations omitted). The law is clear:  Defendants have a right to ask questions of government agents—or any witnesses—that are relevant to demonstrate bias, interest, or motive. To the extent the government seeks to bar such routine and vital areas of cross examination, its request must be denied.

### B.        Defendants Will Not Argue "Outrageous Government Conduct."

The government seeks to preclude argument relating to "outrageous government conduct." (Motion, p. 10). Once again, counsel have no intent to make any improper arguments seeking acquittal based on "outrageous government conduct" to the jury. The motion should therefore be denied as moot. However, counsel is compelled to add that there is a significant difference between improper argument concerning "outrageous government conduct" and challenging the accuracy and sufficiency of the government's evidence, or for example, bias evidence about a government agent. The government's overbroad boilerplate motion sweeps up both the good and the bad.

Indeed, the government does not identify any specific "outrageous government conduct" arguments it seeks to prohibit. Abstract and blanket prohibitions on general lines of questioning are not proper for pretrial rulings. *See, e.g.*, *United States v. Turner,* 2014 WL 4699708, at *5 (N.D. Ill. Sept. 22, 2014) (denying the Government's motion to bar defendant from questioning witnesses about alleged criminal conduct for which they have not been charged because the court

13

"cannot resolve this issue as an abstract matter at the motion *in limine* stage"). In short, the evidence and testimony elicited through cross-examination will speak for itself. But what constitutes "outrageous" conduct begs the question and the jury is, of course, entitled to hear and consider all relevant and admitted evidence.

Finally, it is anticipated that there may be some testimony regarding why certain defendants chose to go to Broadview on September 26, 2025, what their intent and mindset were, and what they were intending to communicate with their expressive speech and conduct on the date and time at issue here. This testimony will relate, for example, to witnessing media coverage of the conduct of ICE Agents at and around that facility. To the extent the government's broad motion seeks to preclude this type of testimony or evidence, the Defense objects. The evidence is clearly relevant to material issues and there will be no argument asking the jury to acquit on the basis of that evidence. Moreover, there will also be testimony and arguments related to Agent A's decision to drive his vehicle into a crowd of people. This too is unequivocally relevant and admissible evidence for all the reasons set forth above.

### C.      Defendants Will Not Reference Potential Punishment to The Jury.

The Government seeks to preclude argument relating to penalties and collateral consequences faced by Defendants if there were to be a conviction in this case. (Motion, p. 11). No defense counsel intends to argue punishment issues to the jury.

### D.      Defendants Will Not Make "Golden Rule" Arguments.

The Government seeks an order prohibiting defense counsel from making "Golden Rule" arguments to the jury. (Motion, p. 12). No defense counsel intends to make an improper "Golden Rule" argument to the jury.

### E. Defendants May Reference Unrelated ICE Incidents With Prior Approval of The Court.

The government seeks to preclude any reference to "other violence involving ICE and CBP" such as "the well-publicized shootings in Chicago in October 2025." (Motion, p. 13). The government states "the charges in this case are limited to one single, discreet incident on September 26, 2025 that did not involve firearms or injuries to either Agent A or the defendants." *Id*.

The mental state of each defendant is at issue, and each defendant has the right to explain to the jury what their mental state was on that day including why they went to Broadview, what they were protesting, and what was the meaning and intent of their conduct. Moreover, some Defendants' prior individual experiences at Broadview inform their mental state on September 26, 2025, and are thus patently relevant to elements of the two charged offenses.

This is all the more relevant in the event that any of the Defendants testify at trial. As part of that testimony, it is likely Defendants would explain the reasons they chose to attend Broadview on September 26, 2025. It is anticipated that part of the motivation to go to Broadview and peacefully protest was because of the impact of seeing United States law enforcement abduct, disappear, and even shoot human beings on the streets of our cities. Presenting this context is absolutely necessary for each Defendant to fairly put forward their defense, a black-letter fundamental right.[3] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting Crane v. Kentucky*, 476 U.S. 683 (1986) and *California v. Trombetta*, 467 U.S. 479 (1984)) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal

---

[3] The government cursorily claims such testimony would "clearly invite jury nullification." *Id*. It is unclear how a Defendant explaining why they attended a protest would "clearly invite" jury nullification, but to the extent the Court believes the government's stated concern has substance, Defendants would not object to a jury instruction limiting the use of such testimony solely to determine Defendants' requisite mental states on September 26, 2025.

15

defendants 'a meaningful opportunity to present a complete defense.'"); *Fieldman*, 969 F.3d at 801 ("the Constitution guarantees a criminal defendant 'an opportunity to be heard in his defense,'" which includes "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies") (collecting U.S. Supreme Court cases for this proposition).

**III**.  **The Government's Motion to Exclude Evidence or Argument Regarding Non-Pertinent Traits of Character Should be Denied.**

The government's third motion *in limine* to exclude evidence or argument regarding non-pertinent traits of character (Motion, pp. 14-15) should be denied for two reasons. First, the government attempts to prematurely thwart Defendants' right to present a defense. The government bases its third motion *in limine* on speculation regarding the content of the testimony Defendants will seek to elicit from their witnesses. Defendants have made no representations to the Government or this Court as to any of their witnesses' intended testimony. The government's third motion *in limine* regarding impermissible character evidence should therefore be denied as premature until the evidence is presented at trial and the Court has had an opportunity to consider the nature and context of the evidence and apply the relevant law to the facts at issue.

