IN THE UNITED STATES DISTRICT COURT.
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 25 CR 693 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, CATHERINE | ) | |
| SHARP, BRIAN STRAW, and | ) | Chicago, Illinois |
| JOSELYN WALSH | ) | April 29, 2026 |
| Defendants. | ) | 10:30 a.m. |

TRANSCRIPT OF PROCEEDINGS - HEARING
BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

| | |
|---|---|
| For the Government: | HON. ANDREW S. BOUTROS<br>UNITED STATES ATTORNEY<br>BY: MS. WILLIAM HOGAN<br>MR. MATTHEW D. SKIBA<br>MR. ANDRES ALMENDAREZ<br>219 S. Dearborn Street, Suite 500<br>Chicago, Illinois 60604 |
| For Defendant Michael Rabbitt: | TAFT STETTINIUS & HOLLISTER, LLP<br>BY: MS. NANCY L. DePODESTA<br>111 East Wacker, Suite 2600<br>Chicago, Illinois 60601 |
| For Defendant K. M. Abughazaleh: | LAW OFFICE OF JOSHUA G. HERMAN<br>BY: MR. JOSHUA G. HERMAN<br>53 West Jackson Boulevard, Suite 404<br>Chicago, Illinois 60604 |
| | LAW OFFICE OF MOLLY ARMOUR<br>BY: MS. MOLLY ARMOUR<br>53 West Jackson Boulevard, Suite 1424<br>Chicago, Illinois 60604 |

APPEARANCES (Cont'd):

For Defendant Andre Martin: COTSIRILOS, POULOS & CAMPBELL, LTD.
BY: MR. TERRENCE H. CAMPBELL
MS. MALLORY DAVENPORT
55 East Monroe Street, Suite 3250
Chicago, Illinois 60603

For Defendant Brian Shaw: CHERONIS & PARENTE
BY: MR. CHRISTOPHER PARENTE
140 South Dearborn Street, Suite 404
Chicago, Illinois 60603

Court Reporter: Noreen E. Resendez, CSR, RPR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1728
Chicago, Illinois 60604
312-582-5267
Noreen_Resendez@Ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURTROOM DEPUTY: Calling case 25CR693, *USA vs. Rabbitt, et al.*

MR. HOGAN: Good morning, Your Honor. AUSA Hogan, Skiba, and Almendarez.

THE COURT: Good morning.

MR. CAMPBELL: Good morning, Your Honor. Terry Campbell on behalf of Andre Martin along with my colleague Mallory Davenport.

MR. HERMAN: Josh Herman on behalf of Cat Abughazaleh I ask for her presence to be waived.

THE COURT: That's fine.

MS. ARMOUR: Molly Armour. I've also filed an appearance on behalf of Cat Abughazaleh.

MS. DE PODESTA: Good morning, Your Honor. Nancy DePodesta and Carly Chocron on behalf of Michael Rabbit.

MR. PARENTE: Good Morning, Your Honor. Chris Parente and Damon Cheronis for Mr. Shaw, who is to my left.

THE COURT: Good morning, everyone. We have a lot to do today. I'll start with the easy one. The motion to file an oversized brief that was filed last night is granted. In terms of the grand jury transcripts, let me start by asking the government. Do you object to those being provided to the defendants?

MR. HOGAN: Your Honor, I think that we're going to

find that that issue is moot. We're going to move to dismiss Count 1, and we are filing, as we speak, a superseding information on the remaining counts with the remaining four defendants.

THE COURT: Okay.

MR. HOGAN: So we have brought you, in compliance with your order, the unredacted versions; but since we are moving to dismiss Count 1 and their motion and your order were directed to that, I think that that issue should be moot.

THE COURT: I think that's probably right. Does that sound right to all of the defendants?

MR. CAMPBELL: I think the answer is. I want to have a minute to think about it; but if we have a disagreement, I want to file something promptly.

THE COURT: Talk amongst yourselves.

(Counsel conferring.)

MR. HERMAN: Judge, can we actually put a pin on having a final decision on whether or not that is moot until we see what the superseding information is. We understand that it could negate everything like that, but I think we'd like to see what the charge is, what the language is, and then we'll consult with --

MR. HOGAN: I actually have copies of what is right now, hopefully, in the clerk's office. If you want to take five minutes.

