UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MICHAEL RABBITT, et al.

No. 25 CR 693

Judge April M. Perry

## GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE*

The United States of America, by its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, submits the following supplemental motions *in limine.*

### I. Chants of Demonstrators to Establish the Elements of § 111

The government intends to introduce several anti-ICE chants made by the defendants and other demonstrators as they swarmed Agent A's vehicle on September 26, 2025. As clearly shown in the videos attached as Exhibits 1, 2, and 3, the crowd chanted various anti-ICE slogans in unison as they surrounded and pounded on Agent A's vehicle. Those verbal acts are inextricably intertwined with the physical acts of impeding Agent A's vehicle.

### A.     The Chants are Relevant and Not Hearsay

The specific chants, detailed below, are relevant in two respects. First, they will aid the jury's determination of whether the government has met the elements of 18 U.S.C. § 111. As relevant here, § 111 requires that each defendant forcibly impeded, intimidated, or interfered with Agent A while he was "engaged in" or "*on account of* the performance of official duties." (emphasis added). The anti-ICE chants by defendants and other demonstrators establish that they intended to obstruct

Agent A "on account of" his official duties as an ICE officer. Second, and relatedly, defendants have claimed that Agent A was the "real aggressor," Dkt. 87 at 18, and that they thus braced themselves against his SUV only in a defensive manner, Dkt. 100 at 13 (claiming defendants "brac[ed] themselves against a vehicle that drove into a crowd of protestors"). The fact that defendants and other demonstrators shouted anti-ICE chants as they pushed and pressed their bodies against Agent A's vehicle belies such a claim.

The government therefore moves to admit the following chants to both establish the elements of § 111 and to undercut defendants' defense.

    **1.    "Down, Down with Deportation; Up, Up, with Liberation"**

The government seeks to admit the chants "down, down with deportation; up, up with liberation" against all defendants. The chants appear during the first 11 seconds of Exhibit 1, the first 30 seconds of Exhibit 2, and the first 39 seconds of Exhibit 3.

The first 11 seconds of Exhibit 1, and the period from approximately the six second mark until approximately the 17 second mark of Exhibit 3, show that defendant Abughazaleh—while blocking and pushing against Agent A's car—joins in chants "down down with deportation, up up with liberation," together with other demonstrators off screen. Abughazaleh yelling anti-ICE chants as she forcibly impeded Agent A's vehicle shows that she was acting "on account of" his employment with ICE. And her chants underscore that she viewed her obstruction as a political anti-ICE message, reflecting her knowing intent to obstruct Agent A.

The videos further show that the defendants Martin, Rabbitt, and Straw were

2

part of the chanting crowd while they were blocking Agent A's vehicle. Defendant Martin was standing right next to Abughazaleh during the same time intervals described in Exhibits 1 and 3 above and similarly pressed his body against the front of Agent A's vehicle. At approximately the seven second mark of Exhibit 3, Martin is seen mouthing "down, down with deportation." Thus, the chants show Martin's knowledge that Agent A was an ICE officer. That Martin continued to block Agent A's vehicle while these chants were going on is likewise evidence that he intended to forcibly impede Agent A's vehicle *because* Agent A was an ICE officer.

The same conclusion applies with even greater force for defendants Rabbitt and Straw. At approximately the 17 second mark of Exhibit 2, the video depicts Rabbitt walking up to Agent A's vehicle, slapping his hand onto the frame of the vehicle, and physically pushing against it until approximately the 50 second mark. Exhibit 3—starting at approximately the 25 second mark—shows that Rabbitt loudly yelled "down, down with deportation" right before he slapped his hand on the frame. Starting around the 12 second mark of Exhibit 2, Straw appears in frame and jostles with other protestors to get to the front of the vehicle, where he remains until approximately the 1:40 mark. Rabbitt and Straw were similarly on notice that Agent A was an ICE officer based on these chants. That they endeavored to bring themselves to the front of Agent A's vehicle underscores that they did so because he was an ICE officer, and belies any claim that they braced themselves against his car only in a defensive posture. Thus, the chant of "down, down with deportation, up, up with liberation" is relevant as to each defendant's intent.

3

The chants are also not hearsay. First, the chants are verbal acts and thus not hearsay at all. Second, the government does not intend to offer the statements for the truth of the matter asserted—*e.g.*, that deportations should go "down, down," and that liberation should go "up, up." Rather, the chants are evidence of the defendants' knowledge that they were impeding an ICE vehicle and intended to do so. Finally, as to Abughazaleh, the chant is also not hearsay because it is as an opposing party's statement under Rule 801(d)(2) of the Federal Rules of Evidence.

