**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | Judge April M. Perry |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REVISED RESPONSE TO THE
GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, and Brian

Straw (collectively, "Defendants"), by and through their respective undersigned counsel, submit

this revised response[1] to the government's consolidated motions *in limine* ("Motion") (Dkt. 124).

## I.   The Government's Motion to "Exclude Impermissible Legal Testimony and Opinion" Should be Denied.

The government's first motion *in limine* (Motion, pp. 1-7) is overbroad, unsupported, and

should be denied. As detailed below, although the government purports in its headings to take issue

with improper testimony regarding legal conclusions and instructions, it asks this Court to go much

---

[1] This revised Response supersedes and replaces Defendant's previously filed Response to the government's consolidated motions *in limine*. (Dkt. 137). Defendants submit this revised Response to the government's Motion because, after Defendants filed that initial Response, the government filed a superseding information on April 29, 2026 (Dkt. 140) alleging misdemeanor charges against Defendants. On May 7, 2026, the Court granted the government's motion to dismiss Count One of the indictment with prejudice, which charged a conspiracy under 18 U.S.C. §372. This revised Response accordingly removes the references and arguments relating to the now-inapplicable felony charges, and it retains only those arguments relevant for the current misdemeanor charges under 18 U.S.C. §111(a)(1). This revised Response is filed also in accordance with this Court's April 29, 2026, Order denying the government's motion *in limine* V and withholding ruling on the remaining motions *in limine*, in addition to inviting the Parties to file supplemental motions in light of the superseding information. (*See* Dkt. 139).

1

further than excluding only improper legal testimony from lay witnesses—an ask which, by itself, would be uncontroversial. Rather, the government makes an extraordinary request of this Court to exclude all evidence and argument relating in any way to the First Amendment—including probative factual evidence regarding why the Defendants were at Broadview, what they were doing there, why they said and acted as they did, and—critically—whether they *believed* (correctly or not) their presence, actions, and statements were protected by the First Amendment. Federal courts have found that such evidence is not unlawful legal testimony but factual evidence, probative of defendants' mindset and intent. The government's overbroad request to "exclude all such evidence" should be denied.

> **A.** **The Defense Does Not Dispute that "Instruction on the Law is the Province of This Court," but Denies that this Means All Evidence Relating to the First Amendment Should be Excluded.**

The government first argues that instruction on the law is the province of the court. (Motion, p. 1). The Defense does not dispute this basic principle. Indeed, the Defense will follow the applicable Rules and this Court's orders regarding presenting jury instructions for this Court to adopt or deny in its sound discretion. This Court will instruct the jury accordingly. Whether and how to instruct the jury on the First Amendment as a defense to the charges is a legal question under the purview of this Court. *See United States v. Lomax,* 816 F.3d 468, 475 (7th Cir. 2016) (explaining that the availability of a defense, and the related decision to instruct on such defense, is a question of law decided by the court). *See also United States v. Beale*, 620 F.3d 856, 865-66 (8th Cir. 2010) (instructing jury regarding the First Amendment and the jury's role in determining factual questions relating to whether charged conduct was protected); Motion, pp. 1-2. The

2

Defense has no intent to offer improper legal testimony from lay witnesses on legal matters reserved to the Court.

The government is misguided, however, when it inexplicably and without support suggests that the Court's role in *instructing* the jury on relevant law implies that the defense may not present *evidence or argument* relating to such law. *See*, *e.g.*, Motion, p. 1 (seeking "an order precluding defendants from *eliciting evidence or arguing* that their speech or conduct at the Broadview facility . . . was protected by the First Amendment" (emphasis added)). *See also, e.g.*, *id.* at 2-3 (arguing that "[a]ny argument or evidence* on the First Amendment should be excluded[.]") (emphasis added).

Contrary to the government's suggestion, and for at least three reasons, the Defendants should be permitted to present evidence on whether, and why, they believed their conduct was protected by the First Amendment:

**First**, this evidence—which would include details about why the Defendants were at Broadview, their purpose and intent for being there, what they saw and heard while there, why they acted as they did on that date, and whether and why they believed their conduct was protected by the First Amendment—bears directly on the Defendants' mindset at the time of the charged conduct. Criminal conduct requires a guilty mindset. *Elonis v. United States*, 575 U.S. 723, 734 (2015) (explaining the "basic principle" that "a guilty mind is 'a necessary element in the indictment and proof of every crime'" and thus "criminal statutes are generally interpreted 'to include broadly applicable *scienter* requirements, even where the statute . . . does not contain them.'") (internal citations removed). So too here. *See*, *e.g.*, *United States v. Graham*, 431 F.3d

3

585, 590 (7th Cir. 2005) (explaining that assault in violation of 18 U.S.C. §111(a) is a general intent crime, requiring that defendant had knowledge of his assaulting conduct).

Whether, and why, Defendants believed they were acting in accordance with the law is directly relevant to their mindset at the time, and the evidence should be admitted on that basis. For example, in a recent ruling in *United States v. Dugan*, another district court in this Circuit ruled that evidence about a defendant's "good motivation" when she was allegedly resisting immigration officers was relevant to her mindset during the time of the charged conduct. There, the government had similarly moved to bar evidence of the defendant's "good motives" for her acts resisting immigration officers, and the defendant argued in response that she intended to present evidence of her motives on the day at issue, which was relevant to her mental state at the time. The court agreed, ruling that the defendant is "*allowed to present relevant evidence touching on her mental state*" *on the day and time she allegedly committed the offense. See United States v. Dugan*, 25-CR-89, 2025 WL 3301760, at *4 (E.D. Wis. Nov. 25, 2025) (emphasis added). That reasoning applies equally here, and Defendants should likewise be permitted to present evidence of their motives, beliefs, and state of mind on the day in question, including whether they believed they were acting under the protection of the First Amendment at all or some of the time—regardless of whether that belief was legally correct. This is especially uncontroversial given that the government may offer counter-argument on these points and cross-examine any witnesses from whom this evidence is adduced (including Defendants in the event they testify at trial).

