**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | Judge April M. Perry |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES TO THE
GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE***

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, and Brian

Straw (collectively, "Defendants"), by and through their respective undersigned counsel, respond

to the government's supplemental motions *in limine* (Dkt. 152, "Motions") as follows:

**I.      The Government's Motion Regarding the Admission of "Chants of
Demonstrators to Establish the Elements of § 111" Should be Denied.**

The government's first motion *in limine* (Motions, pp. 1-6) should be denied because it

requests the admission of various chants [1] that are irrelevant, plainly protected by the First

Amendment, and (even if deemed relevant and admissible) unduly prejudicial.

---

[1] The government seeks to admit six "chants," which it purportedly intends to use to establish the elements
of 18 U.S.C. § 111(a). For ease of organization, we identify them as chants numbers 1 through 6:

    (1) "Down, down with deportation; Up, up with liberation" (Motions, pp. 2-4);

    (2) "Shame" (*id.* pp. 4-5);

    (3) "f*ck you" (*id.* p. 5);

    (4) "get a real job" (*id.*);

    (5) "f*ck this pig" (*id.*); and

### A.      The Chants Are Not Relevant.

The chants proposed to be offered by the government to prove guilt should not be admitted because they are irrelevant to proving the elements of § 111(a). *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). First, the chants do not make it more or less probable that any Defendant committed any of the operative actions in § 111(a). *See* Fed. R. Evid. 401 (evidence is relevant only if it has a tendency to make a fact more or less probable than it would be without the evidence). Defendants are charged as having "forcibly impeded, intimidated, or interfered" with Agent A while he engaged in or on account of his official duties. *See* 18 U.S.C. § 111(a). (Motions p. 1.) To show the Defendants *forcibly* impeded, intimidated, or interfered, the government must show that Defendants used "force"—that is, that they did so using "actual physical contact, or . . . 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.'" *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) (explaining "[f]orce is a necessary element of any § 111 violation") (internal citation omitted); *United States v. Graham*, 431 F.3d 585, 589 (7th Cir. 2005) (same); *United States v. Woody*, 55 F.3d 1257, 1266 (7th Cir. 1995) (same).

None of the six chants (*see* supra n.1) makes it more or less likely that the person uttering the chant either (i) used actual physical contact against Agent A; or (ii) uttered a threat that would inspire fear of pain, bodily harm, or death. *See id.* Indeed, no chant identified by the government expresses any threat of violence, harm, pain, or aggression. (*See* supra n.1.) Thus, the chants are not relevant for proving Defendants made any such threat, and the chants should not be admitted. *See United States v. Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge.")

---

(6)  "I believe that we will win." (*id.*)

Nor do the chants show that Defendants tried to impede Agent A "*on account of* the performance of official duties," as the government suggests. (Motion, p.1 (emphasis in original).) Though the government repeatedly and unfairly characterizes the chants as "anti-ICE chants" (*see, e.g.*, *id.* pp. at 1-2), not one of the chants identifies Agent A as an ICE officer, nor indeed mentions ICE at all. (*See* supra n.1.) Nor does any chant state or imply that the Defendants were trying to impede official duties or stop a federal officer from performing his duties. (*Id.*) Rather, chant number 1 is a protected statement about deportation generally (as explained in more detail below, *see infra* Section I(B)), not about any individual federal officer or necessarily even about ICE. Chant number 2 ("Shame") could (and does) apply equally in many situations with nothing whatever to do with ICE, ICE agents, or deportation at all. Indeed, it may be equally likely that individuals were chanting "Shame" because an individual was driving a 3-ton SUV into a crowd of people without any protection. No other chant mentions ICE in any capacity. The chants are therefore irrelevant for proving Defendants acted in any way because of the Agent's performance of his official duties as an ICE agent, and the chants should not be admitted for that purpose. *See Flores*, 418 F.3d at 1098 (9th Cir. 2005) ("The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge.").

