**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 25 CR 00693 |
| | ) | |
| **MICHAEL RABBITT, et al.** | ) | |
| | ) | |
| | ) | |
| | ) | |

**CHICAGO PUBLIC MEDIA, INC., CHICAGO TRIBUNE COMPANY, LLC, AND
BETTER GOVERNMENT ASSOCIATION'S PETITION FOR INTERVENTION FOR
PURPOSES OF ASSERTING THE RIGHT OF ACCESS
TO MAY 21, 2026 HEARING**

Proposed intervenors Chicago Public Media, Inc. (owner and operator of National Public Radio station member WBEZ 91.5 and publisher of the *Chicago Sun-Times*), Chicago Tribune Company, LLC (publisher of *The Chicago Tribune*), and The Better Government Association (collectively "Proposed Intervenors") petition this Court for leave to intervene in this matter for the purpose of obtaining access to the May 21, 2026 hearing, currently scheduled to be held under seal. In support of their motion, Proposed Intervenors state:

**INTRODUCTION**

Under the First Amendment, any criminal prosecution is a matter of significant public concern. As the Supreme Court recognized nearly fifty years ago, "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 575 (1980). This case commands particular public attention because at its core it involves the criminal prosecution of individuals whose alleged conduct was, by all accounts, an act of

political protest—the very category of expression the First Amendment was most centrally designed to protect—arising from the government's own enforcement initiative known as Operation Midway Blitz. The case for access does not rest on this proceeding alone. These prosecutions are one chapter in a broader and still-unfolding record of governmental conduct— in its law enforcement operations and in the exercise of prosecutorial authority—that has attracted sustained national scrutiny. That scrutiny makes transparency not merely appropriate, but constitutionally imperative.

Last year's ICE operations across major cities in the United States led to the arrests and indictments of countless demonstrators. The resulting court cases have revealed a troubling pattern whereby the government repeatedly brought serious federal charges against those protesting its immigration enforcement tactics that were simply not supported by sufficient evidence. More often than not, these charges were dismissed or significantly reduced. The public has a significant interest in understanding the evidence on which the government relies in bringing cases against civilians related to their interactions with federal agents and whether those cases are politically motivated.

Proposed Intervenors seek leave to intervene for purposes of accessing the currently sealed May 21, 2026 hearing and, if need be, whatever information is disclosed during that hearing, including the contents of the grand jury transcripts that the defendants seek in their motion ("Defendants' Motion"). Continued secrecy serves only to deepen public suspicion and fear that the government is misrepresenting its actions during Operation Midway Blitz and similar actions in other cities, and that evidence of its unlawful conduct is being secreted behind closed doors. Full and contemporaneous access by the press to the hearing and to the transcripts which are judicial records is the antidote to those fears and concerns.

2

The Court articulated two reasons for sealing the hearing: (1) its anticipation that grand jury materials might be discussed; and (2) its concern that public disclosure of information discussed during the hearing might taint the jury venire. Dkt. 181. As is discussed more fully below, the second concern can be addressed through the voir dire process. As to the first concern, although grand jury transcripts are traditionally secret, the Court can and should exercise its discretion to make them public where, as here, the grand jury has been dismissed, and the Court can implement measures to anonymize any juror or witness. Notably, the defendants agree that the public at large has a compelling interest in seeing the grand jury transcripts in this case and that the interest in secrecy is reduced now that the grand jury proceedings have concluded. *See* Dkt. 143, pp. 2, 11.

Proposed Intervenors, as members of the media, have a distinguished obligation to gather and disseminate news to the public, especially news stemming from noteworthy or impactful cases like this involving matters of extreme public concern. They come to this Court as the eyes and ears of the public seeking access to these preliminary proceedings that the First Amendment guarantees to them. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986).

 Proposed Intervenors are respected members of the American press with long histories of providing trustworthy coverage and reliable information to the public. Their award-winning content has driven civic engagement and conversation for decades for a large and diverse audience. The *Chicago Sun-Times* has been a stalwart of Chicago media for several decades. It operates in print and on the internet at chicago.suntimes.com. In 2022, the Sun-Times joined Chicago Public Media, a 501(c)(3) nonprofit organization. Chicago Public Media also operates radio station WBEZ that broadcasts local and national news and iconic programming on 91.5 FM radio and streaming on the internet at wbez.org.

