IN THE UNITED STATES DISTRICT COURT.
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 25 CR 693 |
| v. | ) | |
| MICHAEL RABBITT, KATHERINE MARIE ABUGHAZALEH, ANDRE MARTIN, CATHERINE SHARP, BRIAN STRAW, and JOSELYN WALSH | ) | Chicago, Illinois<br>May 26, 2026<br>10:00 a.m. |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - HEARING
BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

| | |
|---|---|
| For the Government: | HON. ANDREW S. BOUTROS<br>UNITED STATES ATTORNEY<br>BY: MS. DIANE MAC ARTHUR<br>219 S. Dearborn Street, Suite 500<br>Chicago, Illinois 60604 |
| For Defendant Michael Rabbitt: | TAFT STETTINIUS & HOLLISTER, LLP<br>BY: MS. NANCY L. DePODESTA<br>111 East Wacker, Suite 2600<br>Chicago, Illinois 60601 |
| For Defendant K. M. Abughazaleh: | LAW OFFICE OF JOSHUA G. HERMAN<br>BY: MR. JOSHUA G. HERMAN<br>53 West Jackson Boulevard, Suite 404<br>Chicago, Illinois 60604 |
| | LAW OFFICE OF MOLLY ARMOUR<br>BY: MS. MOLLY ARMOUR<br>53 West Jackson Boulevard, Suite 1424<br>Chicago, Illinois 60604 |

APPEARANCES (Cont'd):


For Defendant Andre Martin: COTSIRILOS, POULOS & CAMPBELL, LTD.
BY: MR. TERRENCE H. CAMPBELL
MS. VALERIE DAVENPORT
55 East Monroe Street, Suite 3250
Chicago, Illinois 60603

For Defendant Brian Shaw: CHERONIS & PARENTE
BY: MR. CHRISTOPHER PARENTE
MR. DAMON CHERONIS
140 South Dearborn Street, Suite 404
Chicago, Illinois 60603

For Defendant Joselyn Walsh: PEOPLE'S LAW OFFICE
BY: MR. BRAD THOMSON
1180 North Milwaukee Avenue, Third Floor
Chicago, Illinois 60642

Court Reporter: Noreen E. Resendez, CSR, RPR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1728
Chicago, Illinois 60604
312-582-5267
Noreen_Resendez@Ilnd.uscourts.gov


* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURTROOM DEPUTY: Calling case 25 CR 693, USA vs. Rabbitt, et al.

MS. MAC ARTHUR: Good morning, Your Honor. Diane MacArthur on behalf of the United States. And, Your Honor, I'll be appearing on behalf of the government in this proceeding and then in the future as well.

THE COURT: Thank you for volunteering as tribute.

All right. Defendants?

MR. PARENTE: Morning, Your Honor. Chris Parente and Damon Cheronis for Brian Straw, who is present in the first row.

MR. CAMPBELL: Good morning, Judge. Terry Campbell and Valerie Davenport on behalf of Andre Martin, who is also present in court.

MS. DE PODESTA: Good morning, Your Honor. Nancy DePodesta on behalf of Michael Rabbitt, who is not here in court today.

MR. HERMAN: Good morning. Josh Herman and Molly Armour on behalf of Kat Abughazaleh, who is present.

MR. THOMSON: Morning, Judge. Good to see you again. Brad Thomson on behalf of Jocelyn Walsh, who I believe is stuck on the train, so she may be in the court shortly.

THE COURT: All right.

MS. ARMOUR: And, Your Honor, I will also step up on

behalf of Cynthia Giachetti, who has been representing Cat Sharp in my absence. So Ms. Sharp is also in the room as well today.

THE COURT: All right. Thank you, all. So we are up on the defendant's motion for a preservation order. The government has made the point, I think, that all of these records are covered by the Federal Records Act. So let me ask first the defendants, what have you asked for that you think the Federal Records Act does not require the government by law to keep?

MR. CAMPBELL: So on behalf of Mr. Martin, the primary concern I had was cabining it to that in light of the fact that there may be communications on personal devices, for example. And I understand that the Federal Records Act can and certainly may, in this instance, if you're using it for government work apply to that. But it just seemed to me to be a fairly technical response as opposed to saying, yes, we've directed the people to preserve anything and everything. So the answer is, I don't know what else may exist out there; but that was my concern, personal devices, personal notes, personal memoranda.

THE COURT: Does anyone have anything else to add?

MR. PARENTE: Judge, the only color I would add -- and what we're reading with this administration, specifically and their opinions on certain record acts being

unconstitutional, I just wanted to make sure that if we're living in the world that we're living in here, that there's an actual court order regardless of how the administration views the constitutionality of any kind of records act that is out there right now, that there's an actual court order here.