Second, this motion should be denied outright because Defendants are unquestionably entitled to elicit testimony of their character. *See* Fed. R. Evid. 404(a); 405. "[A]n accused has the right to offer evidence of good character . . . to show that he was unlikely to have acted in the manner and with the intent charged in the indictment." *United States v. Lewin*, 467 F.2d 1132, 1139 (7th Cir. 1972). *See also Michelson v. United States*, 335 U.S. 469, 476 (1948) (testimony of good character alone "may be enough to raise a reasonable doubt of guilt"); *United States v. Staggs*, 553 F.2d 1073, 1075-76 (7th Cir. 1977) (evidence of a defendant's pertinent character trait is relevant to show that the defendant lacked the requisite mental state for a specific intent crime or to

16

corroborate that the defendant's version of events), *implicitly overruled on other grounds by United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998). Rule 405(a) permits a defendant to prove his pertinent character traits through reputation or opinion evidence. Defendants here have been charged, among other things, with "conspir[ing] with one another . . . to prevent by force, intimidation, and threat . . . a United States law enforcement officer, from discharging the duties of his office, including by "surrounding" his vehicle, "bang[ing] aggressively" on the vehicle, and "etching a message" with the word "PIG" on the vehicle, and breaking "a rear windshield wiper" from the vehicle[.]. *See, e.g.*, Exhibit A, Amended Indictment Count One ¶¶ 3-5.[4] Their character for honesty, integrity, peacefulness, respect for law enforcement, and general "law-abidingness" is undoubtedly pertinent to these charges. *Michelson*, 335 U.S. at 483 ("[T]he traits of 'honestly and truthfulness' and 'being a law-abiding citizen'" seem "incompatible with offering a bribe"); *United States v. Williams*, 900 F.3d 486, 490 (7th Cir. 2018) (explaining that courts generally interpret "character evidence" to mean "elements of one's disposition, such as honesty, temperance, or peacefulness"); *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) ("Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses.") (collecting cases).

Should Defendants seek to elicit character testimony, they will do so consistent with the principles underlying Rule 405. Their questions would be limited to specific topics, which fall squarely within the bounds of permissible opinion character evidence in accordance with Rule 405. *See United States v. Hough*, 803 F.3d 1181, 1192 (11th Cir. 2015) (A traditional character witness direct examination "elicit[s] testimony about how the witness [knows] the defendant, how long the

---

[4] On April 7, 2026, the government emailed counsel for Defendants with an Amended Indictment for Count One. The Amended Indictment is attached hereto as Exhibit A.

witness ha[s] known the defendant, and what the witness' opinion of the defendant's character for the pertinent trait [is]."). *See also* Fed. R. Evid. 404, 405.

### IV. Defendants Do Not Intend to Make a "Missing Witness" Argument.

The government seeks an order prohibiting the defendants from "introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify at trial." (Motion, p. 15). Defendants have no intention of making this argument, and the government should likewise be held to the same standard. Should Defendants seek to make such an argument after seeing the government's presentation of evidence at trial, we will seek permission from the Court prior to making such an argument.

### V. The Government's Motion to Use Defendants' "Chants" and the "Statements" of Co-Conspirators to Establish Elements of the Offense Should be Denied, and the Court Should Further Preclude the Government from Using any Purported Co-Conspirator Statements.

On multiple occasions, the government stated, both to the Court and to defense counsel, that it did not intend to offer any purported co-conspirator statements at the trial of this case. Indeed, the government represented, again both to the Court and to counsel, that it was not aware of any such statements. Nevertheless, in an abundance of caution Defendants moved for a *Santiago* proffer to detail any alleged co-conspirator statements which the government might seek to admit at trial. (Dkt. 106). In response to Defendants' motion and in accordance with longstanding practice in this district, the Court issued an Order requiring the government to file a *Santiago* Proffer as to any purported co-conspirator statements it sought to offer at trial not later than April 21, 2026. (Order dated March 20, 2026, Dkt. 107).

The government did *not* file a *Santiago* Proffer by the date mandated by the Court. However, in its fifth motion *in limine*, the government stated that it seeks to "use Defendant's [sic]

chants and statements of co-conspirators to establish the elements of §372 and §111." (Motion, p. 16). This portion of the government's omnibus motion fails for several reasons:

*First*, it plainly fails to meet the basic requirements of *Santiago* and does not comply with the Court's March 20, 2026, Order. The government does not even attempt to make the basic showing required by long-standing practice in this Circuit to conduct a pretrial assessment of the admissibility of proposed co-conspirator statements under Rule 801(d)(2)(E), commonly called a *Santiago* proffer. The Government fails to properly identify the statements it intends to use and the most elemental facts surrounding them. Specifically, the government's motion wholly fails to articulate sufficient evidence as to the three essential components of Rule 801(d)(2)(E). Namely that: (1) a conspiracy existed at the time of the conversation; (2) the defendant and the declarant were both members of the same conspiracy; and (3) the proffered hearsay statements were made during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). These facts alone are sufficient to bar the government's purported invocation of Rule 801(d)(2)(E) and the denial of this portion of its motion *in limine*.