THE COURT: Sure. Absolutely. Take your time.

(Counsel conferring.)

MR. CAMPBELL: Hi, Judge. So there's one small issue we want to do some research on. If we have something to say, we'll file it within the next, you know, handful of business days.

THE COURT: Okay. I mean, look, if it's an information and it's only misdemeanors, they didn't have to be presented to the grand jury. That means anything that may or may not have been said to the grand jurors, I think, is irrelevant at that point. But if you all decide differently and have law to say it, file it. Can we get that by next Monday, perhaps?

MR. CAMPBELL: Okay.

MR. HOGAN: Do you still want us to furnish the unredacted versions or should we wait.

THE COURT: Let's wait.

MR. HOGAN: Thank you.

THE COURT: Let's see if we've mooted out anything else now.

MR. HOGAN: I think it might moot out the motion to dismiss on First Amendment.

MR. CAMPBELL: I'm not sure that that's accurate.

THE COURT: I'm not sure either, and I'm able to rule on that today, so I will issue a ruling on that before we

leave today. We've got the motion for the agent's text messages, which looked like it may not have been necessarily needed to be filed. Are you planning to provide those and if so, when?

MR. HOGAN: We are working diligently on that is what I would say. There's been some trans -- I don't know how to put it exactly. The protocols that DHS uses for their work phones is different than the ones the FBI uses. And to get access to them through their encryption, has been a much more arduous effort than we anticipated. But it's going on and it's not something that we've ignored or neglected.

THE COURT: Do you feel like May 12th would be enough time for you to get through that?

MR. HOGAN: We hope to have all the messages in Chicago by tomorrow at the latest, so I would say certainly by then.

THE COURT: Okay. So your drop-dead date -- I'll grant the motion. Although it sounds like it's basically unopposed. Your drop-dead date to provide any Brady or Jencks Act material regarding those text messages is going to be May 12th, which gives you two weeks to prepare. This is all going to probably be cross-examination fodder, it's anything at all. So I think that gives you enough time.

MR. PARENTE: Judge, he mentioned work phone. I want to be clear that we're asking for personal phone and --

MR. HOGAN: Exactly. But it's the work phone that has been the delay. We don't want to do it piecemeal.

THE COURT: That's fine. Let me go ahead and issue the First Amendment ruling and then there is one motion in limine that I wanted to talk about that I think might require a little more work by the parties.

With respect to the First Amendment issue, I had a couple of questions for defendants. Do we have a representative speaker?

MR. PARENTE: Yes, Judge.

THE COURT: In your motion to dismiss on the First Amendment grounds, you acknowledged that the defendants had braced themselves against the agent's vehicle. I'm going to ask you, what is your position with respect to that particular act? Are you arguing that that is itself expressive conduct? Because I had understood your theory of the case to be that they were, like, trying not to get hit by the car. And if they're trying not to get hit by the car, then I don't think it's expressive conduct; it's defensive conduct.

MR. PARENTE: It is defensive conduct. But I think that the interplay with the First Amendment is they have the right to assemble, right. Right now they have the First Amendment zone. Let's assume they were in that zone at the time, and the agent drove his car into the zone. They're going to put their hands up but they're still -- it's their

right to assemble and be in that area. But what we're concerned about is the government can create a conspiracy out of somebody who is just exercising their right to assemble.

So if the car had driven slowly into the First Amendment zone, that didn't exist at the time, they would still charge them under 372. And our claim would still be, yeah, we put our hands on the car because we didn't want to get run over; but we're in the First Amendment zone exercising our right to assemble.

THE COURT: Well, the First Amendment really isn't zoned, right. There are certain acts that are First Amendment protected speech; there are others that are not.

MR. PARENTE: Right.

THE COURT: So I'm trying to figure out act by act, is it your position that the putting up of the hands constitutes expressive conduct under the First Amendment or were they literally just trying not to get hurt?

MR. PARENTE: They were literally trying not to get hurt.

THE COURT: Okay. So would you agree that if they had been pushing against the agent's car for the purpose of stopping it from getting to work that that would not be protected under the First Amendment?

MR. PARENTE: I would agree with that.

THE COURT: Okay. And similarly, banging on the car

wouldn't have been protected speech?