### 2. "Shame!"

The government further seeks to introduce the chants of "shame!" against defendants Rabbitt and Straw. These chants appear from approximately the 30 second mark until the 55 second mark of Exhibit 2, and from approximately the 39 second mark until approximately the 1:04 mark of Exhibit 3.

Although unknown protestors begin stating the "shame!" chants in each video, Exhibit 2 shows that Rabbitt joined in those chants from approximately the 41 second mark until approximately the 50 second mark, all while hanging on to and pushing up against Agent A's vehicle. Thus, these chants are relevant evidence that Rabbitt wanted to send a political message to Agent A as he forcibly impeded his vehicle.

During the entirety of the "shame!" chants shown in Exhibits 2 and 3, Straw continued to jostle with protestors to get to the front of Agent A's vehicle. At approximately the 47 second mark of Exhibit 2, and approximately the 57 second mark of Exhibit 3, Straw threw his Dunkin Donuts coffee on Agent A's windshield while the "shame!" chants are audible. The chants were clearly within Straw's earshot, supporting his knowledge that Agent A was an ICE officer.

4

The "shame!" chants are similarly not hearsay. To the extent that "shame!" conveys an assertion in the first place—that Agent A should feel shame—the government does not intend to offer the statements for the truth of that assertion. And here, too, as to Rabbitt the statement is admissible as an opposing party's statement under Rule 801(d)(2).

### 3. Miscellaneous Chants

Finally, as to Straw, the government seeks to introduce several additional chants by protestors while he was at the very front of Agent A's vehicle, including:

- "fuck you," Exh. 2 (00:56-1:04)

- "get a real job," *id.* (0:59)

- "fuck this pig," *id.* (1:11-26)

- "I believe that we will win." *id.* (1:28-1:43).

These chants further establish that Straw knew that Agent A was an ICE officer. That Straw continued to forcibly attempt to block the front of Agent A's vehicle in the midst of these chants underscores that Straw did so "on account of" Agent A's official duties. And as above, the chants are not hearsay because the government does not intend to offer them for the truth of the matter asserted.

### B. The Evidence does not Run Afoul of the First Amendment.

The government seeks to introduce the chants not for their content per se, but because they have evidentiary value to establish the elements of § 111. That purpose is plainly permissible under the First Amendment. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). "Evidence

of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.* Indeed, *Mitchell* has been cited to uphold the admission of a wide range of statements, including speeches involving civil disobedience and statements given during protest contexts. *See also United States v. LeBeau*, 654 Fed. App'x. 826 (7th Cir. 2016) (rejecting defendant's First Amendment challenge when the government offered defendant's statements to establish the elements of a crime or to prove motive or intent).

## II. Evidence Under Federal Rule of Evidence 404(b)

The Seventh Circuit Criminal Pattern Jury Instruction (2023), ASSAULTING A FEDERAL OFFICER—ELEMENTS, requires two elements to prove a violation of 18 U.S.C. § 111(a): first, that a defendant forcibly intimidated, impeded, or interfered with a federal officer; and second, did so while the officer was engaged in the performance of his official duties.[1] The Seventh Circuit has established that § 111 is not a specific intent crime, but does require that a defendant acted knowingly – *i.e.*, that he realized what he was doing and did not act through ignorance, mistake, or accident. *United States v. Graham*, 431 F.3d 585, 588-590 (7th Cir. 2005); s*ee* Seventh Circuit Criminal Pattern Jury Instruction (2023) § 4.10 - DEFINITION OF KNOWINGLY.

---

[1] The Committee Comments to the Instruction make clear that there is no additional requirement that a defendant must know the victim is a federal officer, citing *United States v. Feola*, 420 U.S. 671, 684-86 (1975), and *United States v. Woody*, 55 F.3d 1257, 1265-66 (7th Cir. 1995).

6

Besides proving that the defendants acted knowingly, it is virtually certain that the government will also have to counter their repeated defense that Agent A was responsible for their encounter and they merely responded defensively. For example, in their Motion to Compel defendants claimed that "Agent A's SUV turned into the Defendants and others at the Broadview Facility that led to the charges in this case" (sic). Dkt. 94 at 4. Moreover, less than an hour after the September 26, 2025 incident defendant Abughazaleh posted on social media a video of herself and defendant Martin blocking and pushing on the front of Agent A's vehicle with the caption "At the Broadview ICE facility, an ICE agent tried to run dozens of protesters over with an SUV as we walked on a public crosswalk."[2] And on October 3, 2025, Abughazaleh gave an interview to MSNBC in which she stated that ICE has "tried to drive vehicles through protestors multiple times."[3]

### A.      Abughazaleh Blocked ICE Vehicles on September 19, 2026

In addition to Abughazaleh's interference with Agent A on September 26, she also deliberately blocked an ICE vehicle on September 19, 2026 as it was attempting to leave the Broadview facility by rushing to get in front of the vehicle to impede its progress.[4] Abughazaleh later posted a video of her actions online, as defendants also noted in their Motion to Compel. Dkt. 94 at 2-3 and n. 2.[5] To prove that Abughazaleh

---

[2] https://x.com/KatAbughazaleh/status/1971567602003820796, last visited May 6, 2026.