Other federal courts have similarly admitted evidence regarding a defendant's belief at the time of charged conduct, as well the statements made by others at the time, as relevant to showing the defendant's knowledge and mindset. *See, e.g.*, *United States v. Griffith*, 2023 WL 2043223, at

4

*3 (D.D.C. Feb. 16, 2023) ("[T]o prevail on all charges, the government . . . must show that defendant specifically intended to impede or disrupt Congressional proceedings. Statements by political leaders and the conduct and statements made by the mob surrounding defendant both bear on defendant's mental state at the time of the charged offenses."). What a defendant may have seen or heard at the time "goes precisely to his knowledge and intent" because "[w]hat he was able to observe around him . . . inform[ed] his actions and 'mental state at the time of the charged offenses.'" *United States v. Gunby*, No. CR 21-0626 (PLF), 2023 WL 4993483, at *4 (D.D.C. Aug. 4, 2023) (citing *id*.). *See also United States v. Glaub*, 910 F.3d 1334, 1341-42 (10th Cir. 2018) (noting "the first amendment issue hinged on [defendant's] state of mind" and defendant was allowed to present evidence and argument regarding First Amendment to the jury). Here, too, such evidence regarding what Defendants witnessed at the time of the charged conduct, and whether such events impacted their belief that their conduct was protected under the First Amendment, is relevant and must be admitted.

**_Second_**, despite the government's contentions otherwise, this evidence should be admitted under Rule 403. The government argues in passing that even if this Court decides that the First Amendment is relevant to the Defense, still "the Court should . . . exclude any questioning and argument along those lines under Fed. R. Evid. 403" because the evidence would confuse the issues, waste time, and unfairly prejudice the jury. (Motion, p. 3). It is not clear from government's argument how precisely factual evidence regarding the context, meaning, and intent of the charged conduct is prejudicial, confusing, or a waste of time—the government protests without elaborating. (*See id.*) Moreover, the government's argument fails to appropriately apply Rule 403's test for excluding testimony. To exclude probative evidence under Rule 403, it is not enough for the

5

evidence merely to be prejudicial, confusing, or a waste of time; rather, the danger of these harms must "*substantially outweigh*" the probative value of the evidence. Fed. R. Evid. 403 (emphasis added); *see Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (refusing to exclude probative, if prejudicial, evidence under Rule 403 because "Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, 'the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value.'"). *See also United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015) ("[E]xclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly.") (internal quotation omitted).

Rule 403 does not support excluding the evidence at issue here. As explained above, evidence relating to the First Amendment in this case—including why the Defendants were at Broadview, what they intended to do there, what they witnessed there, what their intent was when they acted, and whether they *believed* their conduct and speech was protected by the First Amendment—is highly probative to elements of the § 111 charge, including showing Defendants' mindset and whether they had an intent to forcibly impede, intimidate, or interfere. *See supra* § 1(A), pp. 3-6. This factual evidence is highly probative of key issues in the case and is integral to the defense. Its probative value is not overweighed by a danger of unfair prejudice, confusing the issues, misleading for a jury, or wasting time. In fact, its exclusion would significantly risk danger of unfair prejudice and misleading the jury. As explained above, this Court will provide the jury with an appropriate jury instruction regarding the relevance of the First Amendment and testimony relating thereto. *See supra* § 1(A), p. 2. This relevant evidence should be admitted. *See* Fed. R. Evid. 403.

6

Relatedly, barring evidence regarding the First Amendment as it impacted Defendants' beliefs and mental state would improperly preclude Defendants from having an appropriate instruction given to the jury on the law impacted by this critical evidence. It is no surprise, in light of the arguments raised in Defendants' Motions to Dismiss (Dkts. 100, 120, 122) and this Response, that Defendants intend to ask this Court to instruct the jury on relevant law relating to the First Amendment. And when the time comes to discuss the contours of any such instruction, the Court will need to assess "whether a defendant presented sufficient evidence to become entitled to a jury instruction on [the] theory of defense." *Lomax*, 816 F.3d at 475.

Put differently, Defendants must be permitted to present factual evidence which necessarily touches upon the First Amendment—*i.e.,* why they were at Broadview, what they heard and saw while there, why they did what they did, and whether (and why) they believed their acts were constitutionally protected by their rights to assemble and to free speech—not only to present highly probative evidence as to their mental states and negate elements of the offenses the government must prove, but also for this Court to have the factual bases necessary to assess the jury instruction(s) the Defense will seek. *Lomax*, 816 F.3d at 475. To preclude the evidence outright at this stage would prematurely (and improperly) rob Defendants of even the opportunity to lay the factual grounds for their defense. This Court should not do so. *See Fieldman v. Brannon*, 969 F.3d 792, 801 (7th Cir. 2020) (collecting U.S. Supreme Court cases explaining that "the Constitution guarantees a criminal defendant 'an opportunity to be heard in his defense,'" which includes "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies").