Additionally, chants uttered by other demonstrators are not relevant to proving whether it is more or less likely that any one of the *individual Defendants* committed the charged conduct.[2] As for chants 3 through 6,[3] the government does not even claim any of these "chants" or statements

---

[2] It is of note that Andre Martin is not alleged to have uttered any of the chants in question. The government only alleges that at one singular point, "Martin is seen *mouthing* "down, down with deportation". (Motion p. 1) (emphasis added).

[3] That is:

    (3) "f*ck you" (Motions, p. 5);

    (4) "get a real job" (*id.*);

came from the mouth of any Defendant. Rather, the government contends only that "as to Straw, the government seeks to introduce several additional chants **by [unidentified] protestors** while he was at the very front of Agent A's vehicle." (Motions, p.5 (emphasis added)). But being in a group of people where some individuals yell a comment like "f*ck this pig" is *not* equivalent to making such a comment. Nor is it relevant to showing that "Straw knew that Agent A was an ICE officer," as the government suggests. (Motion, p. 5.) Indeed, none of the chants even use the word "ICE" let alone identify Agent A as an ICE officer. And, again, none were uttered by Straw (or, for that matter, any Defendant). As explained at length in Defendants' Supplemental Motion *in Limine* (Dkt. 150), evidence of the words or conduct of a third-party non-defendant is simply not relevant to establishing what any *defendant* engaged in, knew, or believed. *See, e.g.*, *United States v. Gootee*, 34 F.3d 475, 478 (7th Cir. 1994) (affirming decision to exclude evidence of third-party misconduct—there, drug use and solicitation—because it was not relevant to proving whether *defendant* engaged in charged misconduct). (*See* Dkt. 150, pp. 1-4.)

Moreover, given the offensive language used in these chants number 3-6 (including, for example, the f-word, and the term "pig") any nominal probative value of admitting these statements or chants for the purposes proposed by the government is substantially outweighed by the risk that this evidence would unfairly prejudice Defendants, confuse and mislead the jury, and waste time at trial. *See* Fed. R. Evid. 403; *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013) (collecting cases for the proposition that the "amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. '[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence

---

(5) "f*ck this pig" (*id.*); and

(6) "I believe that we will win." (*id.*)

will be received only if the risk of prejudice is more remote'"). Here, the evidence of *non-defendant's* words and chants during the protest at Broadview is not relevant to any charge or allegation in this case—*i.e.,* that each *Defendant* individually, through their own conduct, knowingly and forcibly intimidated, interfered, and impeded Agent A. Accordingly, even a small risk of prejudice would substantially outweigh the evidence's probative value. *See Thompson*, 722 F.3d at 971. Further, the risk of prejudice here is great because the statements in chants 3-6 are inflammatory and derogatory statements, which were *not uttered*—and are not alleged to have been uttered—by any Defendant.

### B. The Chants Are Inadmissible to Prove an Element of the Charged Conduct Because They are Protected Speech.

This Court should also deny the government's first supplemental motion *in limine* because the chants the government seeks to admit are protected speech under the First Amendment. It is indisputable that the chants the government attributes to Defendants—*e.g.,* "Up, Up with Liberation, Down, Down with Deportation!" and "Shame!" chanted in front of an immigration detention facility—are protected First Amendment political expression. *See Texas v. Johnson*, 491 U.S. 397, 411 (1989) ("expression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values"). This is so even for the chants that are laced with profanity. *See, e.g.*, *Baumgartner v. United States*, 322 U.S. 665, 673-74 (1944) ("[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures – and that means not only informed and responsible criticism, but the freedom to speak foolishly and without moderation."); *Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against"); *Cohen v. California*,

403 U.S. 15 (1971) (protest speech consisting of profanity such as displaying a jacket that read "Fuck the Draft" or offensive words or conduct, is protected by the First Amendment).