Chicago Tribune Company, LLC is the publisher of *The Chicago Tribune*, one of the nation's largest daily newspapers in print, and operates the news website www.chicagotribune.com, which attracts users across the United States. Both the *Chicago Sun-Times* and *The Chicago Tribune* have reporters who cover the federal courts daily. The Better Government Association, founded in 1923, is a non-partisan, nonprofit news organization and civic advocate working for transparency, equity and accountability in government in Chicago and across Illinois. The BGA publishes Illinois Answers Project, an investigative and solutions-focused news outlet launched in 2022, as well as BGA Policy, which advocates for more transparent, accountable and equitable government through public policy reform.

**ARGUMENT**

**I.     THE PROPOSED INTERVENORS HAVE STANDING TO INTERVENE IN THIS CASE AND THE COURT SHOULD GRANT THEIR MOTION TO INTERVENE**

Federal courts have long recognized the right of the media to intervene in matters to assert a right of public access to judicial records. *Globe Newspaper Co. v. Super. Ct. for Norfolk*, 457 U.S. 596, 609, n. 25 (1982) ("representatives of the press and general public must be given an opportunity to be heard" on matters of access) (quotations and citations omitted); *In re AP*, 162 F.3d 503, 508 (7th Cir. 1998) ("representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion from the proceedings or access to documents") (quotations and citations omitted). This right to intervene is "rooted in the public's well-established right of access to public proceedings." *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000).

Intervention is not only permitted, but also "the most appropriate procedural mechanism by which to accomplish this task [of ensuring a right of access]" and "affords the court an

4

opportunity for due deliberation." *In re AP*, 162 F.3d at 507; *see also Jessup*, 227 F.3d at 997

("those who seek access to sealed proceedings or documents have a right to be heard in a manner

that gives full protection of the asserted right" and the Seventh Circuit has "recognized

intervention as the logical and appropriate vehicle by which the public and the press may

challenge" orders limiting access to court records) (internal quotations and citations omitted).

Courts in this district routinely grant the press leave to intervene to assert a claim for

access. As the court recognized in *U.S. v. Torres*, 602 F. Supp. 1458, 1461 (N.D. Ill. 1985):

> a cursory review of cases involving news media interest in criminal
> prosecutions (usually involving evidence to be captured or copied)
> shows that courts, *without discussion*, have permitted applications
> to be made for certain relief, or have granted news media
> organizations leave to intervene. In such cases, news media entities
> or organizations have been named and treated as applicants or as
> intervenors.

(emphasis added) (collecting cases). The Seventh Circuit further recognizes the importance of a

*timely* right to intervene, holding that: "[i]n order to ensure the right of access—of 'immediate

and contemporary' access—our case law has recognized that those who seek access to [court

documents] have a right to be heard in a manner that gives full protection of that asserted right."

*In re AP*, 162 F.3d at 507.

The Proposed Intervenors seek leave to intervene in this matter to present their positions,

set forth below, and afford the Court the opportunity for due deliberation on the important matter

of access to the judicial hearing on the Defendants' pending motion and the grand jury

transcripts addressed in that hearing.

II.     **THIS COURT SHOULD PERMIT THE PROPOSED INTERVENORS TO
        ATTEND THE HEARING ON DEFENDANTS' MOTION AND ALLOW
        ACCESS TO GRAND JURY TRANSCRIPTS**

The Court has articulated two reasons for sealing the proceedings on the Defendants'

motion: (1) that there will be "anticipated discussion of grand jury materials" and (2) that the

court is undertaking an "effort to avoid tainting the jury venire." Dkt. 181. To the extent that the Court is concerned that the hearing will include discussion of grand jury materials, the Court has discretion to permit public access to those materials, and the Court's concerns on those grounds can be addressed through less restrictive means. Moreover, there is a constitutional right of access grounded in the First Amendment to criminal proceedings that triggers strict scrutiny of a decision to seal the proceedings and the decision to seal proceedings in their entirety is not narrowly tailored to meet that level of scrutiny.

> **A.     There is a Presumptive Constitutional Right of Access to Court Proceedings in Criminal Matters and the Court Has Discretion to Permit Access to Grand Jury Materials**

The public and the press have a well-established right of access to court proceedings and documents. *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). This right of access serves to promote community respect for the rule of law, provides a check on the activities of judges and litigants, and fosters more accurate fact finding. *Id.* The right of access to criminal trials is grounded both in the common law tradition and the First Amendment. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1992); *Grove Fresh Distribs.* 24 F.3d at 897. The Seventh Circuit has also often observed that the right has a constitutional footing. *U.S. v. Peters*, 754 F.2d 753, 763 (7th Cir. 1984) (in deciding a right of access to trial exhibits, recognizing that "access to public documents is fundamental to a democratic state, and critical to our type of government in which the citizenry is the final judge of the proper conduct of public business") (internal quotations and citations omitted).  That constitutional First Amendment right of access to criminal trials applies to preliminary hearings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986).