And I talked to Ms. MacArthur. I don't think they're -- I think they're preserving. It's just a matter of production, which is fine. That's all we want. That's all we want.

THE COURT: Okay. It is my understanding the Federal Records Act would cover everything that you have asked for.

Does the government have a different understanding?

MS. MAC ARTHUR: I don't have a different understanding, Your Honor. But I do have additional information about steps that we have taken since last Thursday's hearing that may assist the Court and for the parties to learn in terms of our efforts to preserve.

THE COURT: Okay. Great.

MS. MAC ARTHUR: We agree with Your Honor that the Records Act does protect information and so I want to assure that that act was in place during the pendency of this case, and all of its requirements as well as penalties would be operative. But -- and that would apply to the emails and electronic communications.

The hearing last week did change the landscape

somewhat because, independently of the Federal Records Act, that triggered an additional government obligation that has been described in case law as requiring the government, if there is the potential for future litigation, to take further steps to make sure that the information is preserved; and I can give Your Honor the case citations if that would be helpful.

THE COURT: Sure.

MS. MAC ARTHUR: One of the cases -- and I have not yet given these to the defense attorneys, but I can if they don't want to write this down now. The case name is *D.R.*, the two initials, *Distributors, LLC vs. 21st Century Smoking, Incorporated*, 513 F. Supp. 3d. 839, specifically at page 929. It's a Northern District of Illinois case from 2021, and that case states, in relevant part, "Once a party reasonably anticipates litigation, it is duty bound to take good-faith steps to preserve documents and data that may be relevant to the litigation." And then at a different point, "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."

We don't know yet if there are going to be future proceedings here, but nonetheless, we saw that obligation as requiring some additional steps. And so on Saturday evening,

the person in our office who is designated in terms of preserving the evidence, what is known as a litigation hold, initiated that process with the executive office for the U.S. Attorney, otherwise known as EOUSA.

What he did was to send an e-mail to EOUSA, his point person there, and there's various people that need to be notified, which he included in his email basically requesting a litigation hold, a formal process in addition to the records statute that we talked about earlier.

He did so, again, in keeping with this case law where he saw it as being an additional obligation, and the way in which he described the information that he wanted preserved through the litigation hold was essentially tracking the proposed order from the defendants; and I'll read to you, Your Honor, what I understood him to have sent on Saturday evening. And it was as following: The email requested that the litigation hold to preserve the preservation of all records, emails, text messages, voice messages, documents, notes, et cetera, related to, one, the proceedings related to the above-described prosecution, and he described the prosecution in very short form, that occurred in the grand jury on October 9, October 16, and October 23rd, 2025; and, two, those records related to the decisions during the time period of October 9th through May 21st, 2026, concerning decisions regarding disclosure or redaction of the grand jury

transcripts, including decisions about what information would be provided to the Court about those transcripts.

This litigation hold, unlike perhaps some of the retention deadlines in the Records Act, extends as long as we need it, which is to say as long as someone from the U.S. Attorney's office informs EOUSA that the hold is no longer needed. It is not time limited in ways that other statutes might provide.

That same evening, Saturday evening, which would have been, I think, May 23rd, the civil division chief also sent an email specifically to Mr. Hogan, Mr. Almendarez, Mr. Skiba, and Ms. Mecklenberg. I received a copy of that email letting them know that this litigation process had begun and then including in it the provisions that I just read to the Court.

I think the important point here and really the headline here is that this litigation hold and the process I've just described is the same one that would take place if Your Honor were to sign the preservation order that has been proposed by the defendants.

Yesterday evening, so that would have been May 25th, 2026, the civil division chief took the next step as a part of this litigation hold process, which is to say he sent an email to all of the individuals that have been identified -- and if there are more, we can add them -- who may have had or will have involvement in this case. And it asks as a part of this

form that was attached to the email, and I received one as well, for the recipient to check a series of boxes as to certain categories of information of which the person has personal knowledge, and also requires the signing of the certification that says in effect, that we have all acknowledged or the signor acknowledges that we have received, we understand, and we accept the obligations to preserve all information we each now have or may receive, create, or modify.

Now, in terms of what is contained by way of personal devices, I can confirm with the civil division chief as to whether that is broad enough to capture that to address Mr. Campbell's concern. Arguably, it already does; but I can try to make sure that is covered as well.

I think the bottom line here, Judge, is that we did not on Friday and we do not now object to preservation. The concerns we wanted to express were an overarching one concerning standing. One concerning ultimate discovery issues that will have to be resolved and the need for an order from Your Honor.

THE COURT: The government had also kind of invoked the specter of a criminal contempt proceeding, so would it also be -- I mean, it would be my thought and I am curious if it is also yours, that 18 USC 1519 would also apply going forward? If there were any destruction that there would be a

potential separate criminal statute if that were to happen in light of everybody now being put on notice?