*Second*, any statements would have to be limited to the "spontaneous conspiracy" theory that the government committed to in response to Defendants' Motion for a Bill of Particulars. Despite that unequivocal representation, the government now appears to be shifting its theory of conspiracy yet again—motion *in limine* V seeks to offer out-of-court "co-conspirator" statements which are both outside the timeframe of the purported "spontaneous conspiracy," and directly at odds with its multiple prior representations. This apparent material revision comes, prejudicially, just a few weeks before trial.

*Third*, the government's attempt to introduce the statements of others' "chants" as purported co-conspirator statements is directly at odds with its prior representations—including

19

the government's vehemently expressed representations in its Response to Defendants' Motion To Dismiss Pursuant to the First Amendment in which it stated, *inter alia*, "If the defendants had simply gathered in Broadview and screamed and waved signs at Agent A, their First Amendment arguments would have force." (Dkt. 120 at 2). The cases it cites actually stand for the opposite of what the government claims in its brief. This citation to inapposite First Amendment cases strongly suggests that the government is now backtracking on its express representations to the Court and Defendants that it is prosecuting the Defendants based on their **conduct**, not their speech.

The government's materially shifting theory, outright-imprecision around date and time, and overt targeting of First Amendment-protected speech and speech-related conduct woven throughout its motion all underscore the serious concerns that compelled Defendants' Motion for a Bill of Particulars and Motion to Dismiss. The government urged the Court to deny both motions largely based on its representations regarding the precise theory it intended to advance at trial— which now seems to be a moving target. The government's proffered theory would permit the Defendants to be held criminally liable for First Amendment-protected statements, including statements not even made by them. This is anathema to basic constitutional principles and must not be countenanced by the Court.

Accordingly, and for all the reasons set forth herein, the government's undeveloped request in Part V of its omnibus motion *in limine* should be denied, and the Court should further enter an Order precluding the government from offering into evidence or arguing at trial that any statements constitute co-conspirator statements under Rule 801(d)(2)(E) or otherwise.

### A. The Government has Failed to Make a *Santiago* Proffer and Should be Barred from Introducing Purported Coconspirator Statements under Rule 801(d)(2)(E).

The government previously represented to the Court and Defendants that it did not intend offer into evidence any purported co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) and,

therefore, indicated that it did not intend to submit a *Santiago* Proffer in an attempt to establish admissibility of any such statements. (Feb. 28, 2026, Tr., p. 9:2-5). Nonetheless, the Court ordered that the government file a motion to admit any co-conspirator statements which the government intended to introduce at trial not later than April 21, 2026. (Dkt. 107).

As discussed above, the government declined to file a *Santiago* Proffer, but instead nonchalantly averred that it intends to introduce various statements of "unknown co-conspirators," including "anti-ICE statements and chants made by the defendants and their co-conspirators" which are "captured on audio/visual recordings" in its fifth motion in *limine*. (Motion, at p. 16). The government's request for relief makes clear that it is seeking a pretrial ruling on the admissibility of purported co-conspirator statements to prove elements of the offense—all without making the required *Santiago* proffer: "the government seeks a pretrial ruling that it may *introduce any statements, including those of unknown co-conspirators, that establish* the defendants' motive, intent, or *an element of the crime, such as whether they possessed knowledge of the conspiracy with which they are charged*." (Motion, p. 17) (emphasis added).[5]

In addition, and of particular concern, the government indicated that it also intends to offer purported co-conspirator statements which are not captured on audio-video recordings, and which apparently were made *before Agent A even arrived at the ICE facility* on the day in question.[6] In

---

[5] The government makes no effort to explain how the statements of others could be used to prove the elements of the offense—especially the §111 misdemeanor assault charge which is based on each individual Defendant's own personal conduct.

[6] The government also appears to be considering eliciting testimony from Broadview police officers about statements made by protestors in the weeks prior to September 26, 2025, as well as Broadview police officers' general observations of unidentified protestors' conduct on September 26. For example, in an interview with the government one Broadview police officer stated, "based on [her] experience, protestors would confront most vehicles believing them to be ICE", or another officer's statement that "protestors did not listen to the safety commands of the officers." The defense objects to any testimony which generalizes the conduct of all "protestors" as presuming membership in a group rather than mere contemporaneous presence on the morning of September 26, 2025. As this Court will hear at trial, each defendant went to Broadview on September 26, 2025, for different personal reasons. Some were there for the first time and others were repeat visitors. To allow Broadview police, Agent A, or any other government witness to testify

this regard, the governments states that it seeks to offer testimony from Broadview Police Officers that they "heard the protestors discuss to not let ICE cars through to their facility." *Id*. Despite having failed to meet its burden to proffer sufficient evidence in a *Santiago* Proffer to establish preliminary requisites for the admission of co-conspirator statements, the government states that it "seeks a pretrial ruling that it may introduce" such statements. *Id*. at 17. This is an end-run around the Court's March 20 Order and decades of established procedure in this Circuit.