MR. CAMPBELL: I'm not so sure I buy into the blanket statement that that is not expressive conduct in these circumstances. So, you know, I need to go back and look at some of the cases we cited, but I'm not sure that in the particular circumstances here, right -- it can be both. It can be the natural reaction and defensive maneuver and it can also be a First Amendment expressive conduct. So I'm not quite as black and white on that as was expressed.

THE COURT: I don't think it can be both. I mean, to be protected speech, it needs to be something that is intended to send a message, so the exact element is whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it. So if it's intended only to stop them from getting hurt, I don't think that's the same as a protected speech message.

MR. CAMPBELL: So all I'm saying right now is I don't think it's an either or situation, and it somewhat depends on what all the government is claiming was part of the 111 conduct violation, right. You know, there are things being said. There is certainly expressive conduct in what they were doing out there. And so --

THE COURT: No doubt.

MR. CAMPBELL: All I'm telling you is I want time to

think about that because I don't think it's black and white and I don't think it is either or.

THE COURT: Okay. I'm going to go ahead and issue my ruling and you, obviously, can raise any appropriate motions later on down the line.

In this case you all have moved for dismissal of the conspiracy charge, which is perhaps why this may be moot once it is dismissed. Arguing that the indictment punished you based upon the exercise of First Amendment rights to free speech and free assembly.

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a criminal defendant may move to dismiss an indictment before trial for failure to state an offense. An indictment may fail to state an offense if the charged offense is based on an unconstitutional statute or unconstitutional application of the statute as applied to the defendant's conduct. When considering such a motion I have to assume that the indictment's factual allegations are true, and I have to view all the facts in the light most favorable to the government.

A motion to dismiss an indictment is directed to the validity of the indictment itself, not the sufficiency of the evidence. So according to the indictment as it currently stands, which I understand may not exist shortly, the case arises from the defendants' activity outside of a detention

facility used by ICE in Broadview, Illinois. On September 26th, 2025, at approximately 7:45 a.m. the agent, who is known as Agent A in the indictment, was wearing civilian clothes, driving a government-owned vehicle to the Broadview facility to report for his duties. Also, according to the indictment, when he turned west onto Harvard Street, the defendants and other individuals surrounded his vehicle and forced him to drive at an extremely slow speed.

The indictment alleges that the defendants and others banged aggressively on the government's vehicle, the side and back, the windows, the hood, and other vehicle body parts; crowded together in front and side of the vehicle; and pushed against the vehicle to hinder and impede its movement; scratched the body of the government vehicle, including etching a message into the body of the vehicle; broke one of the vehicle's a side mirrors and broke a rear windshield wiper off of the vehicle.

Defendant Rabbitt is alleged to have surrounded the government vehicle with the group from the side, bracing his hands and body against the vehicle, and hitting the windows of the vehicle.

Defendant Abughazaleh is alleged to have joined the crowded at the front of the vehicle and with her hands on the hood, braced her body and hands against the vehicle while remaining directly in the path of the vehicle.

Defendant Martin is alleged to have joined the crowd at the front of the driver's side of the government vehicle and pressed his shoulder against the vehicle while remaining in the path of the vehicle.

And Defendant Straw is alleged to have joined the crowd at the front of the vehicle and with his hands on the hood braced his body and hands against the vehicle while remaining directly in its path.

The defendants have made clear in the reply brief that they're not arguing that the particular charge in this case is unconstitutional on its face; rather they are raising an as-applied challenge. My job is therefore to decide whether on the face of the indictment any of these statutes have been unconstitutionally applied to the defendants' conduct in Broadview on September 26th.

The parties are in general agreement, as they should be, on the importance of pro -- importance of protections guaranteed by the First Amendment. In *Cox vs. Louisiana,* the Supreme Court held that free speech and assembly is basic and fundamental and encompasses peaceful social protests. So important to the preservation of the freedoms treasured, in democratic society.

Similarly, in *Edwards vs. South Carolina,* the Supreme Court held that protest participation is a pristine and classic form of protected speech. Undoubtedly the defendants

were exercising their First Amendment rights on September 26th, 2025, to both speak and assemble; but that, of course, does not end the inquiry.