[3] https://www.youtube.com/watch?v=r-TjXe10tCE, last visited May 6, 2026.

[4] https://x.com/AliBradleyTV/status/1969007665498984819, last visited May 6, 2026. *See also* Exhibit 4.

[5] https://x.com/KatAbughazaleh/status/1969013628398411810, last visited May 6, 2026. *See also* Exhibit 5.

acted knowingly and planned her conduct on September 26, and did not act through ignorance, mistake, or accident, the government should be permitted to adduce this video evidence of her actions on September 19.

## B.     The Evidence is Relevant and Admissible

Relevant evidence is admissible. Federal Rule of Evidence 402. "Relevant evidence" means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the matter at issue more probable or less probable than it would be without the evidence. Federal Rule of Evidence 401. Federal Rule of Evidence 404(b) permits the admission of evidence of "a crime, wrong, or other act" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The evidence of Abughazaleh's actions on September 19 is admissible pursuant to the Seventh Circuit's Rule 404(b) test as articulated in *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). The evidence pertains to Abughazaleh's motives, modus operandi, preparation, plan, absence of mistake, and lack of accident. It does not fall within the Rule 404(b) prohibition against "other acts" propensity evidence because it is not offered as proof of her propensity to commit the charged offense—*i.e.*, that she acted in accordance with a character trait for intimidating and obstructing federal agents going about their duties. "Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence." *Gomez*, 763 F.3d at 856 (citing *United States v. Reed*, 744 F.3d 519, 524–25 (7th Cir. 2014)). "In other words, the rule allows the use

8

of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id*. However, other-act evidence need not be excluded whenever a propensity inference may be drawn. *Id*.

In deciding whether to admit evidence pursuant to Rule 404(b), the Seventh Circuit has employed a "well established" four-factor test. *United States v. Vargas*, 689 F.3d 867, 875 (7th Cir. 2012). A district court is to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id*. Upon a showing that the evidence is admissible under Rule 404(b), "[T]he district court must engage in Rule 403 balancing to determine whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice." *United States v. Ferrell*, 816 F.3d 433, 444 (7th Cir. 2015) (citing *Gomez*, 763 F.3d at 860). "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009). "That evidence may be highly prejudicial does not compel its exclusion, the evidence must be *unfairly* prejudicial." *Id*. (emphasis in original); *see also United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012) (noting that "it is important to keep in mind that all relevant evidence is prejudicial and that evidence must be

9

*unfairly* prejudicial in order for it to be inadmissible . . . ." (emphasis in original)). As part of the Rule 403 balancing test, courts also should consider "the degree to which the non-propensity issue actually is contested" and show "sensitivity to real factual disputes in the case." *Gomez*, 763 F.3d at 860.

The government has satisfied the four-factor test to introduce this evidence pursuant to Rule 404(b). First, the proffered evidence is directed toward a matter other than Abughazaleh's propensity to commit the charged crime. Specifically, it is offered to show Abughazaleh's anti-ICE motive, modus operandi, preparation, and plan in blocking Agent A's vehicle on September 26, and that she did not act by mistake or accident. Second, her actions on September 19 were similar and close in time to the September 26 actions. Third, the evidence is sufficient to support a jury finding that she committed the similar act. Finally, the proffered evidence is not unfairly prejudicial and is highly relevant to the charged offense.

Additionally, any risk of unfair prejudice can be mitigated through appropriate limiting instructions. *See Gomez*, 763, F.3d at 860 (noting that "the effectiveness of limiting instructions are a factor in weighing the danger of unfair prejudice") (citing Fed. R. Evid. 403 Advisory Committee Notes (1972)). The government intends to submit a modified Pattern Instruction to address any evidence this Court may deem admissible pursuant to Rule 404(b). *See Vasquez*, 635 F.3d at 894 ("[L]imiting instructions 'are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence.'") (quoting *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006)).

10

## III. Conclusion

For the foregoing reasons, the United States respectfully requests that its supplemental motions *in limine* be granted.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  /s/ *William R. Hogan, Jr.*
WILLIAM R. HOGAN, JR.
MATTHEW SKIBA
ANDRES Q. ALMENDAREZ
Assistants U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

Dated: May 7, 2026

11