*__Finally,__* as explained in more detail below (*infra* § 1(C)), it is misleading for the government to dismiss any evidence touching on the First Amendment as improper legal testimony. Evidence and argument about the *facts* that Defendants believed they were acting within the confines of the First Amendment is not impermissible legal opinion testimony offered by a lay witness; it is *factual* testimony about what the Defendants believed to be true, whether or not they were correct in such belief—evidence which is clearly both admissible and highly probative given the charges here. *See Bundy*, 2017 WL 4803931, at *5-6 (admitting testimony regarding what a witness believed was his legal responsibility, denying that such testimony was unlawful legal testimony, and ruling instead that it was factual testimony regarding mindset).

<strong>B</strong>. <strong>Factual Evidence About What Defendants Did, Saw, Heard, and Believed While at Broadview—and Argument Incorporating such Factual Testimony—is Not Improper "Legal Opinion Evidence."</strong>

The government next argues that Defendants should not be permitted to share their views on the validity of federal law, nor to argue that they think a certain federal law should not apply to them. (*See* Motion, pp. 4-5). The government's argument in this section is not specific, and it is not entirely clear to Defendants what evidence the government believes Defendants will offer that falls into this category. Defendants do not intend to argue that the charged statute is *invalid*. Rather, as discussed above, by adducing relevant factual testimony regarding the First Amendment, the Defendants make two points. First, the Defendants elicit this evidence to show the jury the *context* of the charged conduct and the Defendants' *mindset* and intent at the time—evidence, as explained above, that goes directly to elements of the charge including intent and mindset. The point here is not that the charged statutes are *invalid*, but that the government cannot meet its burden to prove the necessary mindset to forcibly impede, intimidate, or interfere for the jury to convict. Second, for the reasons detailed in Defendants' Motion to Dismiss, Defendants may be arguing—with a

8

good deal of law on their side—that the First Amendment provides an available defense to the charged conduct. Here again, the Defendants' point is not that the charged statute is facially *invalid*, but that the evidence will not support the charges in part because of the First Amendment.

The government also baldly asserts that "[a]ny First Amendment argument from the defense is likely to be nothing more than an appeal to the jury's emotions and sentiments." (Motion, p. 4). Not so. As outlined extensively above, this evidence is not about "jury's emotions" but about the *Defendants'* mindset and intent —things that are the heart of both the charge and the defense. (*See supra* § 1(A)). Defendants are not proposing to offer legal testimony regarding the legal parameters of the First Amendment's protections that might confuse the jury. (*See* Motion, p. 4). Rather, Defendants will present factual, lay testimony and evidence regarding what they believed about their conduct at the time of the events; Defendants' counsel will make arguments in compliance with the Federal Rules that incorporate such factual evidence; and this Court will instruct the jury as to the First Amendment's parameters. Armed with accurate statements of the law, the jury will then assess the evidence presented. This is all as it should be.

### C. The Evidence is Admissible Fact Opinion, not Improper Legal Testimony, and is Admissible under the Rules of Evidence.

As touched on above (*see supra* § I(A)), it is misleading and improper for the government to dismiss all evidence touching on the First Amendment as unlawful legal testimony. (*See* Motion, pp. 5-7). Evidence and argument about the *fact* that Defendants believed they acted within the confines of the First Amendment and the law and believed they were at an authorized location to peacefully assemble, is not impermissible legal opinion testimony offered by a lay witness. Again, it is *factual* testimony about what the Defendants *believed* to be true. Federal courts recognize this distinction—that a belief about legality may be relevant to mindset, even if the belief is wrong. For example, in *United States v. Bundy*, a defendant filed a motion *in limine* much like this one,

which attempted to exclude testimony about what an individual believed to be their "legal responsibility" during the relevant events. *Bundy*, 2017 WL 4803931, at \*5-6. The defendant there argued, as the government does here, that such testimony would amount to "legal conclusions by a lay witness." *Id.* The court there disagreed and denied the motion *in limine*. *Id.* The court correctly explained that the statement at issue showed the person's "state of mind" when he acted on the relevant day. *Id.* Indeed, such a statement "is rationally based on his [lay] perceptions." *Id.* Admission "does not tell the jury what result to reach," and therefore is not a "legal conclusion." *Id.* Such is the case here as well. Evidence about the Defendants' *belief* that their conduct was protected and why they had such belief demonstrates their "state of mind" and their "perceptions." It does not carry legal weight, does not tell the jury what result to reach, and is not offering a legal conclusion as to the correctness of the Defendants' belief. The evidence should be admitted.

## II.      The Defendants Will Not Make Jury Nullification Arguments.

The government seeks an order precluding counsel for Defendants from suggesting "the jury should acquit even if it finds that the government has met its burden of proof." (Motion, p. 7). Counsel for Defendants are all experienced trial attorneys and have no intention of making improper jury nullification arguments in this matter.  To be clear, however, although a defendant may not use evidence "for the purpose of encouraging jury nullification," a good deal of evidence the government might think supports nullification may well be "relevant to other material matters in the case and should therefore be allowed." *United States v. Gray*, 2010 WL 1258169, at \*1 (N.D. Ind. Mar. 26, 2010). Thus, we do not take the government's motion to be seeking to exclude any particular evidence, but simply the improper nullification argument no Defendant will make.[2]

---

[2] If the government believes that an argument made a trial is improper, then its recourse is to object. But, to be clear, there is a significant difference between improper advocacy and challenging the government's

**A.     The Defendants Do Not Intend to Make Arguments Regarding
Charging Decisions or Selective/Vindictive Prosecution.**

The government further seeks to preclude Defendants "from arguing or eliciting evidence about" charging decisions or selective prosecution matters to the jury. (Motion, p. 8). Absent a ruling from the Court allowing it, counsel for Defendants do not intend to make any arguments regarding selective prosecution to the jury. However, counsel do anticipate occurrence witnesses testifying in this matter who were present at the protest on September 26, 2025. If the government were to imply in any way that those individuals have some sort of criminal exposure by testifying, it could open the door to arguments regarding selective prosecution or charging decisions in this matter. Counsel for Defendants would raise this issue with the Court prior to making any such argument in front of the jury.