Indeed, the government has conceded this basic proposition. In its Response to Defendants' Motion to Dismiss Pursuant to the First Amendment (Dkt. 120), the government asserted that "[i]f the defendants had simply gathered in Broadview and screamed and waved signs at Agent A, their First Amendment arguments would have force." (Dkt. 120, p. 2). The government went on to represent that the charges here are based solely on the *conduct* of the defendants in blocking "the vehicle's progress with their bodies," and stating unequivocally that ***the charges here are based on "conduct, and not speech protected by the First Amendment." Id.***

Nevertheless, the government now posits that the chants are admissible for proving an element of the charged crime regardless of any First Amendment protections. (Motions, pp. 1-2, 5-6.) Not so. While the First Amendment not operate as a *per se* prohibition on the use of certain statements to establish an element of a crime, *see Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (recognizing in *dicta* the use of protected conduct to establish the element of a crime), even the *Mitchell* court cautions that "[s]uch testimony is to be scrutinized with care *to be certain the statements are not expressions of mere lawful and permissible difference of opinion . . . ." Id.* at 489-90 (citation omitted; emphasis added). However, in cases where the First Amendment protected speech or conduct is not relevant or necessary to proving the charged conduct, such protected speech should be excluded on that basis. *See, e.g.*, *Dawson v. Delaware*, 503 U.S. 159, 165–69 (1992) (ruling that the admission of defendant's First Amended-protected speech/associations was reversible error and violated the defendant's constitutional rights where the protected speech/association was not relevant or necessary to the charged conduct or sentence).

6

Here, as explained above, the chants are protected speech and not relevant to proving any element of the charged conduct (*see* supra Section 1(A)). The chants contain no threats or references to physical violence or any topic that could invoke fear of imminent harm or death on the part of Agent A, so they are not relevant to showing forcible intimidation or forcible impeding. The chants similarly contain no reference to ICE, ICE agents, the person driving the vehicle, the vehicle itself, or any intent to stop or impede the vehicle or its driver; they are therefore also not relevant to showing that the Defendants acted on account of the performance of a federal officer's official duties. Moreover, most of the chants identified are not even uttered by any of the Defendants in this case. Accordingly, these chants are totally irrelevant to proving the underlying conduct and, because they are quintessential protected speech, their admission would violate the Defendants' constitutional rights. *See, e.g.*, *Dawson*, 503 U.S. at 165–69 (using speech to infer intent is impermissible where the speech itself is protected and not independently unlawful). And allowing such evidence for the purposes the government proposes would create a substantial risk that the jury would convict a defendant for viewpoint, rather than illegal conduct. See generally, *Houston v. Hill*, 482 U.S. 451, 462-63 (1987) (warning against laws that criminalize speech directed at police; "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").[4]

---

[4] This analysis applies in full force to Ms. Abughazaleh, Michael Rabbitt, and any other Defendant whom can be heard singing songs and whose statements the government might seek to introduce under Rule 801(d)(2) as "opposing party's statements." Even if the government has a non-hearsay basis for admitting statements, it should be precluded from arguing that the statements "prove" an element of the offense or are even probative to any element of the charged offense. The government's arguments all but confirm that it is seeking to use First Amendment-protected speech and expressive conduct as substantive evidence of a crime. That is particularly so with Ms. Abughazaleh, for whom it writes that her chants "underscore that she viewed her obstruction as a political anti-ICE message," even though the chants identified by the government say nothing about ICE at all. (Dkt. #152, p. 2). Thus, given the government's anticipated

### C.      Brian Straw

As to Mr. Straw specifically, Mr. Straw is not depicted in any of the videos saying any of the chants the government seeks to introduce against him.[5] The government seems to argue that standing next to someone who is chanting is sufficient to impute the chant to Mr. Straw. This argument suffers from the same faulty logic of the "spontaneous conspiracy" argument the government rightfully walked away from.  (*See also* supra Section I(B), pp. 3-4 (discussing why chants uttered by other, *non-defendant* demonstrators should not be admissible to prove any element of the charged conduct as to a *defendant*).)