Courts viewing the right of access through a constitutional prism apply strict scrutiny to assess limitations on access, requiring a "compelling government interest" that is "narrowly tailored" to meet that interest. *Globe Newspaper*, 457 U.S. at 607; *Peters*, 754 F.2d at 758. As the court in *Grove Fresh Distribs.* explained, the presumptive right of access is rebuttable upon demonstration that suppression "is essential to preserve higher values and is narrowly tailored to serve that interest." *Grove Fresh Distribs.*, 24 F.3d at 897, *quoting Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1983). A court must be "firmly convinced that disclosure is inappropriate before arriving at a decision limiting access [and] [a]ny doubts must be resolved in favor of disclosure." *Id.*

Notwithstanding the constitutionally based right of access to criminal proceedings and the strict scrutiny standard applied to limiting such access, the Proposed Intervenors recognize that grand jury proceedings are secret and access to them is subject to a different analytical framework. In *Carlson v. United States*, 837 F.3d 754, 760 (7th Cir. 2016), the Seventh Circuit held that grand jury transcripts are inherently judicial documents and need not be entered into evidence to become part of the judicial proceeding. Therefore, the presumptive right of access to court records and proceedings also extends to grand jury transcripts. *Id.*

Federal Rule of Criminal Procedure 6(e) establishes the secrecy of grand jury proceedings, but it also provides for some exceptions to the requirement of non-disclosure, including Court-authorized disclosure in subsection 6(e)(3)(E). The law is clear that the exceptions listed in Rule 6(e)(3)(E) are not exclusive. *Id.* at 764. It is within the district court's "long-standing inherent supervisory authority to make decisions as needed to ensure the proper functioning of a grand jury. While this inherent supervisory authority is limited to preserv[ing] or enhanc[ing] the traditional functioning of the grand jury, that includes the power to unseal grand

7

jury materials in circumstances not addressed by Rule 6(e)(3)(E)." *Id.* at 767 (internal quotations and citations omitted). In this case, there are compelling circumstances to permit disclosure of the grand jury materials to be discussed at the hearing on the Defendants' motion, and the Court's concerns in protecting the integrity of the grand jury—including the identity of the jurors—can be achieved while still permitting disclosure of materials related to government's conduct in this case.

> **B.**    **The Court Should Exercise its Discretion and Grant Access to the Hearing Because the Public's Right to Understand the Government's Pattern of Misconduct Outweighs Any Remaining Interest in Preserving the Secrecy of the Grand Jury**

In *In re Craig*, 131 F.3d 99, 105 (2nd Cir. 1997), the Second Circuit laid out factors courts should consider when deciding whether to exercise discretion to disclose grand jury materials. Among the factors is an inquiry into why disclosure is being sought. *Id.*

This case is certainly of significant public interest. It involves serious criminal charges levied against six civilians—one of whom is a widely-known political commentator who was recently a candidate for the U.S. House of Representatives—for exercising their First Amendment right to protest against the controversial and hotly-debated actions of the federal government in enforcing immigration laws and policy. Therefore, any debate over whether the grand jury instructions that led to these indictments should be disclosed is vitally important to the public. Moreover, this case and these indictments do not exist in a vacuum. The public interest in this information is amplified by the fact that it provides further data points demonstrating that the government has engaged in repeated misconduct. The following examples of cases from around the country demonstrate that transparency and the disclosure of grand jury materials is needed to shed light on this alleged pattern of wrongdoing:

**Examples Establishing Pattern of the Government Bringing Charges It Can't Prove**

*United States of America v. Dana Briggs*, 25-CR-610 (N.D. Ill. 2025)

A U.S. Air Force veteran was charged with felony assault of a federal officer related to his actions during a protest at the Broadview ICE Facility in 2025. ECF No. 1. The charges were eventually reduced to a misdemeanor and then the U.S. Attorney's Office dismissed the case altogether with prejudice. ECF No. 10. In his Order, Judge Fuentes expressed concern that the government brought charges "so hastily that it either could not obtain the indictment in the grand jury or was forced to dismiss upon a conclusion that the case is not provable, in repeated cases of a similar nature." Nov. 20, 2025 Order, p. 7, ECF No. 41.