MS. MAC ARTHUR: I agree, Your Honor. I mean, I have referenced the criminal penalties involved in some of the statutes that we've already touched on. I don't think that is to the exclusion in any way of any other criminal statutes at play.

THE COURT: All right. So you've heard from the government what they're doing. You've heard that they agree there could be criminal penalties under both the Federal Records Act and the obstruction of justice tampering with evidence statute. Do you have any response?

MR. CAMPBELL: Can I offer a couple immediate reactions. One is, as I understood what Ms. MacArthur said, the litigation hold is directed to things related to the grand jury proceedings. I think it needs to be broader than that. It needs to be related to this case. There are, you know, as Your Honor noted last week, a host of issues out here. It is -- what we know about now are the things that occurred in front of the grand jury and we know about the improper redactions.

Your Honor's immediate thought was there may be some vindictive prosecution issues here, there may be other issues. So I think, Number One, it needs to be broader to encompass anything related to the prosecution of this case, which is not

an extra burden; but if they're calling things out specifically, I don't think it should be limited just to those three grand jury proceedings. That's Item One.

THE COURT: Let's pause on that. Did you understand that to be the request?

MS. MAC ARTHUR: I did not, Your Honor. Put it this way -- and again, we tracked the language that was included in the proposed order. If there is now a new request, I don't think that we have a problem with, if we can do this, modifying the litigation hold information that's been presented to Washington.

THE COURT: Okay. Why don't you put your heads together after court and discuss both the actual language used and whether you have different, more specific language.

MR. CAMPBELL: The second item is -- and I think who this preservation order is directed to. I understood Ms. MacArthur to say it was directed to the three AUSAs who, you know, were going to try the case. Obviously -- and I'm sorry if I missed this. Ms. Mecklenberg?

THE COURT: She had that in there.

MR. CAMPBELL: She go it. I think it also has to be directed to anybody in the front office who had any involvement in this case and anybody at the Department of Justice who had involvement in this case. And, you know, I have certainly reason to suspect that there were people from

the Department of Justice who were involved in discussions about this case, so we're asking that this be sent to a broader group of people. It should include people in the front office, any Department of Justice people, and case agents, any agents that worked on this. And I'll pause there.

THE COURT: Well, I'll ask the government first if it objects?

MS. MAC ARTHUR: Not in principle, Your Honor, but yes in practice. We have the litigation hold formal document that went out, I think, it was yesterday, it did include the front office. It did include three people in the front office. It did include, in addition, two supervisors in the office. If there are additional people that the defense attorneys wish to be included, I would ask them to please provide me with those names.

I'm not sure about DOJ people outside of the office. First, I don't know the answer as to whether or not they were involved. Second, I don't know where we basically cut this in terms of a timeline because there may be -- and, again, I'm speculating, DOJ people involved in the future that were not involved maybe as of May 21st, 2026, last Thursday.

THE COURT: Third, I think worth considering is the litigation hold will reach, it sounds like, everyone relevant in the U.S. Attorney's office. So you would then get everything between them and DOJ. What you seem to now be

asking for is just communications amongst DOJ outside of the U.S. Attorney's office, and there we have not seen any reason to believe there was either communication at all or an issue.

MR. CAMPBELL: So you are correct about the scope of the request. I will say, Judge, I have been involved in instances where one side of a text or email communication -- for whenever reason, I'm not saying in a nefarious way, but deletes it or it's on automatic deletion on their phone and it's not on the other side. So to say you'll get it if it's collected here is not always the case.

The second part about whether we get internal communications, whether it's between DOJ and DOJ, DOJ and White House, White House, etc., we can put off for another day. But we're in the dark. They are not in the dark about who they dealt with. And so, you know, in some ways I have to tell you I think it is unfair -- we'll do it. We will provide the names that, you know, we have that we suspect may have been involved. But they know who had communications with them. And so the obligation falls to them to say, hey, we know you, John Smith at DOJ, had communications with this office. They need to proactively do that. We'll do our part, but we're operating in the blind. They are not.

THE COURT: Okay. I understand the point.

MS. MAC ARTHUR: Your Honor, if I may, one more problem in the list that Mr. Campbell just presented and that

has to do with the agents, we only have the ability to place a litigation hold on DOJ, or more specifically, the U.S. Attorney's office. I realize you're raising a separate question about DOJ beyond the walls of the U.S. Attorney's office. I don't think under any circumstance the litigation hold imposes the same allegations on agents. I think if that is a request, it would be based -- the agency itself or themselves, would have to make those arrangements.

MR. CAMPBELL: So we would ask for an order today on that.

THE COURT: Yeah, you're not going to get one today on that. I mean, here's the problem, standing looms large in this case, for me at least. I think it is clear that I have some amount of ancillary jurisdiction based on my supervisory powers to address misconduct that may have occurred before me. What is very unclear to me and frankly I have not found anything to support is that you all get to participate in an adversarial nature in those proceedings.