The Court, of course, is very familiar with the law regarding the admissibility of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). As noted in Defendants' Motion for a *Santiago* Proffer:

> In short summary, under Rule 801(d)(2)(E), a hearsay statement offered by the government and made by a co-conspirator may be admitted into evidence only if the government shows: (1) a conspiracy existed at the time of the conversation; (2) the defendant and the declarant were both members of the same conspiracy; and (3) the proffered hearsay statements were made during the course of and in furtherance of the conspiracy. While Rule 801(d)(2) instructs the Court to consider the contents of the out-of-court statement, it also specifies that the contents of the statement "are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under [801(d)(2)(E)]." Rule 801(d)(2). In addition, to satisfy Rule 801(d)(2)(E), the government must identify—prior to the admission of any hearsay statements at trial—each alleged co-conspirator and the specific hearsay statement attributed to each co- conspirator that it intends to introduce.

(Dkt. 106, p. 2).

---

in any generalized manner using the term "protestors" unfairly minimizes the conduct and motivations of each individual defendant and, instead, allows the government to paint all those present that day with a broad brush which cannot be supported by the officers' generalized testimony. The government should not be allowed to elicit such generalized prejudicial testimony unless the officer can identify one of the defendants in the room as the person he or she witnessed making the statement, performing the act, or hearing the command at issue. Put simply, the Court should bar the Government from eliciting testimony or making arguments which generalize the conduct, statements, or motivations of "protestors." Testimony and arguments should, instead, be limited to the conduct and actions of identifiable individuals.
.

For nearly five decades, pursuant to the requirements set forth in *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), the district courts in this Circuit have required the government—by a date certain and sufficiently in advance of trial—to file a formal written proffer of the evidence it intends to offer at trial to establish prerequisites for the admission of co-conspirator statements Rule 801(d)(2)(E). The government chose to ignore the deadline for the submission of a *Santigo* Proffer and instead merely posits its intent to offer such evidence ***without***: (1) identifying the declarants; (2) identifying the date, place and time any such statements were made; and (3) proffering admissible evidence sufficient to establish that (a) the charged "spontaneous conspiracy" existed at the time the statements were purportedly made; (b) the declarants were members of the alleged "spontaneous" conspiracy at the time each such statement was made; and *quite crucially* (c) that each such statement was made ***in furtherance*** of the alleged conspiracy, which here the government has repeatedly committed is a "spontaneous conspiracy."  For each of these reasons (and all of them cumulatively), the Court should enter an order barring the government from offering into evidence, or arguing at trial, any out of court statements pursuant to Rule 801(d)(2)(E).

In doing so, we urge the Court to be cognizant of the chameleon-like theories of prosecution the government has now serially proffered in this case. It also demonstrates the propriety of defendants' bill of particulars request for the government to specify, *inter alia*, when the purported conspiracy began and when it ended, which are essential facts that are necessary to provide fair notice of the scope of the conspiracy that was actually presented to the grand jury. Without such an order, the government can continually revise and replace the factual and legal bases for its prosecution—things which according to long-standing policy, it presumably decided upon and

23

determined it could prove beyond a reasonable doubt ***before it sought the indictment***—which would contravene Defendants' right to due process.

### B. Any Co-Conspirator Statements Must be Limited to the Government's "Spontaneous Conspiracy" Theory.

Even if the government did make a *Santiago* proffer, any statements would be limited to those made "by a co-conspirator" "during and in furtherance of" the "spontaneous conspiracy" that the government has repeatedly committed was its case. Indeed, in response to Defendants' Motion for a Bill of Particulars, the government made representations on the record that the Court summarized as follows:

> Additionally, at least at this point, I understand the government to be telling all of us that its case will be focused on the events of September 26, 2025; that it has tendered all of the statements in its possession of the defendants, including any threats and all communications of which it is aware between the defendants and other coconspirators. The government has told us they have at this time no evidence of advanced planning. So all of this is to say, I don't think you've actually met the standard for a Bill of Particulars, but we've gotten you quite a bit of the way there. You asked for the conspiracy begin and end date. The government has clarified it is September 26th and September 26th. They have also said they consider this to be a spontaneous conspiracy.

(Feb. 26, 2026, Tr., p. 16:10-23).

Even though the government's representations were not a technical "bill of particulars," those representations were nevertheless relied upon to effectively moot Defendants' motion. As such, the government should still be limited to that type of proof at trial. *See United States v. Vasquez-Ruiz*, Case No. 00 CR 1044, 2002 U.S. Dist. LEXIS 1665, at *5 (N.D. Ill. Feb. 4, 2002) (citing *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)) ("When a bill of particulars has been furnished, the government is strictly limited to the particulars which it has specified, *i.e.*, the bill limits the scope of the government's proof at the trial.").

In sum, the government's freshly-minted request seeking admission of statements of "unknown co-conspirators" and referring to statements on video or supposedly overheard by a Broadview Police Officer that were made by unknown persons, at unknown times and dates, far exceed the types of statements that could be made in furtherance of a "spontaneous conspiracy." And, without that basic factual information, the Court cannot fairly weigh the admissibility of each statement, nor can Defendants fairly argue against their admission. The government's fifth motion *in limine* should be denied.