As the Supreme Court further held in *Cox*, there is no place for violence in a democratic society dedicated to liberty under law, and the right of peaceful protest does not mean that everyone with opinions or beliefs to express may do so at any time and at any place. What begins as protected speech can transition into criminal conduct sometimes quickly.

The First Amendment does not protect violence, threats to use force, or obstruction of streets or buildings. Even if the people who do those things have a political purpose in doing so.

For an as-applied First Amendment challenge, I have to first assess whether the defendants' conduct is, in fact, expressive; and that was the reason for my question at the beginning. If it is, I then next need to determine whether the challenged statute is related to the suppression of free expression. That's from the *Texas vs. Johnson* case. If the statute is not related to expression, then the less stringent standard that the Supreme Court announced in *United States vs. O'Brien* for regulations of noncommunicative conduct controls, and I would then go on to analyze the *O'Brien* factors.

My analysis for today begins and ends with that first element, whether the defendants' conduct as charged in the

indictment was expressive. In deciding whether the conduct possesses sufficient communicative elements to bring the First Amendment at all into play, the proper inquiry is whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed. Both parts of that inquiry are informed by the conduct, the context in which the conduct took place.

Here the facts underlying the defendants' conduct on September 26th are fiercely contested. The defendants have asserted they are being prosecuted for vocalizing their opposition to Operation Midway Blitz, that the spontaneous conspiracy the government had alleged is based only on their coincidental presence and participation in a public protest, and that none of the video recordings depict any of the defendants causing damage, exerting force, threatening, or attempting to injure the agent. The government on the other hand contends that this case is about the defendants having crossed a line from peaceful protest to impeding Agent A from going to work at the Broadview facility through force or intimidation.

Whether the defendants' conduct was expressive within the protections offered by the First Amendment is a question involving disputed facts. In resolving that question would require me to weigh evidence of what exactly happened during

the incident, which I cannot do at this stage. As an example the indictment has alleged that all the defendants in some way made contact with the agent's vehicle. The indictment further alleges that they did this with the purpose of preventing by force or intimidation Agent A from discharging the duties of his office.

The facts at trial could show that's true or they could show that the defendants were just touching the vehicle in an effort to stop it from hitting them, as I think some of the defendants have indicated or they could show that the defendants were holding out their hands in a stop gesture in an effort to convey some type of political message that ICE should be stopped. Only that last set of facts would implicate the First Amendment.

So given that a motion to dismiss an indictment is directed to the validity of the indictment, not the sufficiency of the evidence and that I cannot make factual findings between which of those three things happened in this case, the motion to dismiss on First Amendment grounds is going to be denied.

The defendants have, I think, in several places in the motion conflated whether the government can prove that a crime occurred or instead whether the defendants were merely present while others engaged in criminal conduct with the question of whether the defendants' actions were protected by

the First Amendment. But those are separate and distinct legal inquiries.

The first involves whether the defendant or the government can meet its burden of proof beyond a reasonable doubt that the defendants committed a crime. The second asks whether the government what they have alleged in the indictment is criminal conduct is instead protected speech. Based upon the facts as alleged in the indictment, which at this point I must take as true, the indictment is not seeking to punish protected speech. There is no indication in the indictment that the government is proceeding on a theory of criminality based upon chance, signs, or walking back and forth in a public intersection. And they are not under an obligation at this point to explain exactly what their theory of the case is.

So given that the motion is denied if the evidence supports it, you can certainly raise this type of motion again either during or following trial under Criminal Rule 29.

That I think disposes of the First Amendment motion. Is there anything that anybody wants to say on that before I move on to the motion in limine that I have questions about?

MR. PARENTE: To your point, Judge, I think we'll raise it at the Rule 29 point if we get there, but I think our focus was more on the right of the assembly as opposed to speech, which is why the heading is different; but I

understand Your Honor's ruling.

THE COURT: All right. I've taken a quick browse through the motions in limine. We will discuss them all in great detail at the pretrial conference, but the one that I think we need to talk about now is the government's Motion in Limine 5, which is the motion to use chants and statements. Specifically the government has asked to use anti-ICE statements and chants made by the defendants and their coconspirators regarding surrounding and preventing ICE vehicles from entering the Broadview facility. Specifically, they have stated that on multiple occasions the Broadview police officers heard protestors discussing not letting ICE cars through to the facility.