**1.     Defendants Oppose Government's Request to Prohibit
Inquiry Into Subjective Intentions or Motivations of
Government Agents.**

The government additionally argues that "the subjective intentions or motivations of government agents are also extraneous and should not be the subject of inquiry." (Motion, p. 9). Defendants note at the outset that the subjective intentions or motivations of Agent A are almost certainly relevant and material to this matter. For example, one issue at trial will likely be why Agent A decided to drive his SUV into a crosswalk full of people which is what set the actions at the heart of this dispute into motion.

According to Agent A's text message to an unknown individual, Agent A viewed the people in the crosswalk as "trash in the street." *See* Dkt. #131-2, p. 13 (providing a copy of Agent A's text message). This text message will likely be the subject of cross-examination, because such

---

evidence. The problem with the government's motion is that, even if inadvertently, the requests sweep so broadly that legitimate advocacy would be barred under the guise of preventing discretely defined illegitimate tactics.

statement could likely explain why he attempted to drive through them in his vehicle and met what could only be described as a natural reaction to having a three-ton SUV drive into you. Agent A's subjective intentions and motivations in deciding to drive that three-ton vehicle into a crowd of people is relevant and should be subject to exploration and cross-examination.

Separately, questioning a witness about his *bias*, interest, and/or *motive* is a foundational aspect of the trial process. As the Seventh Circuit has ruled, "*Bias is always relevant*, and parties should be granted reasonable latitude in cross-examining target witnesses." *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999) (emphasis added) (citations omitted); *id*. ("[I]t is well established that a witness may be cross-examined for bias. . . . *Indeed, it is the 'quintessentially appropriate topic for cross-examination.*'") (emphasis added) (citations omitted). The law is clear: Defendants have a right to ask questions of government agents—or any witnesses—that are relevant to demonstrate bias, interest, or motive. To the extent the government seeks to bar such routine and vital areas of cross examination, its request must be denied.

### B. Defendants Will Not Argue "Outrageous Government Conduct."

The government seeks to preclude argument relating to "outrageous government conduct." (Motion, p. 10). Once again, counsel have no intent to make any improper arguments seeking acquittal based on "outrageous government conduct" to the jury. The motion should therefore be denied as moot. However, counsel is compelled to add that there is a significant difference between improper argument concerning "outrageous government conduct" and challenging the accuracy and sufficiency of the government's evidence, or for example, bias evidence about a government agent. The government's overbroad boilerplate motion sweeps up both the good and the bad.

Indeed, the government does not identify any specific "outrageous government conduct" arguments it seeks to prohibit. Abstract and blanket prohibitions on general lines of questioning are not proper for pretrial rulings. *See, e.g.*, *United States v. Turner,* 2014 WL 4699708, at *5

12

(N.D. Ill. Sept. 22, 2014) (denying the Government's motion to bar defendant from questioning witnesses about alleged criminal conduct for which they have not been charged because the court "cannot resolve this issue as an abstract matter at the motion *in limine* stage"). In short, the evidence and testimony elicited through cross-examination will speak for itself. But what constitutes "outrageous" conduct begs the question and the jury is, of course, entitled to hear and consider all relevant and admitted evidence.

Finally, it is anticipated that there may be testimony regarding why certain defendants chose to go to Broadview on September 26, 2025, what their intent and mindset were, and what they were intending to communicate with their expressive speech and conduct on the date and time at issue here. This testimony will relate, for example, to witnessing media coverage of the conduct of ICE Agents. To the extent the government's broad motion seeks to preclude this type of testimony or evidence, the Defense objects. Such evidence is clearly relevant to material issues and there will be no argument asking the jury to acquit on the basis of that evidence. Moreover, there will also be testimony and arguments related to Agent A's decision to drive his vehicle into a crowd of people. This too is unequivocally relevant and admissible evidence for all the reasons set forth above.

### C.     Defendants Will Not Reference Potential Punishment to The Jury.

The Government seeks to preclude argument relating to penalties and collateral consequences faced by Defendants if there were to be a conviction in this case. (Motion, p. 11). No defense counsel intends to argue punishment issues to the jury.

13

### D. Defendants Will Not Make "Golden Rule" Arguments.

The Government seeks an order prohibiting defense counsel from making "Golden Rule" arguments to the jury. (Motion, p. 12). No defense counsel intends to make an improper "Golden Rule" argument to the jury.

### E. Defendants May Reference Unrelated ICE Incidents With Prior Approval of The Court.

The government seeks to preclude any reference to "other violence involving ICE and CBP" such as "the well-publicized shootings in Chicago in October 2025." (Motion, p. 13). The government states "the charges in this case are limited to one single, discreet incident on September 26, 2025 that did not involve firearms or injuries to either Agent A or the defendants." *Id*.