The government's argument to use these chants against Mr. Straw appears to be to defeat Mr. Straw's argument that he "braced [himself] against [Agent A's] car only in a defensive posture." (Motion, at 3). The government's theory is misguided. Mr. Straw will not argue that at the point of the chants the government seeks to introduce he was unaware that Agent A was an ICE Agent. Rather, it is the fact that Mr. Straw believed the driver was an ICE Agent that further caused Mr. Straw concern about the safety of himself and others based on Agent A's actions.

Mr. Straw was well aware that ICE Agents at this time were known to act unlawfully and injure, and in some cases kill, innocent individuals in the community. The fact that it was an ICE Agent behind the wheel of the SUV driving through the crowd further increased Mr. Straw's sense of danger regarding the encounter. Mr. Straw will testify that he was aware that Agent A's coworkers killed a community member just two weeks prior a few miles from Broadview and Mr.

---

arguments, these concerns fully warrant a First Amendment jury instruction to ensure the jury is instructed that it cannot convict Defendants based on the exercise of their protected constitutional rights.

[5] Mr. Straw believes the government concedes this point because they do not identify any point in the video where they allege he said any of these chants as they do for the other defendants. To the extent the government does not concede this point a simple watching of the videos and the lack of lip movement by Mr. Straw establishes this point.

Straw saw video of other ICE Agents shooting a pastor in the head with pepper balls just feet away from where Agent A was driving through the crowd just a week prior.[6]

### D. Michael Rabbitt

Relatedly, regarding Mr. Rabbitt, the government does not assert that in the Motion *in Limine* that Mr. Rabbit uttered any of the chant numbers 3–6. Thus, for the reasons explained above, those chants therefore cannot be admitted to prove any element of the charged conduct against Mr. Rabbit. (*See* supra Section I(B), pp. 3-4 (discussing why chants uttered by other, *non-defendant* demonstrators should not be admissible to prove any element of the charged conduct as to a *defendant*).)

As for chants number 1 and 2 (*i.e.*, "Up, up with liberation . . . " and "shame"), the government argues that Rabbitt's alleged conduct of putting his hand on the vehicle while participating in chant number one shows he knew that the driver was an ICE Agent. (*See* Motions, pp. 2-3.) But, here again, even if the chants could plausibly be introduced under Rule 801(d)(2) as an "opposing party's statement", the government should be precluded from arguing that these statements prove an element of the offense or that they are probative as to the charged offense *conduct*. Indeed, neither chant says anything about ICE and so cannot show that Mr. Rabbitt knew the driver was an ICE Agent. Nor do the chants make a threat of violence or harm, nor do they explicitly express an intent to impede or intimidate the officers. Rather, as explained at length above, these statements are quintessential protected speech that should not be used as evidence of a substantive crime.

---

[6] While this event was a few weeks before Agent A's fellow ICE Agents shot and killed Renee Good and Alex Pretti in the streets of Minneapolis, such further unlawful conduct by members of this same law enforcement organization demonstrates the reasonableness of Mr. Straw's concern at the time Agent A chose to drive through the crowd of people.

## II.     The Court Should Deny the Government's Rule 404(b) Motion

Under the purported auspices of Rule 404(b) government seeks to introduce video evidence from an incident on September 19, 2025, outside the Broadview Facility concerning Ms. Abughazaleh. (Dkt. #152, pp. 6-10). During this incident, which is reflected in the video available through the link at footnote 4 of the government's pleading,[7] Ms. Abughazaleh quickly crosses in front of an unmarked SUV as it departs the Broadview facility gate. She made no contact with SUV and maintained a distance away from it. A masked and armed officer then grabbed Ms. Abughazaleh by the chest, picked her up, and slammed her to the ground. The entire incident lasted less than 10 seconds, and is reflected in the screenshots below taken from the video:

 

 

---

[7] The link is copied here, for convenience: https://x.com/AliBradleyTV/status/1969007665498984819 (last visited May 13, 2026).