*United States of America v. Ray Collins and Jocelyne Robledo*, 25-CR-00608 (N.D. Ill. 2025)

The defendants in this case were initially charged with felony assault of a federal officer related to a protest at the Broadview ICE Facility in 2025. ECF No. 1. On October 8, 2025, the government moved to dismiss based on the fact that the grand jury returned "no bill" and thus declined to return an indictment against the defendants. ECF No. 26. The case was dismissed without prejudice. *Id.*

These two examples provide a sampling of how the government's pattern of dropping serious federal charges is driving the need for access, but this is not an exhaustive list. In fact, the Associated Press has reported on dozens of cases brought against ICE demonstrators where felony charges were either reduced or dismissed.[1]

---

[1] Ryan J. Foley et al., *Key Findings of an AP Analysis Examining Federal Prosecutions of Protestors*, Associated Press (Dec. 18, 2025), https://apnews.com/article/ice-immigration-protests-prosecutions-doj-arrests-591f155d50c13756842e033ea23f16d3 (last visited May 20, 2026).

**Examples of the Government Mischaracterizing Facts and Disobeying Court Orders**

*Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74 (D.D.C. 2025)

In evaluating whether to grant the FEA's request for a preliminary injunction temporarily blocking enforcement of an executive order issued by President Trump, the Court noted that "[i]n just six months, the President of the United States may have forfeited the right to such a presumption of regularity." *Id.* at 92.

*Tobay Robles v. Noem et al.*, No. 26-CV-0107

Chief Judge Schiltz chastised the government for failing to obey court orders:

> Attached to this order is an appendix that identifies 96 court orders
> that ICE has violated in 74 cases. The extent of ICE's
> noncompliance is almost certainly substantially understated . . .
> This list should give pause to anyone . . . who cares about the rule
> of law. ICE has likely violated more court orders in January 2026
> than some federal agencies have violated in their existence . . . ICE
> is not a law unto itself.

*Id.* at 2, ECF No. 10.

*Donald J. Trump, President of the United States, et al. v. State of Illinois and City of Chicago*, No. 25A (U.S. Oct. 17, 2025) (regarding the President's authority to deploy National Guard troops in Illinois)

In its opening brief before the Supreme Court, the government describes the shooting of Marimar Martinez and states that "[w]hen the federal officers exited their vehicle, one of the cars that had rammed into them drove directly at a Border Patrol agent, who drew *her* service weapon and fired at the driver." Application to Stay Order and Request for Immediate Administrative

10

Stay, p. 9 (emphasis added). However, the government has repeatedly identified the shooter as male.[2]

Before the Supreme Court, the government claimed Ms. Martinez "rammed" her car into the agent's vehicle, Application to Stay Order and Request for Immediate Administrative Stay, p. 3. Yet, the agent has admitted that it was not a ramming. *U.S. v. Martinez*, 25-cr-00636, Transcript of Proceedings, Nov. 5, 2025, 77:9-15 ("Rammed wouldn't really be the—I may have used that, but it would be more like a hit. Ram to me is more of a head-on maneuver. So this was side to side. So I would describe it more of, I guess you'd say hit and not rammed.").

**Examples of the Government's Misrepresentations to Grand Juries**

<u>United States v. Comey</u>, 809 F. Supp. 3d 396 (E.D. Va. 2025)[3]

The District Court found that "the record in this case required the full disclosure of grand jury materials . . . given the factually based challenges the defense has raised to the government's conduct and the prospect that government misconduct may have tainted the grand jury proceedings." *Id.* at 410. The defendant sought disclosure of the grand jury materials under Rule 6(e)(3)(E)(ii), and the Court reviewed grand jury transcripts *in camera*. *Id.* The Court "identified two statements by the prosecutor to the grand jurors that on their face appear to be fundamental misstatements of the law that could compromise the integrity of the grand jury process." *Id.*

---

[2] *Federal Complaint Charges Two Individuals with Using Their Vehicles to Assault, Impede, and Interfere with the Work of Federal Agents in Chicago*, U.S. Atty's Off. N. Dist. Ill. (Oct. 5, 2025), https://www.justice.gov/usao-ndil/pr/federal-complaint-charges-two-individuals-using-their-vehicles-assault-impede-and.

[3] The government has since brought separate charges against President Trump's rival James Comey stemming from a picture of seashells Comey shared on social media that spelled out the phrase "86 47." *See United Stated v.* Comey, 26-cr-00016. Comey was indicted by a federal grand jury in North Carolina on felony charges for making threats against the President. ECF No. 1. This is further evidence of the intense public interest in cases involving the government and possible prosecutorial misconduct.