So I think that if you're going to want more than what they've offered, you are going to need to brief the standing issue, which we can set as short a schedule as you want. At this point, given what the government has said what they are doing, given they have acknowledged that two criminal statutes will apply if anything is destroyed or lost perhaps, I am not going to grant the preservation order as you have

requested it. I think it's frankly redundant given what they said. But I will be happy to set a briefing schedule for you to submit anything to me, any case that you have found where an injured party in a criminal case has a seat at the table for ancillary proceedings afterward involving any kind of prosecutorial misconduct allegations.

I think you would also want to perhaps brief what types of alternate actions you would have available to you because that would also perhaps help your request as you extend out for different agency's records and things of that nature. I just don't actually know the answer to that at this point.

Most of the cases you've cited for me thus far have been Rule 11. Those don't help me. Rule 11 is a Federal Rule of Civil Procedure, not a criminal procedure rule. A criminal procedure rule is very, very different. So I'm going to need rules that specifically focus on the criminal rules of procedure and criminal sanctions -- sanctions available in criminal cases.

MR. CAMPBELL: Can I add one thing and then turn it over to Mr. Herman, who I think wants to say something.

Can we ask -- does the government have any objection to notifying the agents and agencies involved that we've made this request and asked them to preserve things so that if something is out there saying, "preserve anything related to

this case," understanding kind of the limitations that have been discussed?

MS. MAC ARTHUR: I'm going to defer that question if I can, Your Honor. I just don't know to what extent I can. And so if I can just put that on hold for a little bit and let me find out a little bit of the procedural steps. Again, yes, I want to emphasize too from the government's side that standing and the scope of discovery are both unresolved issues in this case. That aside, I will find out what I can and get back to Mr. Campbell; but I just don't know how much I can do or what authority I might have in which to make that request.

THE COURT: And you still have the same power and authority you would as a civil lawyer to send your own letter to the agencies putting them on notice, at which point a whole bunch of other obligations kick in for them.

MR. CAMPBELL: And we will do that, right. And that's why I said "make the request," not that she has binding authority to inquire it; but I would like everyone who is involved to take notice that, hey, there are issues here. There are going to be further proceedings of some of sort before this Court and maybe others and they ought to preserve it.

MR. PARENTE: And, Judge, just to follow up on that before Mr. Herman jumps in on something else, I think Your Honor knows -- I didn't catch it until the second time. I

think the FBI agent was in the grand jury room when some of this misconduct occurred. So that's also why we want to see, did he go back and report this up through his people. If he did, we want those communications to the extent that they were shaped in any way.

THE COURT: Is the FBI DOJ?

MS. MAC ARTHUR: I believe it is, Your Honor.

THE COURT: So they have control over DOJ?

MR. PARENTE: Yeah. But I thought they were not able to get a preservation order.

MS. MAC ARTHUR: I think that the litigation hold is addressed to the U.S. Attorney's office, Your Honor, that I know. Beyond that, I don't know to what extent. I did raise the question over the weekend about what extent it applies to the outside agencies and the short answer is that it does not. But that is within the agency itself to control.

I think the question here is somewhere in the middle to which to say I may not be able to include them in the litigation hold. To what extent can I ask them, I can ask of them; and that's what I don't know the answer to.

THE COURT: Okay.

MR. PARENTE: But the color of that is that he was there for some of this. That's why we're asking.

THE COURT: Okay. So the short answer is no other preservation order today. We are up again next week, so we

can talk more about this then. What type of briefing schedule -- sorry. Mr. Herman, you wanted to speak as well.

MR. HERMAN: Judge, right. So we've collected -- First of all, I appreciate the government sharing, Ms. MacArthur, the steps that have been taken at this point with the Court and the defense, and we have been thinking about these issues regarding standing based on some of the comments in your minute order. We -- we think we can answer a lot with what we anticipate will be filed tomorrow, a pleading under the Hyde amendment, which puts us in a position where there are discovery options.

We are filing it tomorrow, even though the dismissal was just last Thursday, because we think that this is related, as well, to the dismissal of Count 1, which was back in April. So we want to be, out of an abundance of caution, be within a 30-day period of the dismissal of Count 1. So it won't be the fulsome pleading that we would otherwise file, but it will perhaps either set a briefing schedule in terms of a response but more likely an opportunity to amend after we engage in this process about disclosure of the grand jury transcripts, as well as other possible discovery related to the materials that the government has said that it now has a litigation hold on.

THE COURT: Will you be filing that under this case number or a new case number?