### C. The Government's Motion Raises Significant First Amendment Concerns that Provide Additional Grounds for Denial.

Finally, the Court should also deny the government's fifth motion and further bar it from arguing that anti-ICE statements and chants captured on audio/video are, or can be argued to be, proof of an element of the criminal charges in this case. The videos show some of the defendants chanting certain slogans such as "Up, Up with Liberation, Down Down with Deportation!"; "I believe that we will win"; and "Shame. Shame." and singing traditional protest songs drawn from historical spiritual hymns such as, "We shall not be moved." But clearly these classic examples of First Amendment-protected speech cannot be offered or argued by the government as evidence of a crime. The government previously acknowledged that it understood this basic proposition when it argued against Defendants' Motion to Dismiss Pursuant to the First Amendment by asserting that "[i]f the defendants had simply gathered in Broadview and screamed and waved signs at Agent A, their First Amendment arguments would have force." (Dkt. 120, p. 2).

Indeed, black-letter law makes clear that the anti-ICE chants and slogans, even if laced with profanity, are protected by the First Amendment. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 411 (1989) ("expression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values"); *Baumgartner v. United States*, 322 U.S. 665, 673-74

(1944) ("[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures – and that means not only informed and responsible criticism, but the freedom to speak foolishly and without moderation."); *Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against"); *Cohen v. California*, 403 U.S. 15 (1971) (protest speech consisting of profanity such as displaying a jacket that read "Fuck the Draft" or offensive words or conduct, is protected by the First Amendment).

Moreover, in arguing against Defendants' First Amendment motion, the government recently assured the Court that its charges are based solely on the ***conduct*** of the defendants and others in blocking "the vehicle's progress with their bodies." (Govt. Resp. to Defendant's Motion to Dismiss Count One Pursuant to the First Amendment, Dkt. #120, p. 2) (April 13, 2026). "That is conduct, and not speech protected by the First Amendment," the government said just days ago. *Id*. Now, however, the government posits that the chants and statements captured on tape are admissible to "establish the defendants' motive, intent, ***or an element of the crime***." (Dkt. #124, p. 17). But the cases cited by the government are entirely inapposite to the co-conspirator statement issue at the heart of the government's request. (Motion, p. 17).

While the First Amendment does not *per se* prohibit the use of statements for certain evidentiary purposes, the government cites no authority to justify the use of purported co-conspirator statements in the face of its deliberate decision not to submit a *Santiago* Proffer. Indeed, the government's misplaced rationale would eviscerate the guardrails embedded in Rule 801(d)(2)(E), as it would permit the use a purported co-conspirator's statements against Defendants without establishing the existence of a conspiracy, Defendants' membership in it, and

26

that the statements were "during and in furtherance of the conspiracy." This the law does not permit.

Put another way, if the government seeks to use specific speech to prove intent or to establish elements of the crime, it must specifically identify those words and they must either be the words of a specific Defendant, or clearly fall within some hearsay exception. For example, in *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993), the Supreme Court approved a state hate crime enhancement statute that was triggered by the defendant's own words that showed how the offense was motivated by racial animus. Central to the Supreme Court's holding was that the Defendant's *own words* helped establish motive and intent. *Id*. ("Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like."). The same principle controlled in the government's second case, *United States v. LeBeau*, which relied on *Mitchell*, and held that the use of the defendant's *own statements* were properly used to prove his intent that certain products would be used as "drugs" as defined by 21 U.S.C. §321(g)(1). 654 F. App'x 826, 830 (7th Cir. 2016). In stark contrast, here the government relies on a police officer's recently claimed recollection of an unknown person, at an unknown time, expressing an anti-ICE opinion, and then imputing that statement to Defendants. The government should be barred from employing such tactics that are directly at odds with the Rules of Evidence.[7]

---

[7] *United States v. Fullmer*, 584 F. 3d 132, 155-56 (9th Cir. 2009) is likewise of limited relevance because the record in that case showed "ample evidence" that specific defendants "coordinated and controlled" the activities of an organization and also "orchestrat[ed] the illegal acts of others" engaged in animal rights' protests. In addition to what appears to be an established conspiracy vis-à-vis a concrete organization—something the government here deliberately avoids—as well as defendants' own statements, the speech in *Fullmer* also involved "true threats," which the government has disclaimed here. *Id*. at 156. Moreover, the *Fullmer* opinion describes detailed and specific statements that the defendants themselves made. *Id*. at 157. The government makes no similar argument or showing here.

27

In the end, it may well be that certain speech by one or more of the protesters involved in this case can be offered for some legitimate evidentiary purpose(s) at trial. But if the government intended to offer any supposed "co-conspirator statements," it was required to sustain its pre-trial burden of demonstrating that any such proffered statements are admissible against Defendants, including showing they were made "during and in furtherance of the [spontaneous] conspiracy." Fed. R. Evid. 801(d)(2)(E). The government cannot have it both ways. It cannot disclaim evidentiary use of the chants in one breath to avoid the grave First Amendment implications of doing so, and then immediately urge that those very same chants can be offered to prove elements of the charged offenses in its next.

## VI.    Comments Regarding Discovery Requests.

The government seeks an order to "bar defendants from requesting discovery from witnesses or the government, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury." (Motion, p. 18). Counsel for Defendants oppose this broad prohibition for multiple reasons. First, Defendants presume the government will have complied with all discovery obligations prior to trial, making the issue moot. However, if during the examination of a witness it becomes apparent that other materials exist that were not disclosed, then defense counsel should be allowed to inquire of the witness accordingly.