So let me first ask the government, are you continuing with this motion given what we've just learned about the change in the charges that will be at play at trial?

MR. HOGAN: Can we have a second to discuss that?

THE COURT: Sure.

(Counsel conferring.)

MR. HOGAN: And the answer is yes in the context that some of this is on video and audio. You can hear it. So it's part of the acts that are involved in the protest that turned into the obstruction. Then we have Ms. Abughazaleh, for example, while she's pushing against the car chanting, saying a variety of things. I can't remember off the top of my head

what they are exactly. And we have the Broadview police officers who observed and will testify to what it is that they saw the defendants doing, so from that standpoint ... When they were identifying different vehicles to obstruct, they let people who worked there -- the parking lot area is not a public area. It's all private. It's owned by a big factory.

The factory owners did not object to the protestors being on their property. It's a huge parking lot. So the fact is that the Broadview police were there observing what was going on and hearing the protestors identify that's an ICE car, block it, in so many words. So from that standpoint, yes.

THE COURT: Okay. So I understand -- well, at least your motion states that you are introducing it to show motive and intent. So those are, obviously, relevant spaces. They are not hearsay exceptions. So what hearsay exception do you believe applies to those statements?

MR. HOGAN: Those are excited utterances, they're present sense impressions by the police officers among others. I mean --

THE COURT: Well, the presence sense impression is not really a hearsay exception when it applies to the officers. It would, I suppose, be as applied to the protestors. Here is my concern with the motion --

MR. HOGAN: And let me -- it's also, you know, an

act. It's a verbal act essentially by the protestors, so it's not hearsay at all.

THE COURT: All of those things could be true. Without knowing what statements exactly you're seeking to elicit, when they were made, who in the general scheme of things made them, and who heard them --

MR. HOGAN: That's reflected in 302s that have been provided to the defense, Your Honor.

THE COURT: Okay. But I don't have it. So if you're asking me to admit them before the trial, I would need to know what statement, who made it, who heard it, why you think it represents anything with respect to that person's motive and intent. I think with respect to the defendants' statements, that I am guessing is not going to tender an objection if it came out of the defendants' mouths, it is going to be admissible.

MR. CAMPBELL: I think the answer depends on when and in what context, right. We are now limited to this act, right, which starts when hands are placed on the car and so, you know, possibly; but it really depends on what they are trying to elicit, when it was said, who heard it; and, you know, the 302s do not shed much light on the substantive statements that the government has cited as to who said it or when it was said, right. And that was really more in the context of the conspiracy charge, that I know we're past. But

no, not every utterance that came out of someone's mouth is admissible on the misdemeanor charge.

MR. HOGAN: And we are not seeking to admit everything that came out of anybody's mouth. We are happy to supplement our motion, Your Honor.

THE COURT: Grant. At this point I cannot grant it only because I don't know exactly what we're talking about. So why don't you narrow down on the portions of the video that you are hoping to get in, what exact statements were made roughly at what point in the video, and then what defendant you're trying to admit it against. I don't know how loud it was there. I don't know how close together everyone was. It could very well be that you have certain statements or at least I can imagine a world in which certain statements are admissible against one but not all of the defendants. So I think we need to drill down a little bit more on that.

MR. HOGAN: We understand.

THE COURT: Okay.

MR. PARENTE: Judge, if I can just ask. We did not have any advance notice that they were dismissing Count 1. Obviously, that sort of changes what this trial looks like and I know that the motion in limine date has passed. I would ask for a new date now that we can think through this, now that all of that is no longer relevant and it's just the misdemeanor. I do think things that we thought should have

come in before, maybe shouldn't come in now because there's no more conspiracy charge.

THE COURT: Okay.

MR. PARENTE: So again not a long date but just a new date so that we can think this through and figure out if there's other things we want to bar.

THE COURT: And how about you also withdraw some of your motions that are no longer applicable?

MR. PARENTE: Again, if they told us, we might have.

THE COURT: Sure. I think that seems fair. Our pretrial conference is set for, what, the 15th or 16th? 13th. All right. How long do you all need to supplement?

MR. CAMPBELL: A week.

THE COURT: Is the government pondering any changes to its motions based upon this?