The mental state of each defendant is at issue, and each defendant has the right to explain to the jury what their mental state was on that day including why they went to Broadview, what they were protesting, and what was the meaning and intent of their conduct. Moreover, some Defendants' prior individual experiences at Broadview inform their mental state on September 26, 2025, and are thus patently relevant to elements of the charged offense.

This is all the more relevant in the event that any of the Defendants testify at trial. As part of that testimony, it is likely Defendants would explain the reasons they chose to attend Broadview on September 26, 2025. It is anticipated that part of the motivation to go to Broadview and peacefully protest was because of the impact of seeing United States law enforcement abduct, disappear, and even shoot human beings on the streets of our cities. Presenting this context is absolutely necessary for each Defendant to fairly put forward their defense, a black-letter fundamental right.[3] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting Crane v.*

---

[3] The government cursorily claims such testimony would "clearly invite jury nullification." *Id*. It is unclear how a Defendant explaining why they attended a protest would "clearly invite" jury nullification, but to the extent the Court believes the government's stated concern has substance, Defendants would not object to a

*Kentucky*, 476 U.S. 683 (1986) and *California v. Trombetta*, 467 U.S. 479 (1984)) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"); *Fieldman*, 969 F.3d at 801 ("the Constitution guarantees a criminal defendant 'an opportunity to be heard in his defense,'" which includes "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies") (collecting U.S. Supreme Court cases for this proposition).

### III. The Government's Motion to Exclude Evidence or Argument Regarding Non-Pertinent Traits of Character Should be Denied.

The government's third motion *in limine* to exclude evidence or argument regarding non-pertinent traits of character (Motion, pp. 14-15) should be denied for two reasons. First, the government attempts to prematurely thwart Defendants' right to present a defense. The government bases its third motion *in limine* on speculation regarding the content of the testimony Defendants will seek to elicit from their witnesses. Defendants have made no representations to the Government or this Court as to any of their witnesses' intended testimony. The government's third motion *in limine* regarding impermissible character evidence should therefore be denied as premature until the evidence is presented at trial and the Court has had an opportunity to consider the nature and context of the evidence and apply the relevant law to the facts at issue.

Second, this motion should be denied outright because Defendants are unquestionably entitled to elicit testimony of their character. *See* Fed. R. Evid. 404(a); 405. "[A]n accused has the right to offer evidence of good character . . . to show that he was unlikely to have acted in the

---

jury instruction limiting the use of such testimony solely to determine Defendants' requisite mental states on September 26, 2025.

manner and with the intent charged in the indictment." *United States v. Lewin*, 467 F.2d 1132, 1139 (7th Cir. 1972). *See also Michelson v. United States*, 335 U.S. 469, 476 (1948) (testimony of good character alone "may be enough to raise a reasonable doubt of guilt"); *United States v. Staggs*, 553 F.2d 1073, 1075-76 (7th Cir. 1977) (evidence of a defendant's pertinent character trait is relevant to show that the defendant lacked the requisite mental state for a specific intent crime or to corroborate that the defendant's version of events), *implicitly overruled on other grounds by United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998). Rule 405(a) permits a defendant to prove his pertinent character traits through reputation or opinion evidence. Defendants here have been charged, among other things, with forcibly impeding, intimidating, and interfering with a federal agent while he was engaged in or account of the performance of his official duties. (Dkt. 140, superseding Information.) The Defendants' character for honesty, integrity, peacefulness, respect for law enforcement, and general "law-abidingness" is undoubtedly pertinent to these charges. *Michelson*, 335 U.S. at 483 ("[T]he traits of 'honestly and truthfulness' and 'being a law-abiding citizen'" seem "incompatible with offering a bribe"); *United States v. Williams*, 900 F.3d 486, 490 (7th Cir. 2018) (explaining that courts generally interpret "character evidence" to mean "elements of one's disposition, such as honesty, temperance, or peacefulness"); *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) ("Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses.") (collecting cases).

Should Defendants seek to elicit character testimony, they will do so consistent with the principles underlying Rule 405. Their questions would be limited to specific topics, which fall squarely within the bounds of permissible opinion character evidence in accordance with Rule 405. *See United States v. Hough*, 803 F.3d 1181, 1192 (11th Cir. 2015) (A traditional character witness direct examination "elicit[s] testimony about how the witness [knows] the defendant, how long the

witness ha[s] known the defendant, and what the witness' opinion of the defendant's character for the pertinent trait [is].").  *See also* Fed. R. Evid. 404, 405.

IV.     **Defendants Do Not Intend to Make a "Missing Witness" Argument.**

The government seeks an order prohibiting the defendants from "introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify at trial." (Motion, p. 15).  Defendants have no intention of making this argument, and the government should likewise be held to the same standard. Should Defendants seek to make such an argument after seeing the government's presentation of evidence at trial, we will seek permission from the Court prior to making such an argument.

V.     **Defendants Withdraw their Response to the Government's Motion to Use Defendants' "Chants" and the "Statements" of Co-Conspirators.**

At the April 29, 2026 hearing, the Court inquired whether the government was continuing to pursue its Motion in Limine V (to use Defendants' "chants" and the "statements" of co-conspirators to establish elements of the offenses) in light of the government's decision to the dismiss the conspiracy charge. (April 29, 2026 Tr. at 17). The government indicated it was continuing to pursue Motion V. (*Id*.) The Court denied the motion due to a lack of specificity as to what chants and statements were to be offered. (*Id.* at 20). Therefore, Defendants now withdraw their previous response in opposition to Motion V, without prejudice. Defendants will renew or revise their response in the event that the government identifies statements it intends to use.