 

 

The government contends that evidence of this prior incident, namely Ms. Abughazaleh briefly stepping in front of an SUV, is relevant to prove that she "acted knowingly and planned her conduct on September 26, and did not act through ignorance, mistake, or accident." (Dkt. #152, p. 8).[8] However, stark differences between the September 19 and 26, incident show that stepping in front of the SUV for a split second on September 19 is not relevant to proving the instant charge; and, moreover, even if treated as Rule 404(b) evidence, the government's own argument, as confusing and conclusory as it is, shows that evidence of that portion of the encounter is little more than forbidden propensity evidence.

---

[8] The government is only seeking admission of Ms. Abughazaleh's actions briefly standing in front of the SUV, and not the subsequent actions of the officer throwing Ms. Abughazaleh to the ground, which is thus not at issue for this motion.

11

But first, as a preliminary matter, it must be noted that the government's Rule 404(b) notice was untimely. On March 19, 2026, Defendants filed a motion for notice and production of Rule 404(b) material. (Dkt. #105). On March 20, 2026, the Court entered an order construing the request to be for materials that would need to be admitted pursuant to a motion *in limine*, which were to be filed on April 21, 2026. (Dkt. #107). On April 21, 2026, the government filed its consolidated motions *in limine*, but did not identify any "other act" evidence as to any of the Defendants that it sought admission pursuant to Rule 404(b). (Dkt. #124). On April 21, 2026, the defense moved *in limine* to bar "other act" evidence due to the government's failure to provide notice. (Dkt. #127). Instead of responding to that motion, the government filed a supplemental motion *in limine* filed over two weeks later on May 7, 2026, in which it purported Rule 404(b) evidence directed at Ms. Abughazaleh only. (Dkt. #152).

Thus, as a preliminary matter, the government gives no reason why it failed to provide notice pursuant to the Court's schedule. While Rule 404(b) does not itself provide a specific time for notice, the committee notes to the 1991 amendment make clear that the time and form of disclosure depend largely on the circumstances of the particular case. *See also United States v. Blount*, 502 F.3d 674 (7th Cir. 2007) (citing Fed. R. Evid. 404(b) advisory committee's note (1991); *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (per curiam); and *United States v. Vega*, 188 F.3d 1150, 1152-55 (9th Cir. 1999)). Without proper notice, Rule 404(b) evidence is inadmissible. *Blount*, 502 F.3d at 677. And the prejudice in this case for late admission would be substantial, as the government, after narrowing its case from an overt conspiracy, to a spontaneous conspiracy, to no conspiracy, now—within just weeks of trial—is attempting to expand its case by seeking to introduce *as substantive evidence* Ms. Abughazaleh's prior protest activity at the Broadview Facility. Thus, the Court would certainly be within its discretion to deny

12

the government's motion due to its late notice. That is particularly so because, the government did not just discover this purported Rule 404(b) evidence. The underlying events were captured in videos produced in discovery on December 4, 2025, but not sought as Rule 404(b) material until the May 7, 2026 pleading.[9] The Government has no good cause for failing to comply with the Court's deadline on Rule 404(b) evidence, while the defense would be prejudiced by such limited notice.

Even if the Court excuses the government's untimeliness, the government's motion to introduce Rule 404(b) evidence against Ms. Abughazaleh should be denied.[10] Evidence of a defendant's uncharged crimes, wrongs, or other acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). However, Rule 404(b) "specifically prohibits the introduction of evidence of other crimes, wrongs, or acts when such evidence is offered to prove the character of a person in order to show conduct in conformity therewith on a particular occasion." *United States v. Robinson*, 161 F.3d 463, 466 (7th Cir. 1998).

The "proponent of the other acts evidence must show, through a chain of propensity-free inferences, that the evidence is relevant for a reason other than propensity." *United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021) (citing *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014)). The Court must also determine, under Rule 403, "whether the probative value of the

---

[9] Indeed, it was this September 19, 2025 incident with Ms. Abughazaleh that was the specific topic of a White House press release from Deputy White House Press Secretary Abigail Jackson, which Defendants described in their pleadings weeks ago.