*United States of America v. Nekima Valdez Levy-Armstrong, et al.*, 26-cr-00025

This case involves the arrest of protestors inside a church in Minneapolis. ECF No. 23. Also arrested were well-known journalists Don Lemon and Georgia Fort. *Id.* The magistrate judge and Chief Judge declined to issue arrest warrants for Defendants Lemon and Fort, ECF Nos. 2, 3, 4, and the 8th Circuit declined the government's emergency petition, ECF No. 33. The government then convened a grand jury. ECF No. 39. The defendants are seeking access to the grand jury transcripts because "[d]isclosure of the grand jury proceedings is necessary to ensure the government did not mislead or mis-instruct it." Def. Mot. to Disclose p. 1, ECF 125. Defendants argue that "[t]his concern about misstatements to the grand jury are not abstract or speculative. Indeed, they are consistent with a small but growing body of caselaw involving the precise situation we see here—the government engaging in highly unusual conduct simultaneous to political pressure to bring charges, and misstatements of law at the highest levels of government." *Id.* at 15. The motion to disclose is still pending.

In order to fully report on the government's decision-making in this case, the press needs to understand both sides' arguments for why the grand jury materials should or should not be disclosed. Further, the news media must be present at this hearing in order to communicate to the public how this case fits into the larger pattern of government misconduct and secrecy that has been well-documented throughout the last year. The growing recognition of the importance of transparency has been recently underscored in this district by the recent amendment to Local Rule 6.2.1, which now requires that where a grand jury does not return an indictment, the written report of a lack of concurrence redacting only the identity of the foreperson submitting the report shall be filed unsealed on the docket.

In this case, the interests of grand jury secrecy are diminished because, as Defendants note in their motion (Dkt. 143, p.11), the grand jury proceedings have been terminated. Moreover, the Court has dismissed the felony counts against the Defendants, underscoring that there is no longer a legitimate basis to maintain secrecy. Furthermore, to the extent that there is any need for secrecy or privacy interest in the names of the grand jurors or witnesses, that concern can be met by simply replacing the actual names with a numerical designation.

For these reasons, the public's interest in this hearing and the grand jury proceedings as a whole weigh strongly in favor of access and the Court should exercise its discretion to permit that access.

### C. Avoiding a Tainted Jury Venire May Be Achieved Through Voir Dire

The Court's second stated reasoning for closing the proceedings is the concern that the jury venire could be tainted if the proceedings were open. The Proposed Intervenors do not quarrel with the legitimacy of that goal; however, courts have held that the fear of jury bias is not a sufficient basis to deny First Amendment prerogatives. In *Press-Enterprise Co.*, the Supreme Court rejected the contention that the risk of prejudice to the venire automatically justifies refusing public access to pre-trial hearings. 478 U.S. at 15. Instead, the Court held that "[t]hrough voir dire, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." *Id.* Likewise, in this case, concerns about a tainted jury venire can and should be addressed through the voir dire process rather than through the sealing of the courtroom.

In *Richmond Newspapers v. Va*., 448 U.S. 555, 580-581 (1980), the Supreme Court held that closure of the courtroom for a criminal trial violated the First Amendment when "no inquiry was made as to whether alternative solutions would have met the need to ensure fairness" and

that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." In this case, there is no finding that access to the hearing on the Defendant's Motion or to grand jury materials addressed during that hearing will be more prejudicial or have more of an effect on the jury venire than other cases where access to pre-trial hearings would be routinely permitted. *See also Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 565 (1976) (Supreme Court held that an order restraining the press from reporting on accounts of confessions due to concerns of tainting a jury pool violated the First Amendment, noting that "pre-trial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." *Id.* at 565.

Both Supreme Court and Seventh Circuit precedent establish that the First Amendment requires a court to apply strict scrutiny and narrow tailoring to a proposed closure of a proceeding in which there is a presumptive right of access. The fear of tainting a jury venire is not itself a sufficient basis to support such a closure, especially where alternative measures such a voir dire are not considered.

WHEREFORE, for the reasons set forth above, the Court should grant the Proposed Intervenors leave to intervene and access to the hearing on the Defendants Motion currently set for May 21, 2026, exercise its discretion to permit access to grand jury materials addressed during that hearing, and grant all other relief the Court deems appropriate.

Dated: May 21, 2026

Respectfully submitted,

**CHICAGO PUBLIC MEDIA, INC., CHICAGO TRIBUNE COMPANY, LLC, AND BETTER GOVERNMENT ASSOCIATION**

By: /s/ Steven P. Mandell
One of their attorneys

Steven P. Mandell (ARDC #6183729)
smandell@mandellpc.com
Brian D. Saucier (ARDC #6226006)
bsaucier@mandellpc.com
Julia P. Dacy (ARDC # 6351557)
jdacy@mandellpc.com
MANDELL P.C.
One North Franklin St., Suite 900
Chicago, IL 60606
312-801-6337