MR. HERMAN: Our research indicates we should file it in this case, and again we're filing it, I think -- I think we would have 30 days from last week, but we don't want to be caught in a position where there's -- you know, I'm not asking the government to take a position right now on when the 30-day clock starts, but we'll just out of an abundance of caution file it and amend in due course.

THE COURT: Okay. Do you consider that to be your magnum opus on standing or do you also want to file something else?

MR. HERMAN: So we're going to file something else. And these may very well be trains operating on parallel tracks that arrive at the same destination of disclosure and possibly the same type of relief. We understand the Court has ancillary powers and supervisory authority to oversee what has happened before Your Honor, but the defendants -- the relief the Court may order on that track will be possibly different than the relief that the defendants are entitled to under statute.

THE COURT: Okay. So how long do you want for the second brief?

MR. CAMPBELL: Can we have 21 days?

THE COURT: Sure. So that would be June 16th. So that would address standing, possible sanctions available, or alternate civil actions that might be contemplated, and any

case law that you have in a criminal context, would be great.

How long would the government want to respond?

MS. MAC ARTHUR: May we also have 21 days, Your Honor?

THE COURT: July 7th for response. How long to reply?

MR. CAMPBELL: Fourteen.

THE COURT: July 21 for your reply. And then I'll set another date for rule via writing thereafter.

We are also up next week, unless you want to accomplish it today on the issue of disclosure of the grand jury transcripts. Are people ready to address it today or do you need time?

MS. MAC ARTHUR: Your Honor, if I may jump in, and I apologize for stepping in front of the defendants, but this may help. The government's position is that we do not object. The only -- Let me phrase it this way, the only redactions that we would be seeking are of personal identifying information such as names of either agents or grand jurors. Although, I don't think any of the grand jurors' names appear. And then also those areas that Your Honor identified by way of expressing concern about the feelings of grand jurors being released, as well as any redactions that the defendants are opposing or proposing, excuse me.

So said another way, we don't object to any proposed

redaction from the defendants. We do agree that what Your Honor flagged should be redacted, and we also add to that personal identifying information. That may obviate the need for a government reply in order to speed up the process. I don't know if the defendants still now wish to file something tomorrow.

MS. DE PODESTA: So, Your Honor, our due date is as Ms. MacArthur noted, is tomorrow for our position on this. While we completely agree that the names of agents, even grand jurors, there is one grand juror who is identified by name in the transcript that should not be included. We do, however, believe that the back and forth with the grand jurors is critical context, and we are in the process of putting together a position, something to file for Your Honor tomorrow. But that back and forth that occurred between members of the grand jury and the prosecutors in this case is critical context and background as to what occurred here, and so we would be asking for disclosure of that as well.

THE COURT: Let me ask you to do this -- I mean, the devil is in the details here. There was a lot of back and forth between grand jurors and prosecutors. Some of which, I think, gives helpful insight to the public about what occurred here; some of which really is, I think, at the heart of the grand jurors' role and attempt to sort through the evidence. And to the extent there is any secrecy interest left here, I

think it is really meant to protect future grand juries as they move forward to have fulsome deliberations, to feel free to ask their questions, and make sure that they have an open dialogue and are comfortable doing that. So let me ask you -- if you can't file something tomorrow, you don't have to. I think what might make more sense is for you all to put your heads together and see how many redactions you agree to and how many you do not, and then I can weigh in specifically on line by line if I need to.

MS. DE PODESTA: We can do that.

MR. PARENTE: Judge, just two other things on this issue. One -- and we've been in touch with Ms. MacArthur about this. We have a belief that the U.S. Attorney had personal contact with this grand jury. We have not been provided with that transcript. I believe there's an update on that. If that did occur, we would like that as well. Two, as Your Honor knows from the back and forth that you just highlighted, I think tone is going to be important here, so we did request the audiotapes from the government. They have those, at least some of those. We would like to have those, maybe not for Wednesday, but I think to the extent if it happened the way I'm picturing it happened with the players involved, I do think there is more color that a transcript is not going to give us.

THE COURT: I think the tone leaps off the page in

many places, but I understand your request.

MR. PARENTE: Again, as we get into this Hyde claim, we need to show things and that bar is very high, as you know. And I think tone can help in certain ways. At least I want to know what the tone was. And so to the extent that the government has it preserved, I would ask that you order it disclosed to us.

THE COURT: Well, why don't you talk amongst yourselves about that as well. I will keep next week's date and you all can let me know what agreements you've reached and what matters are still outstanding for me to resolve.

MR. CAMPBELL: We're up next Wednesday; is that when we're up?

THE COURTROOM DEPUTY: Tuesday.

MR. CAMPBELL: Would it make sense to try and get something to the Court on any disagreements that we have on redactions?

THE COURT: We can also move it later if you all need more time to work together.

MR. CAMPBELL: If we can move it a few days at least, maybe towards the end of the week? Is that --

MS. DE PODESTA: Are you talking about the filing?