Additionally, there is one discovery issue that occurred in this case which may become relevant at trial involving apparently deleted Broadview Police Department body worn video footage. In summary, the defense requested multiple times that the government preserve all videos from Broadview depicting the events of September 26, 2025, including body camera footage. Counsel for the government repeatedly assured defense counsel that Broadview was informed of this request, and, in a letter dated December 18, 2025, further advised that the AUSAs personally

28

went to Broadview, reviewed all the videos, and "tagged the video showing the incident and any video that morning showing any of the defendants" so that it would be saved to be included in a future discovery production. Despite assurances that the video was being preserved, defense counsel was later notified that certain Broadview police department body camera footage had been "lost/deleted." Defense counsel were advised that this lost or deleted footage included videos that were previously tagged by the AUSAs as being relevant and material. Specifically, the AUSA assigned to the case at the time wrote to defense counsel as part of a discovery production on February 12, 2026:

> Also, you will see an FBI 302 explaining that the Broadview Police Department was unable to transmit some of the videos that we tagged during our visit to the Broadview Police Department in December 2025, that the Broadview Police no longer can access those videos, and their efforts to recover those videos thus far have been unsuccessful. It is our understanding, memorialized in a 302, that Broadview Police had a new system for body-worn camera footage and they appeared to have difficulty with it at the time. However, based on our review, the videos were all repetitive of the same scenes from different officers' body cameras, standing near each other. In reviewing the videos we were able to obtain and produce to you, it appears that these videos show the same scenes we saw on the videos that Broadview was unable to access.

Counsel for Defendants believe the government and/or Broadview are still trying to recover these deleted videos but if they are not able to do so it is likely counsel for Defendants will seek either an adverse inference instruction from the Court, or inquire of government witness(es) how these videos were lost or deleted, and what the basis is for claiming the videos were "repetitive" as the prosecutor claimed. As the Court will see at trial, there will be material disagreements about exactly what happened in the moments before and during the time Agent A decided to turn his SUV into the crosswalk and into the protestors. What the government describes as "repetitive" likely shows different angles that are most likely material to Defendants' version of events, especially because Defendants were located at different positions in the crosswalk when the SUV

turned into them. Whether these videos were lost or deleted due to a mistake or negligence is unknown, but the only one with access to them was the government and it failed to preserve them, despite repeated defense requests. Thus, inquiry into this matter should be allowed at trial.

### VII. Defendants Do Not Intend to Present an Entrapment Defense.

The government moves to preclude a defense of entrapment. Defendants do not intend to present an entrapment defense. They have consistently denied that any crime occurred, which is the antithesis of an entrapment defense, "which essentially admits commission of the crime, but claims that the government induced the illegal conduct." *United States v. Al-Shahin*, 474 F.3d 941, 948 (7th Cir. 2007).[8] The motion should therefore be denied as moot.

However, the Defendants take issue with the government's framing, which appears to aver that any evidence that on September 26, 2025, defendants and many others were engaged in First Amendment activity in a public forum where earlier that morning law enforcement had previously permitted them to demonstrate, is *only* probative to an entrapment defense. The government either fundamentally misconstrues or misrepresents Defendants' arguments in an effort to bar the admission of highly relevant evidence. The keenly probative nature of this evidence is discussed at length above and below.

Defendants' First Amendment activity, specifically their involvement in the Jericho Walk during the morning of September 26, 2025, at the intersection of Harvard Street and 25th Avenue, before Agent A drove his SUV into them and the group of protestors is highly relevant to the case at bar. First, it directly related to elements of the offenses charged—such as Defendants' individual mental states and the lack of any conspiracy to prevent, by force and intimidation, Agent A from

---

[8] While federal case law permits defendants to raise the inconsistent argument asserting, "'I didn't do it, but if I did I was entrapped,'" the Court should rest assured that no Defendant will advance that argument rightly described as the "functional equivalent of a guilty plea." (*United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011) (discussing *United States v. Mathews*, 485 U.S. 58 (1988)).

discharging the duties of his office. Second, the immediate factual landscape of the morning of September 26, 2025 informs defendants' and others' actions, and are necessary for an accurate presentation of the facts and "context" to the jury. *See United States v. Lashmett*, 965 F.2d 179, 185 (7th Cir. 1992) (quoting *United States v. Mancari,* 875 F.2d 103, 105 (7th Cir. 1989) ("The onset of a course of dealings is admissible to enable the jury to grasp the context in which the specific transactions charged as being criminal occurred."). Put simply, evidence of the fact that Broadview Police Officers allowed Defendants and other protestors to engage in the Jericho Walk in the intersection and helped to manage traffic the morning that Agent A drove into them is highly probative evidence as to Defendants' mental states and the absence of the charged conspiracy.

The Defendants will not raise an affirmative defense; they are not guilty. The government's motion should be denied as moot. With the entrapment defense theory aside, the government has advanced no meaningful argument to bar clearly relevant, admissible, and a standard scope of evidence from admission. These undeveloped and backdoor arguments should likewise be denied.

### VIII. Evidence of Law Enforcement Conduct is Relevant to Defendants' Intent, Conduct, Expression, and the Existence (or Lack Thereof) of the Charged Spontaneous Conspiracy.