MR. HOGAN: I have not really thought about it to be honest. Right now I would say nothing off the top of my head.

THE COURT: Let's take May 6th for any revisions based upon the new document that we'll be proceeding under at trial.

MR. CAMPBELL: I believe we have filings due next Tuesday that we were preparing in anticipation of both charges. Can we make that to next Thursday as well?

THE COURT: Yes.

MR. CAMPBELL: And if we need more time on any of

that, we will ask but hopefully we will do that.

THE COURT: Great. Yeah, the jury instructions will change quite a bit.

MR. HOGAN: And we were going to ask for more time to produce the jury instructions and witness list and things of that nature.

THE COURT: How long do you need?

MR. HOGAN: An extra week.

THE COURT: What was it?

MR. HOGAN: I think it's next Tuesday. I think it's the 5th. So if we can have until the next Tuesday, the 11th or 12th.

THE COURT: Okay. So May 6th for revisions to motions in limine. Let's go with May 12th for jury instructions, witness list, exhibit list. Hopefully you will all have agreed on in large part the jury instructions. They have become in large part much simpler now. I know this was a surprise to you all. Have you given any thought to -- probably not -- whether or not this is one trial or several trials at this point?

MR. CAMPBELL: Whether everyone is going to trial?

THE COURT: Is everyone going together because there is no longer a conspiracy charge.

MR. CAMPBELL: We have not thought about that, so if we can have until a week, you know, from today to file

something on that or Tuesday or whatever you want.

MS. DE PODESTA: I do think a dispositive issue for our analysis is going to be the statements that the government identifies in terms of how that might impact different defendants, so I think having that information would be very useful in making that assessment.

THE COURT: We could always have four different juries.

MR. HERMAN: Judge, on the point of the statements and responding to something Mr. Hogan said, the chants that Ms. Abughazaleh on the video that I think he was referring to were the protest chant that the group was singing as the car drove into them. So I think it dovetails into your ruling on the motion to dismiss. She's still singing that same protest chant song, which has an expressive value as the car drives into her. And we specifically address that, I think, on page 25 of the response that we filed last night. How even without a conspiracy using statements even of an individual against that individual are relevant for that person's possible First Amendment defenses here. So we would appreciate a specific identification of the statements not only so we can tailor our defenses accordingly but also to address the severance issues that might come up realistically.

THE COURT: That seems fair. How long do you think you need to come up with what all portions of statements on

the videos you are going to be putting in?

MR. HOGAN: Monday.

THE COURT: Okay. So you don't need to provide me unless -- well, I guess you do need to provide me. All right. Why don't you all meet on Monday and discuss which will be objected to. It could be that there is some kind of agreement here, maybe. And how about by Thursday a renewed motion in limine on that particular issue. If I'm not getting motions and jury instructions until the 12th, I don't think it makes sense to keep our pretrial conference as the 13th. So let's all open up our calendars now.

MR. SKIBA: Your Honor, if I may, I believe our proposed juror questionnaire is also due on May 5th. If we can also --

THE COURT: I'm going to push everything. I'll issue a minute order that cleans up a little of this with new dates that are all pushed forward in time. Nothing will be due early next week. What do we think the chances are that everyone can get together on May 15th at 1:00 p.m.?

MR. CAMPBELL: On behalf of Mr. Martin I can.

MR. HOGAN: That's fine with us.

MS. ARMOUR: Your Honor, unfortunately it does not work for us. I have travel scheduled that I cannot change.

THE COURT: Will you be back by the 18th?

MS. ARMOUR: I will be back by the 18th.

THE COURT: 18th at 1:00 p.m.? I see nods.

MR. HOGAN: Fine with us.

THE COURT: Okay. Pretrial conference will be set for the 18th at 1:00 p.m. I will issue a minute order today with new dates roughly consistent with what we've talked about, hopefully today for all of the other filings that we are expecting. If anything changes, let me know as soon as possible. I think it's possible or at least theoretically possible that the misdemeanor may put other options in people's heads for pretrial resolutions. So please feel free to reach out if that happens.

MR. HOGAN: Thank you, Your Honor.

(Concluded at 11:03 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Noreen E. Resendez* — *May 3, 2026*
Noreen E. Resendez, CSR, RPR, CRR — Date
Official Court Reporter