In court, the government pledged to provide any such statements by Monday May 4, 2026 (*Id.* at 23-24). However, the government did not provide any, perhaps deciding instead to raise the issue in a revised motion in limine. Therefore, Defendants reserve the right to respond to any such revised motion in limine by May 14, 2026 per the schedule set out by the Court.

17

VI.     **Comments Regarding Discovery Requests**.

The government seeks an order to "bar defendants from requesting discovery from witnesses or the government, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury." (Motion, p. 18).  Counsel for Defendants oppose this broad prohibition for multiple reasons. First, Defendants presume the government will have complied with all discovery obligations prior to trial, making the issue moot. However, if during the examination of a witness it becomes apparent that other materials exist that were not disclosed, then defense counsel should be allowed to inquire of the witness accordingly.

Additionally, there is one discovery issue that occurred in this case which may become relevant at trial involving apparently deleted Broadview Police Department body worn video footage. In summary, the defense requested multiple times that the government preserve all videos from Broadview depicting the events of September 26, 2025, including body camera footage. Counsel for the government repeatedly assured defense counsel that Broadview was informed of this request, and, in a letter dated December 18, 2025, further advised that the AUSAs personally went to Broadview, reviewed all the videos, and "tagged the video showing the incident and any video that morning showing any of the defendants" so that it would be saved to be included in a future discovery production. Despite assurances that the video was being preserved, defense counsel was later notified that certain Broadview police department body camera footage had been "lost/deleted." Defense counsel were advised that this lost or deleted footage included videos that were previously tagged by the AUSAs as being relevant and material. Specifically, the AUSA assigned to the case at the time wrote to defense counsel as part of a discovery production on February 12, 2026:

> Also, you will see an FBI 302 explaining that the Broadview Police
> Department was unable to transmit some of the videos that we tagged during

18

our visit to the Broadview Police Department in December 2025, that the Broadview Police no longer can access those videos, and their efforts to recover those videos thus far have been unsuccessful. It is our understanding, memorialized in a 302, that Broadview Police had a new system for body-worn camera footage and they appeared to have difficulty with it at the time. However, based on our review, the videos were all repetitive of the same scenes from different officers' body cameras, standing near each other. In reviewing the videos we were able to obtain and produce to you, it appears that these videos show the same scenes we saw on the videos that Broadview was unable to access.

Counsel for Defendants believe the government and/or Broadview are still trying to recover these deleted videos but if they are not able to do so it is likely counsel for Defendants will seek either an adverse inference instruction from the Court, or inquire of government witness(es) how these videos were lost or deleted, and what the basis is for claiming the videos were "repetitive" as the prosecutor claimed. As the Court will see at trial, there will be material disagreements about exactly what happened in the moments before and during the time Agent A decided to turn his SUV into the crosswalk and into the protestors. What the government describes as "repetitive" likely shows different angles that are most likely material to Defendants' version of events, especially because Defendants were located at different positions in the crosswalk when the SUV turned into them. Whether these videos were lost or deleted due to a mistake or negligence is unknown, but the only one with access to them was the government and it failed to preserve them, despite repeated defense requests. Thus, inquiry into this matter should be allowed at trial.

## VII.    Defendants Do Not Intend to Present an Entrapment Defense.

The government moves to preclude a defense of entrapment. Defendants do not intend to present an entrapment defense to the §111(a) charges that they each face. They have consistently denied that any crime occurred, which is the antithesis of an entrapment defense that "essentially admits commission of the crime, but claims that the government induced the illegal conduct."

19

*United States v. Al-Shahin*, 474 F.3d 941, 948 (7th Cir. 2007).[4] The motion should therefore be denied as moot.

However, the Defendants still take issue with the government's framing, which appears to aver that any evidence that on September 26, 2025, defendants and many others were engaged in First Amendment activity in a public forum where earlier that morning law enforcement had previously permitted them to demonstrate, is *only* probative to an entrapment defense. The government either fundamentally misconstrues or misrepresents Defendants' arguments in an effort to bar the admission of highly relevant evidence. The keenly probative nature of this evidence is discussed at length above and below.

Defendants' First Amendment activity, specifically their involvement in the Jericho Walk during the morning of September 26, 2025, at the intersection of Harvard Street and 25th Avenue, before Agent A drove his SUV into them and the group of protestors is highly relevant. First, it directly related to elements of the offenses charged—such as Defendants' individual mental states and whether they knowingly used force to impede, intimidate, or interfere with Agent A.

Second, the immediate factual landscape of the morning of September 26, 2025, informs defendants' and others' actions, and are necessary for an accurate presentation of the facts and "context" to the jury. *See United States v. Lashmett*, 965 F.2d 179, 185 (7th Cir. 1992) (quoting *United States v. Mancari,* 875 F.2d 103, 105 (7th Cir. 1989) ("The onset of a course of dealings is admissible to enable the jury to grasp the context in which the specific transactions charged as being criminal occurred."). Put simply, evidence of the fact that Broadview Police Officers allowed Defendants to engage in the Jericho Walk in the intersection and helped to manage traffic

---

[4] While federal case law permits defendants to raise the inconsistent argument asserting, "'I didn't do it, but if I did I was entrapped,'" the Court should rest assured that no Defendant will advance that argument rightly described as the "functional equivalent of a guilty plea." *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011) (discussing *United States v. Mathews*, 485 U.S. 58 (1988).

the morning that Agent A drove into them is highly probative evidence as to Defendants' mental states and the absence of their knowing use of force to impede, intimidate, or interfere with Agent A. The fact that Defendants were standing and walking where they believed they were permitted to exercise their First Amendment rights, rather than, for instance, engaging in planned civil disobedience, is relevant and probative to their mental states and explains their actions when Agent A drove his SUV into them.