[10] By bringing this motion under Rule 404(b), the government recognizes that evidence from September 19, 2025, is not "direct evidence" that can be used to prove an element of the charged offense. *See United States v. Bradford*, 905 F.3d 497, 506 (7th Cir. 2018) (internal quotation marks omitted) ("[E]vidence that tend[s] to prove the elements of the offense does not violate Rule 404(b)."); *United States v. Thomas*, 986 F.3d 723, 729 (7th Cir. 2021) (finding that shared similarities in fires set to properties made them "direct evidence" of mail fraud scheme to collect on insurance policies).

evidence is substantially outweighed by the prejudicial effect of the evidence on the defendant, paying close attention to whether the fact the evidence helps establish is disputed." *Thomas*, 986 F.3d at 728; *United States v. Norweathers*, 895 F.3d 485, 490 (7th Cir. 2018)("Still, even if the proper purpose and chain of reasoning are established, the evidence may be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice").

Under this controlling framework the Court does not ask "'whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant without relying on a propensity inference.'" *United States v. Bell*, 870 F.3d 622, 628 (7th Cir. 2017) (quoting *Gomez*, 763 F.3d at 856). The Court must also ensure "that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Reese*, 666 F.3d at 1015. Any Rule 404(b) challenge inherently requires a Rule 403 analysis. *United States v. Morgan*, 929 F.3d 411, 427 (7th Cir. 2019) ("Even if the other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403.").

Here, the government fails to identify a propensity-free chain of inferences to warrant the admission of the portion of the September 19, 2025, video showing Ms. Abughazaleh stepping briefly in front of an SUV. The government only states in passing fashion that this prior event is relevant to Ms. Abughazaleh's "motives, modus operandi, preparation, plan, absence of mistake, and lack of accident." (Dkt. #152, p. 8). And, in the same conclusory manner, it claims that it is not offered for a propensity purpose to commit the charged offense. (Dkt. #152, p. 8).

The government's argument flounders from the start. It analyzes the September 19, 2025, incident under the four-factor test articulated in *United States v. Vargas*, 689 F.3d 867, 875 (7th Cir. 2012), ignoring that the Seventh Circuit has abandoned that test in favor of an analysis that first focuses on whether the proponent of the evidence shows – *through a propensity-free chain of*

14

*inferences* – that the evidence is relevant for a reason other than propensity, to be followed by a Rule 403 analysis, if necessary. *See United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021) (emphasis added) ("In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), this court articulated a general framework for analyzing Rule 404(b) cases, *jettisoning a previous multi-factor test*. First, the proponent of the other acts evidence must show, through a chain of propensity-free inferences, that the evidence is relevant for a reason other than propensity. *Id.* at 860."). *See also United States v. Thornton*, No. 17-CR-30033-MJR, 2017 U.S. Dist. LEXIS 184141, at *7-8 (S.D. Ill. Nov. 6, 2017) ("The Seventh Circuit recently abandoned its long-standing four factor test to determine the admissibility of 404(b) character evidence. In *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014), the Court held that Rule 404(b) is clear enough as drafted, without using an independent multi-factor test."). Indeed, the Seventh Circuit has more recently described the four-factor test as "superseded" and "replaced" by *Gomez. United States v. Johnson*, No. 24-2027, 2025 U.S. App. LEXIS 13292, *7-9 (7th Cir. May 30, 2025)

The government's argument fails under the correct standard articulated in *Gomez* and followed by courts since. The limited and conclusory reasoning offered by the government—the party bearing the burden—does not come close to the basic non-propensity proffer required by *Gomez*. Instead, the government clearly seeks to use the September 19, 2025, incident as propensity evidence: that because Ms. Abughazaleh walked in front of an ICE vehicle on September 19, she must have therefore also deliberately done so on September 26. That is classic propensity evidence. Moreover, the government will use this propensity inference to support is incorrect claim that Ms. Abughazaleh and others ran up to and "swarmed" Agent A's SUV as it drove into the crowd—a position that is not supported by any video evidence. It will thus attempt to use the September 19, 2025, video to gap-fill and argue to the jury that, even with no evidence

showing her running up to the SUV on September 26, 2025, you can infer that she did because that is what happened on September 19, 2025. That is not permissible.