MR. CAMPBELL: Right. So I think what we're going to do is see if there are any disagreements and notify the Court, here are the disagreements, if any. Can we do that by next

Friday? Does that work?

THE COURT: Sure. So why don't you file something. I think this will have to be under seal, right? You'll have to give me pages and proposed redactions and argument. Next Friday is fine for any type of briefing. Do you think that can be simultaneous?

MR. CAMPBELL: So my hope would be we file something jointly outlining any disagreements and, you know, to the extent there needs to be argument, I guess there would be a separate filing to make any arguments. But we can figure out what's best or the Court can tell us if you want separate filings. It kind of depends if there are any real disagreements and if there is just a couple, we can probably put defendants' position and government's position.

THE COURT: Do whatever makes the most sense to all of you. But we'll set Friday as the deadline for it all to be done.

MR. CAMPBELL: Thanks, Judge.

MR. PARENTE: And we are going to go sidebar, Judge, I believe, on the U.S. Attorney question, if that's okay with Your Honor.

THE COURT: Sure. Hold on one second. Next Friday's date is June 5th, it looks like, for the filing or filings. Permission to file those under seal.

MR. CAMPBELL: Thank you.

MS. MAC ARTHUR: And, Judge, if I may add just a quick footnote before we go to sidebar. The reason for the sidebar is because we would be talking about grand jury matters. I just wanted to lodge or again put a marker down about discovery in terms of producing audiotapes at this point. Again, it's getting into that area of, I don't think that the defendants now have standing because they are no longer parties to this case. And so I'm going to continue to push back when there are requests like that that I think may cross the line between what they're entitled to and what is helpful to them or to the Court in resolving some of the pending issues.

THE COURT: That is fair at this moment. I assume you will be preserving the audiotapes?

MS. MAC ARTHUR: We have made that specific request and I've been told that each of the three appearances are being preserved by way of the audio recordings.

THE COURT: Is there anything else on the record?

MR. THOMSON: Yes, Judge. Before we go to sidebar, on behalf of Ms. Walsh, we never received the transcript to the grand jury proceeding as Ms. Walsh was dismissed previously. So we requested that of the government by email and I spoke with the government this morning. I believe their position is that we are entitled to it when it gets released to the public. Our position would be that we should be able

to be participating similarly or the same as defendants and especially since Ms. Walsh was one of the people who was indicted by this grand jury, she should be entitled to have access to this. So we would ask that you order the government to --

THE COURT: How about you file the same standing -- well, a different standing memo, considering that your client was out so much earlier than the other four were, explaining to me at this point where your standing lies?

MR. THOMPSON: Okay, Judge.

THE COURT: Anything else?

MS. MAC ARTHUR: Not before Your Honor right now.

But we are prepared to go to sidebar.

THE COURT: Okay. I really hate the white noise machine, so we're going to relocate to chambers.

(Sealed proceedings heard at sidebar at pages 27 through 36:)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Noreen E. Resendez*      *May 28, 2026*
Noreen E. Resendez, CSR, RPR, CRR      Date
Official Court Reporter

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 25 CR 693 |
| | ) | |
| v. | ) | |
| | ) | CONTAINS SEALED PROCEEDINGS |
| | ) | |
| MICHAEL RABBITT, | ) | |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, CATHERINE | ) | |
| SHARP, BRIAN STRAW, and | ) | |
| JOSELYN WALSH | ) | Chicago, Illinois |
| Defendants. | ) | May 26, 2026 |
| | | 10:48 a.m. |

TRANSCRIPT OF PROCEEDINGS - HEARING
BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

| | |
|---|---|
| For the Government: | HON. ANDREW S. BOUTROS<br>UNITED STATES ATTORNEY<br>BY: MS. DIANE MAC ARTHUR<br>219 S. Dearborn Street, Suite 500<br>Chicago, Illinois 60604 |
| For Defendant Michael Rabbitt: | TAFT STETTINIUS & HOLLISTER, LLP<br>BY: MS. NANCY L. DePODESTA<br>111 East Wacker, Suite 2600<br>Chicago, Illinois 60601 |
| For Defendant K. M. Abughazaleh: | LAW OFFICE OF JOSHUA G. HERMAN<br>BY: MR. JOSHUA G. HERMAN<br>53 West Jackson Boulevard, Suite 404<br>Chicago, Illinois 60604 |
| | LAW OFFICE OF MOLLY ARMOUR<br>BY: MS. MOLLY ARMOUR<br>53 West Jackson Boulevard, Suite 1424<br>Chicago, Illinois 60604 |