As with the prior motion, motion *in limine* VII is mistaken in the Defendant's theory at trial. The government's argument assumes that Defendants will concede that their conduct was illegal, but that law enforcement somehow made it legal. Defendants have no intent to make such an argument because they did not violate either 18 U.S.C. §372 or 18 U.S.C. §111. Thus, they do not intend to argue that law enforcement permitted any unlawful conduct because they do not believe they ever engaged in unlawful conduct. From that standpoint alone, the motion should be denied as moot.

The government's cited cases further illustrate the irrelevance of this motion. In *United States v. Oliveras*, No. 21-738 (BAH), 2023 WL 196525, 2023 U.S. Dist. LEXIS 7805, at *2-4 (D.D.C. Jan. 17, 2023), the government successfully moved *in limine* to preclude a January 6th defendant from arguing entrapment by estoppel and that the inaction of law enforcement "somehow made any of his otherwise allegedly unlawful conduct lawful." The government's other cited case, *Garcia v. Does*, 779 F.3d 84, 89 (2d Cir. 2015), could not be more inapposite. It arose in a civil context where various individuals sued officers for false arrest at an Occupy Wall Street protest march across the Brooklyn Bridge, having been arrested for disorderly conduct after being told by officers that they were violating various laws, despite their allegations that the officers led their march across the bridge. The officers prevailed on qualified immunity grounds because they had probable cause to make the arrests, including because plaintiffs could not show that the police authorized them to march in the roadway across the bridge.

In stark contrast, here the Broadview Police Officers, through their conduct, undoubtedly permitted Defendants to do the Jericho Walk for hours before Agent A drove into the intersection. But more importantly, Defendants—unlike the plaintiffs in *Garcia*—are not charged with a low-level offense such as disorderly conduct for marching in the crosswalk, and the Defendants do not expect the government to call such conduct unlawful. Moreover, unlike the plaintiffs in *Garcia*, Defendants do not argue that law enforcement implicitly gave them permission to engage in the charged offenses—conspiracy and misdemeanor impeding—because they strenuously deny that those offenses ever occurred. Thus, the government's cases, which focus on an argument that Defendants do not make, are inapposite and can be ignored. The motion should be denied as moot.

32

**IX.** **Evidence of Defendants' Protest Activity is Relevant**
**to Defendants' Intent, Conduct, Expression, and the Existence**
**(or Lack Thereof) of the Charged Spontaneous Conspiracy.**

In motion *in limine* IX the government moves to preclude evidence of Defendants' lawfulness, aside from reputation and opinion evidence that is offered pursuant to Rule 405(a). The government contends that it would "distract the jury" to offer testimony and evidence that "on prior occasions they were lawfully demonstrating about public policy or engaged in lawful First Amendment activities." (Motion, p. 22).

First, defense counsel know the evidentiary rules concerning reputation and opinion evidence offered by character witnesses. It is unnecessary for the Court to enter an order that simply recites the standards of Rule 405(a), especially as the government does not point to any specific evidence it seeks to exclude. *Linkepic Inc. v. Vyasil,* No. 12 C 09058, 2019 WL 11717160, at *1 (N.D. Ill. Oct. 15, 2019). ("[T]his motion [*in limine*] is just a make-work request to enforce the Rules of Evidence, so it is denied as unnecessary.").

Second, and more importantly, the motion is overly broad on its face, which is sufficient to justify its denial as it ignores case law that provides for the admission of certain non-character evidence concerning lawful conduct by a defendant that is not designed to merely prove the absence of illegal acts through other lawful behavior. *See*, *e.g.*, *United States v. LeFevour*, 798 F.2d 977, 980 (7th Cir. 1986) (finding, contrary to the government's "misdirected" arguments, that there was "nothing wrong" with arguing that a defendant-judge charged with bribery had a practice of dismissing tickets on request, in order to lay a foundation for a defense that he was not influenced by the receipt of a bribe). Troublingly, the government suggests that it would be improper to elicit evidence that the Defendants "obeyed orders to disperse on occasions other than the charged case" (Motion, p. 22), which is an overbroad request that, as with other motions above,

33

could preclude Defendants from introducing highly probative evidence relevant to their mental states and the lack of any conspiracy. Namely, for a fair trial, Defendants must be permitted to show that on the morning of September 26, 2025, prior to Agent A driving through the lawfully protesting crowd, that very same crowd, including some of the Defendants, parted and paused the Jericho Walk for other vehicles, including those of law enforcement, at the direction of Broadview police. While it is Defendants' position that this evidence is *not* subject to Rule 405, given the breadth of the government's motion *in limine*, Defendants feel compelled to explain the core relevancy of this evidence.

As described above and in prior pleadings, throughout the morning of September 26, 2025, protestors, including Defendants at various times, engaged in a peaceful, nonviolent protest at the intersection of Harvard Street and 25th Avenue by walking across the intersection. This protest was done for hours in the presence of the Broadview Police officers who watched and none of whom made any arrests for any offenses, as depicted in these images from the officers' own body-worn camera video.[9]



---

[9] This video was previously provided to the Court in Defendants' reply in support of their motion for a bill of particulars. Dkt. #87, p. 5.