The Defendants will not raise the affirmative defense of entrapment; they are not guilty. The government's motion should be denied as moot. With the entrapment defense theory aside, the government has advanced no meaningful argument to bar clearly relevant, admissible, and a standard scope of evidence from admission. These undeveloped and backdoor arguments should likewise be denied.

### VIII. Evidence of Law Enforcement Conduct is Relevant to Defendants' Intent, Conduct, Expression, and the Absence of the Offense of <u>Forcibly Impeding, Intimidating, and Interfering with Agent A</u>.

As with the prior motion, motion *in limine* VII is mistaken in the Defendant's theory at trial. The government's argument assumes that Defendants will concede that their conduct was illegal, but that law enforcement somehow made it legal. Defendants have no intent to make such an argument because they did not violate 18 U.S.C. §111(a). Thus, they do not intend to argue that law enforcement permitted any unlawful conduct because they do not believe they ever engaged in unlawful conduct. From that standpoint alone, the motion should be denied as moot.

The government's cited cases further illustrate the irrelevance of this motion. In *United States v. Oliveras*, No. 21-738 (BAH), 2023 WL 196525, 2023 U.S. Dist. LEXIS 7805, at *2-4 (D.D.C. Jan. 17, 2023), the government successfully moved *in limine* to preclude a January 6th defendant from arguing entrapment by estoppel and that the inaction of law enforcement

21

"somehow made any of his otherwise allegedly unlawful conduct lawful." The government's other cited case, *Garcia v. Does*, 779 F.3d 84, 89 (2d Cir. 2015), could not be more inapposite. It arose in a civil context where various individuals sued officers for false arrest at an Occupy Wall Street protest march across the Brooklyn Bridge, having been arrested for disorderly conduct after being told by officers that they were violating various laws, despite their allegations that the officers led their march across the bridge. The officers prevailed on qualified immunity grounds because they had probable cause to make the arrests, including because plaintiffs could not show that the police authorized them to march in the roadway across the bridge.

In stark contrast, here the Broadview Police Officers, through their conduct, undoubtedly permitted Defendants to do the Jericho Walk for hours before Agent A drove into the intersection. But more importantly, Defendants—unlike the plaintiffs in *Garcia*—are not charged with a low-level offense such as disorderly conduct for marching in the crosswalk, and the Defendants do not expect the government to call such conduct unlawful. Moreover, unlike the plaintiffs in *Garcia*, Defendants do not argue that law enforcement implicitly gave them permission to engage in the charged misdemeanor impeding, intimidation, and interfering—because they strenuously deny any such offense ever occurred. Thus, the government's cases, which focus on an argument that Defendants do not make, are inapposite and can be ignored. The motion should be denied as moot.

**IX.    Evidence of Defendants' Protest Activity is Relevant to Defendants' Intent, Conduct, Expression, and the Absence of Forcibly Impeding, Intimidating, and Interfering with Agent A.**

In motion *in limine* IX the government moves to preclude evidence of Defendants' lawfulness, aside from reputation and opinion evidence that is offered pursuant to Rule 405(a). The government contends that it would "distract the jury" to offer testimony and evidence that "on

22

prior occasions they were lawfully demonstrating about public policy or engaged in lawful First Amendment activities." (Motion, p. 22).

First, defense counsel know the evidentiary rules concerning reputation and opinion evidence offered by character witnesses. It is unnecessary for the Court to enter an order that simply recites the standards of Rule 405(a), especially as the government does not point to any specific evidence it seeks to exclude. *Linkepic Inc. v. Vyasil,* No. 12 C 09058, 2019 WL 11717160, at *1 (N.D. Ill. Oct. 15, 2019). ("[T]his motion [*in limine*] is just a make-work request to enforce the Rules of Evidence, so it is denied as unnecessary.").

Second, and more importantly, the motion is overly broad on its face, which is sufficient to justify its denial as it ignores case law that provides for the admission of certain non-character evidence concerning lawful conduct by a defendant that is not designed to merely prove the absence of illegal acts through other lawful behavior. *See, e.g.*, *United States v. LeFevour*, 798 F.2d 977, 980 (7th Cir. 1986) (finding, contrary to the government's "misdirected" arguments, that there was "nothing wrong" with arguing that a defendant-judge charged with bribery had a practice of dismissing tickets on request, in order to lay a foundation for a defense that he was not influenced by the receipt of a bribe). Troublingly, the government suggests that it would be improper to elicit evidence that the Defendants "obeyed orders to disperse on occasions other than the charged case" (Motion, p. 22), which is an overbroad request that, as with other motions above, could preclude Defendants from introducing highly probative evidence relevant to their mental states and the lack of any conduct that amounted to forcible impeding, intimidation, or interferences with Agent A. Namely, for a fair trial, Defendants must be permitted to show that on the morning of September 26, 2025, prior to Agent A driving through the lawfully protesting crowd, that very same crowd, including some of the Defendants, parted and paused the Jericho

23

Walk for other vehicles, including those of law enforcement, at the direction of Broadview police. While it is Defendants' position that this evidence is *not* subject to Rule 405, given the breadth of the government's motion *in limine*, Defendants feel compelled to explain the core relevancy of this evidence.