Thus, it is inescapable that the government seeks to use the prior incident to argue that Ms. Abughazaleh is the type of person who would engage in obstructive behavior generally, and therefore on September 26, 2025, acted in accordance with that character. That is plainly a prohibited propensity argument. *United States v. Morgan*, 929 F.3d 411, 431 (7th Cir. 2019) (describing propensity evidence as the type of evidence a jury would use to infer that a defendant is a "bad guy" or the "type of guy who would sell methamphetamine or commit crimes in general."); *United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012) ("The concern with 404(b) evidence is that jurors will decide that a defendant is guilty because they believe that he has a propensity for committing the charged crime or that he simply has a bad character, making him more likely to commit crime in general.").

While the Court need not consider the four-factor analysis relied upon by the government, referencing several of those factors further demonstrates why the September 19, 2025, incident where Ms. Abughazaleh quickly rushed in front of an SUV for a brief second is so distinct from the September 26, 2025, rendering it not only *not* Rule 404(b) evidence but also irrelevant under Rule 401. Without any real analysis the government concludes in one sentence that the September 19, 2025, incident is relevant to show Ms. Abughazaleh's "anti-ICE motive, modus operandi, preparation, and plan in blocking Agent's A vehicle on September 26, 2025" (Dkt. #152, p. 10) but offers no explanation as to *why* it shows any of those things.

Clearly, the incident from September 19 is dramatically different than September 26 in the respects the government claims are relevant. The former occurred in a split second and involved no contact with the SUV. On September 19, within seconds an armed CBP officer grabbed her,

16

picked her up, and threw her to the ground. It is a complete mystery how the split-second events from September 19, 2025, explain how Ms. Abughazaleh "prepared" and "planned for" the entirely disparate incident on September 26, 2025, when, standing amongst a crowd of people civilly protesting, Agent A drove his SUV into the crowd and into her. Likewise, the government's "anti-ICE motive" justification is not only an extreme reach, but is so exceedingly broad that it would essentially permit the government to reframe every prior appearance at a pro-immigrant or anti-inhuman treatment protest at Broadview (or elsewhere) as Rule 404(b) evidence showing an "anti-ICE motive" that could be argued to prove guilt. Nothing in the government's brief conclusory statement shows that the evidence will be offered for anything other than to portray Ms. Abughazaleh as someone who knowingly throws herself in front of cars, which is patently a springboard for a propensity inference related to the charged offense. In addition, for the reasons stated in Sec. I above, this First Amendment-protected activity cannot be used to prove guilt of a criminal offense.

Because the government has not articulated a propensity-free chain of reasoning to justify the portion of the September 19, 2025, encounter it portrays as 404(b) evidence, there is no need to reach the Rule 403 analysis. Should the government offer additional argument on this point, the defense will be prepared to respond. But based only on the conclusory arguments set forth in the motion, the Rule 403 concerns are manifest, as any probative value of showing Ms. Abughazaleh briefly standing in front of a SUV on another date is substantially outweighed by the danger of unfair prejudice and confusion of issues. The evidence is unfairly prejudicial in large part to its strong link to propensity (and on balance, the lack of any other permissible reason for admission). Admission would also risk confusion of issues and require a trial within a trial regarding the full context for what transpired on September 19. The government's only counterargument is a limiting

instruction, which is a weak prophylactic. This is precisely type of evidence where the jury is at risk for believing that if she did it before, then she did it here. For the reasons above, the Court should prohibit the Government from introducing this incident under the guise of other act evidence.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345

tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*