APPEARANCES (Cont'd):

| | |
|---|---|
| For Defendant Andre Martin: | COTSIRILOS, POULOS & CAMPBELL, LTD.<br>BY: MR. TERRENCE H. CAMPBELL<br>MS. VALERIE DAVENPORT<br>55 East Monroe Street, Suite 3250<br>Chicago, Illinois 60603 |
| For Defendant Brian Shaw: | CHERONIS & PARENTE<br>BY: MR. CHRISTOPHER PARENTE<br>MR. DAMON CHERONIS<br>140 South Dearborn Street, Suite 404<br>Chicago, Illinois 60603 |
| For Defendant Joselyn Walsh: | PEOPLE'S LAW OFFICE<br>BY: MR. BRAD THOMSON<br>1180 North Milwaukee Avenue, Third Floor<br>Chicago, Illinois 60642 |
| Court Reporter: | Noreen E. Resendez, CSR, RPR, CRR<br>Official Court Reporter<br>219 S. Dearborn Street, Room 1728<br>Chicago, Illinois 60604<br>312-582-5267<br>Noreen_Resendez@Ilnd.uscourts.gov |

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

*(Sealed proceedings heard at sidebar:)*

*THE COURT: Everybody cozy? All right.*

*Did Mr. Boutros appear before the grand jury.*

*MS. MAC ARTHUR: He did. But I need to explain that, Your Honor.*

*Ms. Diane MacArthur on behalf of the United States.*

*MR. HERMAN: I'm sorry, Diane? I can move up. I'll move up.*

*MS. MAC ARTHUR: I just introduced myself that's all.*

*Your Honor, I wanted to preface what I'm about to say is that this may fall under the umbrella of discovery to which we believe the defendants are not entitled, but at the same time I recognize it touches on the pending issues; and so I wanted to be able to address the Court in the presence of defense counsel.*

*I was asked by email through Mr. Parente the question of whether Mr. Boutros appeared before the Broadview grand jury on this matter. The question was very specific. I don't want to pars words, and so I'm going to provide you with this answer:*

*The answer in fuller form is that Mr. Boutros did not appear before the special June 2024 grand jury in connection with the Broadview Six matter. He did appear before the special June 2024 grand jury on the morning of October 23rd, 2025, which is the third grand jury appearance as well as the*

*other grand juries that were not set to expire around that same time in his capacity as the chief legal advisor to all of the federal grand juries in the Northern District of Illinois.*

*His appearance in the special June 2024 grand jury and these other grand juries occurred after consulting with the Chief Judge in her capacity as the supervisor of the grand juries and on all matters occurring before those grand juries in the Northern District of Illinois, and his appearance coincided with the reading of a letter that the Chief Judge prepared and that was then read to the grand juries.*

*I've been told that Mr. Boutros did not talk about the substantive law of any particular case or the facts of any particular case during these appearances before the multiple grand juries. I don't know if there is a transcript of this. I don't think that there is. I have not done my own asking or questioning, but that's my information that no one is aware of any sort of a transcript from this proceeding.*

*And before I forget and before we end, Your Honor, I would ask until we get this sorted out, that this be maintained under seal. There is a reference to what I just said to the Chief Judge. I don't even know if she's been notified that we have made reference to a letter that she wrote, and it was addressed to the different grand juries. That's all the information I have right now.*

*THE COURT: So I agree this should remain under seal*

*at this time. This is a matter occurring before the grand jury as a whole, not with respect to any particular case it sounds like. I would ask that you do try to see if the court reporter had the audio on. I mean, there would not be a transcript, right, because there is never a transcript of a prosecutor's colloquy with the grand jurors automatically. I think they just audio record those and then when the request is made to transcribe, that would be usually when they go back and make a transcription. So if we can start with trying to locate whether the audio was engaged, that would be helpful.*

*The letter, it sounds like, was that provided to all grand jurors across all three grand juries?*

*MS. MAC ARTHUR: It's my understanding that it was a letter that was read to all the sitting grand juries at that time.*

*THE COURT: And would it be a fair summary to say that the letter addresses points of law on how often the government can re-present when a grand jury has failed to indict?*

*MS. MAC ARTHUR: I don't know what the letter contains.*

*THE COURT: You have not seen it?*

*MS. MAC ARTHUR: I have not seen it.*

*THE COURT: I have not either.*

*MR. PARENTE: I thought there was a reference to an*

*instruction -- I thought the Judge Kendall issue was about excusing grand jurors. Am I wrong about that?*

*MS. MAC ARTHUR: I'm speaking somewhat in the dark here, because I have not seen the letter; and so I'm now sort of adding my own interpretation to what I'm about to say. My understanding is that the communication with the Chief Judge concerning the ex parte communication is a separate issue or a separate communication from this letter that I've just described.*

*My understanding is that the letter did not involve anything having to do specifically with this case. But again, I have not seen the letter. My understanding is that the letter was broader, particularly since -- this is my speculation now, it was addressed or read to each of the grand juries, which is to say, more grand juries than just the one that considered this case.*