Throughout the morning, Broadview Police officers parted these protestors and managed traffic when vehicles sought to enter and exit Harvard Street, as depicted in the following additional body-worn camera videos from before Agent A drove into the crowd:







However, unlike prior instances, Agent A drove directly into the crowd without allowing the Broadview Police to part the crowd as they had both before and after Agent A's arrival:



That image shows the shadow of the Broadview police officer who had previously parted the crowd to allow other vehicles, including those belonging to law enforcement.[10] Other officers can be seen standing to the right of the frame on 25th Avenue. Thus, the evidence will show that, unlike prior occasions *that same morning* when protestors ultimately parted or paused the Jericho Walk for vehicles, including those of law enforcement, when Broadview police officers were present, Agent A drove into the crowd without waiting for those officers to quickly and calmly part the protesters. The fact that Defendants would part or pause the Jericho Walk for law enforcement

---

[10] The full body-worn camera video from which this still image is taken from was included as Exhibit B to Defendants' Motion to Dismiss filed at Dkt. #100.

vehicles on September 26, 2025, is highly relevant and probative to their mental states and the absence of any conspiracy to prevent, by force and intimidation, Agent A from discharging his duties. It also helps illustrate why Defendants and others reacted in the manner they did. Barring evidence that this circumstance was an unexpected anomaly would leave an incomplete and even false portrait for the jury about what occurred and why. The basic standard for relevancy is easily met.

To be relevant, "evidence must tend to make a fact of consequence at trial more or less probable." *United States v. Proano*, 912 F.3d 431, 438 (7th Cir. 2019). The threshold for relevancy is "low." *Id*. "If evidence can help jurors answer the questions they must ask, the Rules permit its admissibility in the absence of a rule or law to the contrary." *Id*. These standards apply to evidence that is probative to showing a defendant's state of mind. *Id*. (affirming use of training and police department policy evidence as probative to a defendant police officer's state of mind in prosecution for deprivation of civil rights under 18 U.S.C. §242).

Defendants are charged with conspiracy to impede or injure officers under 18 U.S.C. §372. As narrowed by the government (*See* Exhibit A), only the first clause of that statute will be before the jury, which will require proof that a conspiracy existed, defendants each knowingly and voluntarily entered into that conspiracy, and that members of the conspiracy conspired to prevent by force and intimidation an officer of the United States from discharging his duties. *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010). "Intimidation" is a subjective standard requiring proof that "the speaker or actor must intend his or her words or conduct to intimidate." *United States v. Ehmer*, 87 F.4th 1073, 1119 (9th Cir. 2023); *United States v. Payne*, No. 2:16-cr-00046-GMN-PAL, 2017 U.S. Dist. LEXIS 15651, at *21 (D. Nev. Jan. 3, 2017) (emphasis added) ("§372 is a conspiracy statute that *requires proof of a defendant's intent* to prevent a federal officer from

37

discharging his or her duties by force, threat, or intimidation."). Moreover, the word "prevent," which modifies the remaining terms in the first clause of §372 means to stop, as distinct from impeding. *United States v. Gerhard*, 615 F.3d 7, 20 (1st Cir. 2010).

Whether Defendants attempted to prevent, by force and intimidation, other law enforcement vehicles from moving through Harvard Street in the hours and minutes before Agent A drove through the crowd is highly relevant to their mental states and whether or not they joined a conspiracy to prevent, by force and intimidation, Agent A. This is so even under the government's tenuous "spontaneous conspiracy" theory. Indeed, putting the shoe on the other foot, had any Defendant stood still in front of or made physical contact with other law enforcement vehicles that were entering and exiting Harvard Street in the morning of September 26, 2025, the government would surely seek to introduce such evidence and argue that it is probative of their mental states and the existence of an alleged conspiracy. The absence of such evidence and, moreover, the fact that Defendants parted or paused the Jericho Walk when Broadview police instructed them to do so, is likewise highly probative of the absence of any conspiracy and necessary for Defendants' ability to present their defense to the charges. *See Holmes*, 547 U.S. at 324. *See also Chambers v. Mississippi*, 410 U.S. 284 (1973) (similar).

Thus, and in addition to the reasoning supported by *LeFevour* cited above, the government's cases are inapposite and deserve little attention. (Motion, pp. 22-23). This is so unlike the circumstances in those cases where, for example, defendants attempted to show that on prior occasions they did not accept bribes during meetings so they could argue that accepting a bribe in the charged setting was out-of-character. Indeed, Defendants do not seek to admit prior instances of "honesty" or a "good deed" from some distant and unrelated protest or demonstration as character evidence. Rather, Defendants seek to introduce direct evidence of their conduct in the

38

hours and minutes shortly before Agent A drove into them that is not only necessary to provide highly relevant context but bears directly on their mental states, their intent, and whether the conspiracy charged ever existed. Evidence showing that they parted or paused the Jericho Walk when Broadview Police Officers told them to and were physically present, rebuts the government's favorite and deeply mistaken refrain that Defendants and others "swarmed" Agent A's vehicle, as opposed to the demonstrable and unavoidable fact that it was Agent A who instigated the entire incident by driving his three-ton SUV into the crowd of peaceful protesters on a public way.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Boulevard, Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Theodore Thomas Poulos**
**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tpoulos@cotsiriloslaw.com
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*