As described above and in prior pleadings, throughout the morning of September 26, 2025, protestors, including Defendants at various times, engaged in a peaceful, nonviolent protest at the intersection of Harvard Street and 25th Avenue by walking across the intersection. This protest was done for hours in the presence of the Broadview Police officers who watched and none of whom made any arrests for any offenses, as depicted in these images from the officers' own body-worn camera video.[5]



---

[5] This video was previously provided to the Court in Defendants' reply in support of their motion for a bill of particulars. Dkt. #87, p. 5.



Throughout the morning, Broadview Police officers parted these protestors and managed traffic when vehicles sought to enter and exit Harvard Street, as depicted in the following additional body-worn camera videos from before Agent A drove into the crowd:







However, unlike prior instances, Agent A drove directly into the crowd without allowing the Broadview Police to part the crowd as they had both before and after Agent A's arrival:



That image shows the shadow of the Broadview police officer who had previously parted the crowd to allow other vehicles, including those belonging to law enforcement.[6] Other officers can be seen standing to the right of the frame on 25th Avenue. Thus, the evidence will show that, unlike prior occasions *that same morning* when protestors ultimately parted or paused the Jericho Walk for vehicles, including those of law enforcement, when Broadview police officers were present, Agent A drove into the crowd without waiting for those officers to quickly and calmly part the protesters. The fact that Defendants would part or pause the Jericho Walk for law enforcement

---

[6] The full body-worn camera video from which this still image is taken from was included as Exhibit B to Defendants' Motion to Dismiss filed at Dkt. #100.

vehicles on September 26, 2025, is highly relevant and probative to any defense that they did not knowingly use force to impede, intimidate, or interfere with Agent A. The difference in this occasion—Agent A driving through a crowd without police parting the crowd and prior occasions where police did so—is also relevant to show how individuals reacted out of surprise, shock, or other instinctive response that was contrary to the charged offense. Barring evidence that this circumstance was an unexpected anomaly would leave an incomplete and even false portrait for the jury about what occurred and why. The basic standard for relevancy is easily met.

To be relevant, "evidence must tend to make a fact of consequence at trial more or less probable." *United States v. Proano*, 912 F.3d 431, 438 (7th Cir. 2019). The threshold for relevancy is "low." *Id*. "If evidence can help jurors answer the questions they must ask, the Rules permit its admissibility in the absence of a rule or law to the contrary." *Id*. These standards apply to evidence that is probative to showing a defendant's state of mind. *Id*. (affirming use of training and police department policy evidence as probative to a defendant police officer's state of mind in prosecution for deprivation of civil rights under 18 U.S.C. §242).

Defendants are charged with forcibly impeding, intimidating, and interfering with Agent A, while he was engaged in or on account of the performance of his official duties, in violation of 18 U.S.C. §111(a). If the government focuses on the "intimidation" prong, it invites a subjective standard requiring proof that "the speaker or actor must intend his or her words or conduct to intimidate." *United States v. Ehmer*, 87 F.4th 1073, 1119 (9th Cir. 2023).

Whether Defendants attempted to forcibly impede, intimidate, or interfere other law enforcement vehicles from moving through Harvard Street in the hours and minutes before Agent A drove through the crowd is highly relevant to their mental states and whether or not they forcibly impede, intimidate, or interfere with Agent A. Indeed, putting the shoe on the other foot, had any

27

Defendant stood still in front of or made physical contact with other law enforcement vehicles that were entering and exiting Harvard Street in the morning of September 26, 2025, the government would surely seek to introduce such evidence and argue that it is probative of their mental states with respect to Agent A. The absence of such evidence and, moreover, the fact that Defendants parted or paused the Jericho Walk when Broadview police instructed them to do so, is likewise highly probative of the absence of forcibly impeding, intimidating, and interfering with Agent A and is necessary for Defendants' ability to present their defense to the charges. *See Holmes*, 547 U.S. at 324. *See also Chambers v. Mississippi*, 410 U.S. 284 (1973) (similar).

Thus, and in addition to the reasoning supported by *LeFevour* cited above, the government's cases are inapposite and deserve little attention. (Motion, pp. 22-23). This is so unlike the circumstances in those cases where, for example, defendants attempted to show that on prior occasions they did not accept bribes during meetings so they could argue that accepting a bribe in the charged setting was out-of-character. Indeed, Defendants do not seek to admit prior instances of "honesty" or a "good deed" from some distant and unrelated protest or demonstration as character evidence. Rather, Defendants seek to introduce direct evidence of their conduct in the hours and minutes shortly before Agent A drove into them that is not only necessary to provide highly relevant context but bears directly on their mental states, their intent, and whether they forcibly impeded, intimidated, or interfered with Agent A. Evidence showing that they parted or paused the Jericho Walk when Broadview Police Officers told them to and were physically present, rebuts the government's favorite and deeply mistaken refrain that Defendants and others "swarmed" Agent A's vehicle, as opposed to the demonstrable and unavoidable fact that it was Agent A who instigated the entire incident by driving his three-ton SUV into the crowd of peaceful protesters on a public way.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*