*MR. PARENTE: Okay. And, Judge, so you're aware the reason this came up is there is a reference in the transcript where a grand juror seems to reference the U.S. Attorney speaking to them. So that's sort of what we're trying to get at.*

*MS. DE PODESTA: If I can follow up on that. Did you say that Mr. Boutros appeared before this particular grand jury on October 23rd? The reason why I'm asking is because I believe the reference that you're talking about predates*

*October 23rd.*

*MR. CAMPBELL: So -- you can respond.*

*MS. MAC ARTHUR: Respond now? Okay. In response to Ms. DePodesta's question, if you can point me to the specific page reference in that transcript, I'll go back and see what I can find out for you. But the information I received is that Mr. Boutros recalls being in that grand jury on October 23rd. So I'm trying to -- I thought it was October 23rd, but if you have more information, please let me know.*

*MR. CAMPBELL: The item I wanted to follow up on and everyone that can hear me, correct me if I'm misremembering. It's the second grand jury on, I think, the 16th that gets ended abruptly; and we don't see anything in the transcript. And so who went down there to end it abruptly and what was said to the grand jurors about why it was being ended abruptly and whether that was Mr. Boutros or somebody else from the office. Certainly if there's a transcript, we would like that. If not, we would ask that the audio be preserved on that. But that was my understanding from what Mr. Boutros said the other day was, "I ended it." And when you look at the transcript, there is no end point in that transcript.*

*THE COURT: So she's going to object based upon the discovery issue, I am sure. But if you can track down the answers so that at least you know them, that would be helpful.*

*MS. MAC ARTHUR: One point is I have not listened to*

*the audio from any of those appearances, and so I don't yet know how much, if anything, was captured. But, yes, question noted. I'll see what I can find out.*

*MR. CAMPBELL: Thanks.*

*THE COURT: The way it would ordinarily work, Mr. Campbell, because I don't believe you have been before a grand jury.*

*MR. CAMPBELL: Not as a lawyer.*

*(Laughter.)*

*THE COURT: Ordinarily someone would just knock on the door and pull people out rather than coming in and announcing their presence and why they are there. So I wouldn't be shocked if we don't have that, but it's worth looking for. Anything else?*

*MR. PARENTE: And I'm getting greedy and you can say no to this as well, the Court can. But one of the issues in this case -- and I think maybe we'll do this as a discovery request. The excusable of the grand jurors seemed to come out of -- it seemed to be maybe there was some discussions in the office, at least I'm wondering about. Because I think these issues had been coming up consistently with these Midway Blitz cases. So to the extent that Mr. Boutros gave instructions to Sheri about what to do if you have a problem with grand jurors as far as excusing them, that's sort of an area that we want to explore as well if we can at some point.*

MR. CAMPBELL: And it's certainly not just Mr. Boutros, it's anybody.

MR. PARENTE: Anybody else in the front office. There's a thought process here that Sheri's immediate jumping from that comment to get out of here, again, just in my personal experience, I didn't even know you can do that. And so it seems like there might have been instructions going around in the office at that time on those issues, and I just am curious what those were.

MS. MAC ARTHUR: I apologize for jumping in and saying no immediately.

MR. PARENTE: No, no. I know.

MS. MAC ARTHUR: But now that I've heard the question, again, we're getting a little bit beyond the original questions and what I just said about Mr. Boutros on whichever date it was that he made an appearance. I've noted it. We'll continue to resolve the discovery related issues. But again, going back to the preservation issue, it sounds like everything that would have been involved, if it exists, is being preserved.

MR. PARENTE: Okay. Thank you.

THE COURT: Anything else?

MR. PARENTE: Can we tell our clients this or is this -- at least the stuff that's under seal, do you not want that?

*THE COURT: I prefer that we not share the greater communications with all three grand juries as a whole.*

*MR. PARENTE: Okay.*

*MR. HERMAN: Diane, is it fair to assume that the three in the front office is Andrew Boutros, Jason Yonan, and Rick Young for the preservation issue?*

*MS. MAC ARTHUR: Yes. When I referred to the front office earlier when standing in open court, as to the front office and then to the three in the front office, those are the individuals that I meant.*

*MR. HERMAN: Thank you.*

*THE COURT: Do we still need to meet next week?*

*MR. CAMPBELL: I don't think so.*

*MS. DE PODESTA: Our filing is not due until Friday night.*

*THE COURT: Okay. Then I'll go ahead and strike via minute order next week's appearance, and set another one as needed. All right. Thank you all.*

*(Concluded at 10:45 a.m.)*

* * * * *

*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/Noreen E. Resendez* — *May 28, 2026*
Noreen E. Resendez, CSR, RPR, CRR — Date
Official Court Reporter