**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | |
| MICHAEL RABBITT, | ) | Judge April M. Perry |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION AND APPLICATION FOR
ATTORNEYS' FEES AND LITIGATION EXPENSES
PURSUANT TO THE "HYDE AMENDMENT", 18 U.S.C. § 3006A**

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, and Brian Straw (collectively, "Defendants"), by and through their respective undersigned counsel, and pursuant to the Hyde Amendment, 18 U.S.C. § 3006A, and the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), hereby move and submit this application for the payment of their attorneys' fees and litigation expenses in this case. The government's misconduct before the grand jury, which compelled the U.S. Attorney to dismiss the remaining charges in the superseding information on May 21, 2026, shocks the conscience. The efforts to cover up that misconduct are arguably worse. This wide-ranging misconduct, both outside of and before the Court, cast serious doubts on the government's prior representations, including the lack of any outside influence and direction from

1

Washington D.C. in bringing these charges, which raises concerns beyond the problematic presentation of the case to the grand jury and subsequent cover-up.[1] The law provides a remedy for those, like Defendants here, who are subject to this type of vexatious, bad faith, and frivolous litigation.

Even though the complete factual record concerning the prosecution of Defendants and the reasons for the sudden dismissal must still be developed, due to the Hyde Amendment's 30-day filing window, Defendants file this Motion now to preserve their claims.[2] As such, Defendants expressly reserve the right to amend and supplement this Motion, particularly as their investigation into the government's

---

[1] As much as the U.S. Attorney may seek to deflect and pin the blame on a single prosecutor who, along with another AUSA, presented the case to the grand jury, the Court should not accept that convenient excuse which is clearly meant to deflect, minimize, and contain. Many questions remain about how the U.S. Attorney and those under his direction acted in response to the "no bills" that grand juries returned in Operation Midway Blitz-related prosecutions, including this very case where the grand jury apparently first rejected the government's case against these Defendants—questions that are only heightened by a "Special Report" issued by the U.S. Attorney on today's date, June 2, 2026, in which he *acknowledges personally appearing before* this *Grand Jury on October 23, 2025, and asking that any grand juror who was "struggling with a certain type of cases, such as immigration cases" to identify themselves.* Similarly, questions remain about whether the U.S. Attorney had any communications and interactions with DOJ officials, namely now-acting U.S. Attorney Todd Blanche and others on his behalf, before or while this grand jury was considering these now-dismissed charges and these Defendants. Finally, despite the Office's attempts to lay the blame solely at a single AUSA's feet, she was not working for the Office when the repeated denials and misleading statements (or non-statements) about the misconduct were made to the Court, including redacting all evidence of the misconduct in the transcripts with the specific intent to keep the Court in the dark and hope the misconduct would never see the light of day. The bad faith in this prosecution is evident, and vestiges remain. Thus, even *after* the stunning proceedings before the Court on May 21, 2026, later that day the U.S. Attorney himself commended the very prosecutors involved in this case's misconduct as **"courageous"** and having **"fought for the rule of law."** (U.S. Atty Broutros Office-wide email of May 21, 2026).

[2] The government first announced its intention to dismiss the conspiracy charge in Count One with prejudice on April 29, 2026, but did not file a motion to do so until May 6, 2026 (Dkt. 147), which was granted and formally dismissed on May 8, 2026 (Dkt. 155).

misconduct—whether currently exposed or as yet unknown—remains ongoing and also because this Court has indicated it intends to conduct further hearings on the misconduct.

## I. Timeline of the "Cover-up" Conduct by the Government.

The Court's discovery and revelation of the prosecutors' serial and severe misconduct before the Grand Jury was shocking. What is of at least equal, if not greater concern, however, is the willful and persistent cover-up of that conduct by the government over the past six months. To date, we believe only a portion of the conduct constituting the cover-up has been brought to light, and further discovery is warranted for Defendants to properly present their Hyde Amendment claim. A brief timeline of that conduct known *to date* is summarized as follows:

| October 9, 2025 | As the Court described at the May 21, 2026, hearing, in the very first appearance before the grand jury on this case the prosecutor engaged in "improper prosecutorial vouching to the grand jurors, with the AUSA putting her personal credibility and trustworthiness on the line in support of the charges." (5/21/2026 Tr. at 22, 34).[3] |
| --- | --- |
| | The Grand Jury returned a "No Bill" that day. |
| October 16, 2025 | Prosecutors again present this case to the Grand Jury. After some Grand Jurors expressed opposition to the government's case, "the prosecutor excus[ed] grand jurors who disagreed with the government's case from the deliberations process." (5/21/2026 Tr. at 23). |
| | The Front Office having been alerted to this misconduct "in realtime" directed that the Grand Jury proceedings terminate for the day (5/21/2026 Tr. at 51), and the |

---

[3] Because the grand jury transcripts remain under seal for now, counsel reference the Court's summary of the prosecutor's vouching, rather than the prosecutor's actual words, which the Court has read.

| | |
|---|---|
| | testimony before the Grand Jury "ended abruptly." (5/21/2026 Tr. at 33). |
| **October 23, 2025** | On October 23, the government presented this case to the Grand Jury for the third time. |
| | As disclosed in a "Special Report of the United States Attorney's Office for the Northern District of Illinois Regarding Grand Jury Appearances," appeared in front of the Grand Jury and stated the following, amongst other comments: [4] |
| | "If there's anyone here who is struggling with a certain type of cases, such as the immigration cases or other cases where they do not believe that they can set aside their personal, their personal emotions, that they cannot listen and deliberate honestly and objectively, I would ask that you raise your hand and identify yourself, because we have a different procedure for that. And so is there anyone here who thinks that he or she cannot—and this is no, by the way, no different than if we were actually in a jury and we were picking a jury. The judge would engage in this type of colloquially with every single juror to make sure that the person, both the government as well as the defendant has a fair juror. Fairness is the key to the operation of our system. |
| | So is there anyone here who thinks that he or she cannot be fair, cannot be openminded, cannot receive evidence, cannot set aside their personal feelings on any case, immigration or otherwise, child exploitation, immigration, whatever it is. Anyone who thinks they can't do it, please raise your hand." |
| | During that third session the AUSA stated on the record that she had had *ex parte* contact with one or more grand jurors. (5/21/2026 Tr. at 53). |
| | After this third attempt, and after U.S. Attorney Boutros delivered his comments quoted above, the Grand Jury returned the indictment requested by the prosecutors. |
| **October 29, 2025** | The DOJ issues a press release following the return of the indictment entitled, "Federal Grand Jury in Chicago Indicts Six Individuals on Charges of Impeding Federal Agent Engaged in Immigration Enforcement Operations." Both |

---

[4] This report was released on June 2, 2026, shortly before the filing of this pleading, and is available here:  https://www.justice.gov/usao-ndil/media/1443716/dl?inline.

| | |
|---|---|
| | U.S. Attorney Boutros and then-Deputy Attorney General Todd Blanche were quoted in the press release. Mr. Blanche's comments included the observation that "No one is above the law and no one has the right to obstruct it." |
| **December 3, 2025** | Defendants make their first written request for grand jury materials, asking the government for, among other things, "All grand jury transcripts and minutes, including but not limited to instructions given to the grand jurors on the law" and "[a]ll exhibits shown to the grand jurors." Ex. A, Requests 9 and 10. *See also* Dkt. 94-2. |
| **December 8, 2025** | The prosecutor—the same who personally committed the several instances of severe misconduct before the Grand Jury in seeming desperation to get an indictment returned —responded to Defendants' Dec. 3 letter, refusing to provide the Grand Jury transcripts or exhibits, and writing in part, "***[t]his is a relatively simple, straightforward indictment, that presents no exceptional circumstances***, and you have not cited any in your letter or in any discussions with us. Since the case was filed, various defense counsel has stated repeatedly only that they are 'interested' in how we presented this case to the grand jury. Your curiosity is not an 'exceptional circumstance.' You all know the law, or can research the law, ***and [Defendants] have no reason to believe that we presented anything other than the law***." Ex. B, Govt. Letter dated 12/8/25 (emphasis added) (Dkt. 94-5). |
| **January 21, 2026** | The government sent a response to Defendants' Dec. 1, 2025 (Dkt. 94-1) and Jan. 9, 2026 (Dkt. 94-4) discovery letters. The prosecutors wrote "those letters request discovery based on your expressed concern that defendants in the above-captioned case were 'selectively targeted for prosecution'" *but said that defendants "have not satisfied your burden of overcoming the presumption that we have not violated the equal protection clause" and "have failed to raise evidence that we have acted with improper motive or that an external agency prevailed on us to seek an improper indictment,* ***because neither is true***." Ex. C at 2, 5 (emphasis added). *See also* Dkt. 94-6.<br><br>The prosecutors pointed to the standard for selective prosecution discovery in the 2nd Circuit being a showing |

| | |
|---|---|
| | that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) he would not have been prosecuted except for the animus." The prosecutor wrote that defendants had not shown any of these circumstances ***"because they do not exist."*** *Id.* at 5 (emphasis added). The prosecutor—who knew all the now-public misconduct that had occurred before the Grand Jury because she committed it—concluded by writing ***"a motion for discovery based on a claim of selective prosecution in this case borders on frivolous*** *." Id.* at 7 (emphasis added).[5] |
| **February 26, 2026** | At an in-court hearing, in response to Defendants' motion for a Bill of Particulars, the new lead prosecutor stated that the government was "going to voluntarily redact a portion of the charge that's charged in three separate fashions," but before doing so, "We'd like to talk to our supervisors downstairs, *including the U.S. Attorney*." (2/26/2026 Tr. at at 4-5) (emphasis added) Dkt. 90. |
| **April 8, 2026** | Defendants file a Supplemental Motion to Compel Disclosure of Grand Jury Transcripts detailing the presentment of the law on the 18 U.S.C. § 372 conspiracy charge and any related exchanges in light of the narrowing of the indictment. Dkt. 118. |
| **April 9, 2026** | Per the Court's minute entry, "The Government's response to Defendants' motion to compel disclosure of the grand jury transcripts 118 is to be filed by 4/20/2026. To the extent the Government does not object to an *ex parte* in camera review of the transcripts, the relevant portions of the transcripts as outlined in the motion may be provided to the Court by 4/20/2026 in lieu of a written response." Dkt. 119. |
| **April 20, 2026** | In an unopposed motion for an extension the AUSAs requested "an extension of time until no later than April 23, 2026, to provide the Court all relevant portions of the transcripts as outlined in the defense motion, for an *in camera* review. This extension will allow the government |

---

[5] Between February 2 – February 13, 2026, the lead prosecutor who had presented this case thrice to the Grand Jury and had been the lead trial attorney for the government moved to withdraw from the case, and two new AUSAs filed their appearances, joining the second-chair AUSA who had been on the case from its inception, including in the three appearances before the Grand Jury before an indictment was obtained.

| | the opportunity to obtain all relevant transcripts to provide the Court, which it has been seeking to obtain." Dkt. 121. The Court granted this extension. Dkt. 123. |
|---|---|
| **April 23, 2026** | Having had two full weeks since the Court's April 9, 2026 Order to produce the transcripts for *in camera* review—and fully aware of the misconduct contained in those transcripts—the government submitted portions of grand jury transcript in camera to the Court ***but with the portions showing obvious misconduct fully redacted.*** |
| **April 24, 2026** | After receiving the redacted transcripts, in a minute entry, the Court wrote, "The Government's motion to file grand jury transcripts under seal [128] is granted. This matter is set for a hearing 4/29/2026 at 10:30am in person in Courtroom 1725. ***The Government is asked to bring to the hearing fully un-redacted versions of the transcripts it has filed under seal (which currently contain redactions within the colloquy portions)*** as well as a copy of any presentation(s) or document(s) shown to the grand jurors summarizing the law." Dkt. 130 (emphasis added). |
| **April 27/28, 2026** | The U.S. Attorney states that he first becomes aware of the vouching that took place in the Grand Jury. (5/21/2026 Tr. 51). |
| **April 29, 2026** | At the beginning of the in-court hearing on April 29, the Court asked the government "[i]n terms of the grand jury transcripts, let me start by asking the government. Do you object to those being provided to the defendants?" (4/29/2026 Tr. at 3) (emphasis added) Dkt. 142. |
| | The lead prosecutor responded, ***"I think that we're going to find that issue is moot. We're going to move to dismiss Count 1, and we are filing as we speak, a superseding information on the remaining counts with the remaining four defendants."*** *Id.* at 3-4. He continued "we have brought you, in compliance with your order, the unredacted versions; ***but since we are moving to dismiss Count 1 and their motion and your order were directed at that, I think that the issue should be moot."*** *Id.* at 4. |
| | The Court, likely relying on the presumption of regularity and the government's repeated statements that there was nothing amiss in the way this case was indicted, agreed for |

| | |
|---|---|
| | the time being, but told Defendants they had leave to file something if they believed it was not mooted. *Id.* at 5. |
| **May 4, 2026** | On May 4, 2026, in the wake of the government telling the Court it would dismiss the conspiracy count and therefore "moot" Defendants' request in light of the Court's Order to produce unredacted copies of the Grand Jury transcripts, Defendants filed another Motion seeking disclosure of the Grand Jury transcripts (Dkt. 143) (along with a separate Motion to Dismiss Count 1 With Prejudice, (Dkt. 144)) in large part because of the suspicious nature of the government's conduct in moving to dismiss the lone felony count—after 6 months of vigorously defending it—and thereby seeking to avoid having to show even the Court those transcripts. |
| | In the motion for disclosure, Defendants wrote, "There are, realistically only three plausible explanations for what the grand jury transcripts contain—each troubling in its own right—that would lead the government to endure yet another public black eye by unceremoniously announcing its intent to dismiss the felony conspiracy count less than a month before trial: |
| |     1. The AUSA mis-instructed the grand jury on the law. |
| |     2. The AUSAs failed to instruct the grand jury on the law at all. |
| |     ***3. There are interactions between the AUSA and the grand jury which are otherwise improper or prejudicial.***" |
| | Additionally, the Defendants argued "***if the relevant grand jury minutes contain interactions between the AUSA and the grand jury that is otherwise improper or affects the validity of the indictment or the grand jury process, that too should be disclosed***. The fact that portions of the government's colloquy with the grand jury was withheld from this Court for its in camera, *ex parte* review after six months of aggressive litigation, itself, raises serious concerns." Dkt. 143 at 9, 11 (emphasis added). |
| **May 6, 2026** | On May 6, the government responded to Defendants' renewed motion for an *in camera* inspection of the Grand Jury minutes by stating: |

| | |
|---|---|
| | "The second motion renewed defendants' efforts to obtain grand jury transcripts regarding the legal instructions the government provided pertaining to former Count One of the obviated and inoperative original indictment, ***and speculated about what defense counsel histrionically called a 'time of mounting national distrust in the Department of Justice's use of the grand jury process.'***" Dkt. 147 at 3 (emphasis added).<br><br>Immediately after this statement the government concluded, ***"In order to alleviate defendants' stated concerns, and avoid what would surely be further unnecessary and time consuming litigation, not to mention a waste of this Court's resources, the government hereby formally moves to dismiss Count One of the original indictment with prejudice."*** *Id.* at 4 (emphasis added).<br><br>After filing the motion to dismiss (Dkt. 147), the government emailed the courtroom deputy and wrote, "In our view, that resolves the motion to dismiss Count One filed by defendant Martin and moots the motion for disclosure filed by defendant Straw that are scheduled for tomorrow morning at 8:30." Defense counsel opposed the cancellation of the hearing, and counsel for Straw further asked the government to "bring at least one copy of the unredacted transcript to court." The government responded, "No." (Dkt. 191). |
| **May 7, 2026** | At the hearing before the Court on May 7, the Defendants again argued for disclosure of the Grand Jury transcripts based on suspected prosecutorial misconduct before the Grand Jury. In response to those arguments, the Court stated, *inter alia,* "And to be clear I have seen about 99 percent of the transcripts.[6] There were several lines in the middle of things that were redacted, and I do not know what those were. But I have seen most of it." (5/7/2026 Tr. at 7-8). The government did not correct this obvious misimpression. |

---

[6] What we now know and what the government knew then is that this statement was incorrect; the Court was missing significant sections of the transcripts because the government withheld entire pages from the Court and never did anything to correct the Court's stated misconception.

| | |
|---|---|
| | Defense counsel then argued that dismissal with prejudice could be warranted if there was prosecutorial misconduct before the Grand Jury. The Court responded, "And I think that would be a good argument if it was purposeful misconduct. If it was inadvertent, I don't think it would be." (*Id*. at 9-10).

Shortly thereafter, the Court stated, "Again, there are probably less than 20 or 30 lines out of the three transcripts that were redacted, so …" (*Id*. at 10). The government did not correct this obvious misimpression. |
| **May 18, 2026** | At the Pre-trial conference, Defendants again renewed their request for the Court to look at the Grand Jury transcripts in their unredacted form. Dkt. 185, Tr. at 62.

The Court said to the government, "So at the moment, … Mr. Parente's request is just that I look at the redacted portion. ***I want to say there were like 15 lines redacted. If I had to guess, it seems like those were probably related to IT issues playing the video, but I couldn't tell and that's why I asked for it.*** Do you have any objection to me just seeing the lines that were redacted?" *Id*. at 63 (emphasis added).

The lead AUSA responded, "No. We offered that weeks ago," adding "I can go back and look and see what we gave you and see what we redacted." *Id*. at 63-64. The government again did not correct the obviously false impression the Court had of the true state of affairs. |
| **May 21, 2026**

**Court Session 1** | At the hearing on May 21, 2026, the Court summarized the prosecutorial misconduct it had uncovered relating to the Grand Jury, as well as the government's failure to be candid with the Court:

"… I was incredibly shocked by the redactions that were made. …. I have never seen the types of prosecutorial behavior before a grand jury that I saw in those transcripts." (5/21/2026 Tr. at 22).

The Court then briefly summarized the misconduct it had found:

"First, improper prosecutorial vouching to the grand jurors, with the AUSA putting her personal credibility and trustworthiness on the line in support of the charges. |

10

| | |
|---|---|
| | Second, improper prosecutorial communications of a substantive nature with the grand jurors outside of the grand jury room. |
| | And, third, the prosecutor excusing grand jurors who disagreed with the government's case from the deliberations process. |
| | ***Which brings me to problem Number 4, which is the fact that all of this was redacted out of the versions of the transcripts that I got. And frankly, it is that that I find the most problematic.*** …. |
| | I do believe deeply in the presumption of regularity and that most government attorneys are doing the best they can to do the right thing. That trust has been broken." (5/21/2026 Tr. at 22-23 (emphasis added)). |
| | Among other things, the Court stated, "Also, what I think rears its head again is this idea of vindictive prosecution. …. We all took the government attorneys' word on a great many things. I, at the time, was operating on a presumption of regular grand jury proceedings, which these clearly were not." *Id.* at 24-25. |
| **May 21, 2026**<br><br>**Court Session 2** | At the afternoon session on May 21, the U.S. Attorney appeared personally before the Court and, in light of the misconduct discovered by the Court, moved to dismiss all charges against all Defendants with prejudice. (5/21/2026 Tr. at 49-50). |
| | The U.S. Attorney stated, *inter alia*, that: |
| | - he had "spoken extensively to the prosecutors" about this matter and the redactions made to the Grand Jury transcripts. (*Id.* at 50); |
| | - "With respect to the excusing of grand jurors that took place, which was the second time that the prosecutor sought to return an indetment, that is an issue that I was aware of in realtime. And once I became aware of it, I immediately called off that grand jury session. I then reached out to the chief judge to make her aware of what had happened, because she supervised the grand jury." (*Id.* at 51); |

11

| | |
|---|---|
| | - he became aware of the AUSA's vouching before the Grand Jury on "either April 27 or the 28th. And immediately when I learned about that vouching, the next day I moved to dismiss the indictment." (*Id.* at 51); and <br><br> - He "was completely unaware of any *ex parte* communications that took place in the third instance [the Oct. 23, 2025 Grand Jury session] until I became aware of the grand jury transcripts [on April 27 or 28, 2025]. And within the next day or 24 hours thereabout, we immediately dismissed Count 1." (*Id.* at 52-53). |
| **May 21, 2026** <br><br> **Evening** | The U.S. Attorney sent and Office-wide email about this case and commended the prosecutors involved in this case as ***"courageous"*** and having ***"fought for the rule of law."*** Jason Meisner, *Fallout begins in 'Broadview Six' case meltdown as prosecutor loses Washington posting*, CHICAGO TRIB., May 22, 2026 (emphasis added), https://www.chicagotribune.com/2026/05/22/fallout-from-broadview-six-case/. |

In sum, it was only after the Court required the government to produce the full, unredacted Grand Jury transcripts that the "shocking" prosecutorial misconduct before the Grand Jury came to light. And it was only the ***outing*** of that severe and prejudicial misconduct which caused the U.S. Attorney immediately to dismiss all charges against the four Defendants – because the ***fact*** of the prosecutors' misconduct had been well-known to all the AUSAs involved in the case, and to the U.S. Attorney himself for months (as to certain misconduct known to the 'front office' in real-time when it occurred in October, 2025, including the prosecutor kicking out members of the Grand Jury who disagreed with the prosecutors' request for an indictment), and

12

for weeks (as to the vouching), and all efforts thus far had been to *deny* and *conceal* that misconduct from both the Court and the Defendants.

Dismissal when faced with these sordid facts, however, cannot absolve the government from its misconduct, nor immunize it from providing further information about it. Further targeted discovery, therefore, is necessary for Defendants to fully make out their Hyde Amendment claim, and Defendants will be filing a Motion for Discovery in relation to this Hyde Amendment Application/Motion.

## II. LEGAL STANDARDS

The Hyde Amendment, located in a Statutory Note to 18 U.S.C. § 3006A, allows a prevailing party to recover reasonable attorney's fees if it can be shown that the government's case was vexatious, frivolous, or in bad faith. *See United States v. Sriram*, 482 F.3d 956, 958-89 (7th Cir. 2007), *vacated on other grounds*, 52 U.S. 1163, 128 S. Ct. 1134, 169 L. Ed. 2d 946 (2008) (Hyde Amendment "authorizes the court in a criminal case to award a reasonable attorney's fee to 'a prevailing party, other than the United States,' if the court finds that the government's position was 'vexatious, frivolous, or in bad faith.'").

In relevant part, the Amendment provides:

> [T]he court, in any criminal case … may award to a prevailing party other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for under Section 2412 of title 28, United States Code [the Equal Access to Justice Act, "EAJA"]. To determine whether to award

13

> fees or costs under this section, the court, for good cause shown, may receive evidence *ex parte* and *in camera* (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal[.]

18 U.S.C. § 3006A (Pub. L. 105—119, Title VI, § 617, Nov. 26, 1997). Importantly, a defendant need only establish one of the means of improper conduct by the government—that it was vexatious, *or* frivolous, *or* in bad faith—to be entitled to recover attorney's fees and costs under the Hyde Amendment. *See United States v. Monson*, F.3d 435, 439 (8th Cir. 2011); *United States v. Braunstein*, 281 F.3d 982, 994, 997 (9th Cir. 2002) (noting the test is disjunctive and holding that defendant was entitled to attorney's fees based on analysis of the "frivolous" prong).

As the Hyde Amendment is modeled after the EAJA (28 U.S.C. § 2412), courts applying it often rely on the provisions and judicial interpretations of the EAJA to evaluate Hyde Amendment claims. However, unlike the EAJA, a defendant seeking relief under the Hyde Amendment has the burden to prove their claims by a preponderance of the evidence. *United States v. Terzakis*, 854 F.3d 951, 954 (7th Cir. 2017); *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1182 (9th Cir. 2003); *United States v. Knott*, 256 F.3d 20, 28 (1st Cir. 2001); *United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000). Presumably because the Defendant bears this burden, the Hyde Amendment allows for discovery to be conducted by the Defendant for good cause shown. *See United States v. Terzakis*, No. 13 CR 339, 2016 U.S. Dist. LEXIS 110553, at *31 (N.D. Ill. Aug. 19, 2016) (recognizing the court has discretion to permit discovery in *Hyde* context for "good cause," but finding that the

14

defendant there had not shown "good cause" to obtain it). Additionally, the scope of discovery to support a claim under the Hyde Amendment may be broader than the record before the Court. *United States v. Gardner*, 23 F. Supp. 2d 1283, 1296 (N.D. Okla. 1998) (granting discovery to Hyde Amendment claimant and observing that the law "expressly contemplates an expansion of the record traditionally available to the Court for the purpose of assessing an applicant's claim.").

Procedurally, the Hyde Amendment incorporates the standards set forth in 28 U.S.C. § 2142, which requires that a party submit their claim to the court within 30 days of final judgment in the action.[7] *See* 28 U.S.C. § 2142(d)(1)(B); 18 U.S.C. § 3006A note ("awards shall be granted pursuant to the procedures and limitations provided for an award under section 2142 of title 28, United States Code").

### III.    ARGUMENT

#### A.    Defendants are Entitled to Relief Under the Hyde Amendment as the Prevailing Parties.

*First*, as noted above, absent equitable tolling issues, a defendant seeking an award of fees and expenses under the Hyde Amendment must submit their application within 30 days of final judgment. 28 U.S.C. § 2412(d)(1)(B). Defendants' claim is timely under any measure, as the Court did not formally dismiss Count One until May 8, 2026 (Dkt. 155). A defendant's application must also submit an itemized statement stating the "actual time expended and the rate at which fees and other

---

[7] The EAJA 28 U.S.C. § 2142(d)(1)(B) time limitation has been found to be subject to equitable tolling. *See Dobyns v. United States*, 101 F.4th 839 (Fed. Cir. 2024); *Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578, 582 (6th Cir. 2005).

expenses were computer." 28 U.S.C. § 2412(d)(1)(B). Counsel for Defendants will submit to the Court summary billing statements forthwith.

*Second*, to qualify for relief under the Hyde Amendment a defendant must show that their net worth was less than two million dollars at the time of the indictment. *United States v. Adkinson*, 247 F.3d 1289, 1291 n.2 (11th Cir. 2001); *see* 28 U.S.C. § 2412(d)(1)(B) (listing, among other requirements, that any "party" seeking an award of fees and expenses must be "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed"). Here, each Defendant falls below that threshold, as evidenced by the financial summaries provided in their respective pretrial services reports, which are already of record in this case.[8] Dkt. 35 (Rabbitt), Dkt. 18 (Abughazaleh), Dkt. 200 (Martin), Dkt. 24 (Straw).

*Third*, a defendant must show that they are the prevailing party. 28 U.S.C. § 2412(d)(1)(B). Defendants clearly meet that standard following the government's dismissal with prejudice of the charges in the indictment and superseding information which was prompted by the discovery and outing of serious misconduct by the government in *this case*, as to *these Defendants*. As the Seventh Circuit ruled in *Terzakis*, the defendant was the "prevailing party" for purposes of seeking attorney's fees under the Hyde Amendment because the dismissal "materially altered" the parties' relationship since the government "could no longer prosecute [defendant] for the [charged conduct]." 854 F.3d at 954-55; *United States v. Lawrence*,

---

[8] Should this threshold be disputed or the Court require further proof on this topic, Defendants are prepared to provide additional information regarding their respective financial net worth at the time of the indictment.

No. 06-10019, 2006 U.S. Dist. LEXIS 52570, at \*5 (C.D. Ill. July 31, 2006) ("A threshold inquiry in the application of the Hyde Amendment is whether the petitioner is a 'prevailing party' under the statute. … ***Here, it is clear that Lawrence was the prevailing party because all of the claims against him were dismissed with prejudice."***) (emphasis added).

### B.     The Prosecution was Vexatious, Frivolous, or Brought in Bad Faith.

Next, Defendants must show that the "government's case was vexatious, frivolous, or taken in bad faith" to obtain relief under the Hyde Amendment. *Terzakis*, 854 F.3d at 955. In evaluating such, the Court's focus must be on the prosecutors' conduct and ask, "whether the alleged prosecutorial misconduct was so 'pervasive' as to 'render the government's litigating position as a whole vexatious, frivolous, or in bad faith.'" *United States v. Reyes-Romero*, 959 F.3d 80, 96 (3rd Cir. 2020) (internal citations omitted).

The Seventh Circuit has recognized that the terms "vexatious" and "frivolous" "both require a prevailing party to demonstrate that the government's position was objectively deficient—in other words, that the government lacked a sufficient factual or legal basis on which to initiate or proceed with the case." *Terzakis*, 854 F.3d at 956. Vexatious prosecution requires both a subjective element of maliciousness or intent to harass, and an objective element of deficiency. *United States v. Sherburne*, 249 F.3d 1121, 1126-27 (9th Cir. 2001). The government's position is frivolous when it is groundless, with little prospect of success, often brought only to embarrass or annoy

17

the defendant. *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir.1999). While the Seventh Circuit has not defined the term "bad faith," other courts have interpreted it to mean more than "simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will.*" Id.* (quoting Black's Law Dictionary 139 (6th ed.1990)). Here, Defendants intend to proceed on each of the three independent grounds to support their Hyde Amendment claim – any one of which would be sufficient.

The misconduct in the grand jury, which—as the Court summarized at the May 21, 2026, hearing—included "prosecutorial vouching to the grand jurors, with the AUSA putting her personal credibility and trustworthiness on the line in support of the charges"; "improper prosecutorial communications of a substantive nature with the grand jurors outside of the grand jury room"; the prosecutor "excusing grand jurors who disagreed with the government's case from the deliberations process"; and, the AUSAs redacting lines and omitting pages of this misconduct to obscure it from the Court (Tr., May 21, 2026, pp. 22-23)—all evidence, at a minimum, of the government's bad faith in proceeding with the case, and all of which warrant further factual development through discovery and a hearing.[9]

In addition to the shocking misconduct before the grand jury, the considered decision by the government *not* to disclose the misconduct to the parties or the Court,

---

[9] Defendants also seek leave to amend or supplement this motion once the facts surrounding the misconduct with the grand jury and/or misleading the Court become further developed.

18

as well as the active and intentional concealment and attempts to deceive the Court and the Defendants of what transpired before the Grand Jury, further demonstrate the bad faith nature of the prosecution. The actions of the prosecutors in the grand jury demonstrate the lack of a sound basis for the indictment in the first place—most certainly on the conspiracy charge—which appears to have inspired disregard for the blackletter rules of conduct before a grand jury. As the Ninth Circuit stated in *Braunstein* in discussing why "the Hyde Amendment's legislative history and out-of-circuit authority will be considered to provide helpful guidance in deciphering the meaning of 'frivolous'":

> United States Representative Henry Hyde, who wrote the original version of the Amendment, explained that successful claimants under the Hyde Amendment must show that the prosecutors "are not just wrong, they are willfully wrong, they are frivolously wrong. ***They keep information from you that the law says they must disclose. They hide information. They do not disclose exculpatory information to which you are entitled.***" 143 Cong. Rec. H7786-04, HH7791 (Sept. 24, 1997) (statement of Rep. Henry Hyde).

*Braunstein*, 281 F.3d at 994-95 (emphasis added). This is precisely the type of conduct at issue here.

Finally, in examining the decisions made by the U.S. Attorney's Office to redact the portions of these transcripts it provided to the Court—now with the benefit of having the full unredacted transcripts—it becomes even more clear how intentional their actions were. There were no mistakes or momentary lapses of judgment in the decision to make these redactions and hide patently relevant and material evidence from the Court. *United States v. Bowman*, 380 F.3d 387, 391 (8th Cir. 2004) ("the

19

Hyde Amendment targets prosecutorial misconduct rather than prosecutorial mistake"). Instead, these actions evince a premeditated coverup to prevent this misconduct from ever coming to light. The coverup was carried out over weeks and months of time, including in written briefs and in-person hearings before this Court. (See "Timeline" above). The responsible parties must be held accountable, and not merely by conveniently pointing to a single prosecutor when the circle of complicity in the misconduct is clearly larger.

As the Court soberly observed in the hearing held prior to the government's decision to dismiss the remaining charges in the superseding information on May 21, 2026, the government's misconduct here has broken the presumption of regularity and breached the Court's trust. Tr. 5/21/26, p. 23. Further, while the government dismissed Count One with prejudice, purportedly after the U.S. Attorney first became aware of the vouching in late April 2026—***and despite the fact that the second grand jury presentation on October 16, 2026, was shut down because of apparent misconduct that rose "in realtime" to the front office***—it is still unclear what exact steps, if any, the U.S. Attorney undertook to inquire whether there was any additional misconduct before the grand jury like that which the Court exposed on May 21, 2026. Moreover, the misconduct that was so serious as to justify the dismissal of Count One cannot be divorced from the proceedings on the misdemeanor § 111 counts that were also presented to the same grand jury. With the information that finally came to light on May 21, 2026, it now appears that the swapping of the superseding information for the same misdemeanor count in the

20

indictment appears to have been a deliberate and willful attempt to keep the grand jury transcripts—and the severe misconduct they reveal—from the Court, the defense, and the public.[10]

In addition to these compelling reasons that ultimately forced the government to dismiss all charges with prejudice, defense counsels' initial review of the unredacted grand jury transcripts has revealed other prosecutorial statements concerning the alleged "offense conduct" that were, at best, made in reckless disregard of the truth and video evidence (if not outright false) that would further support Defendants' claims as to the vexatious and frivolous nature of this prosecution. Suffice it to say for now, the government's own admissions and conduct, as well as the Court's observations, including the Court's comments regarding Defendants' entitlement to briefing and a potential hearing on the issue of vindictive prosecution, provide ample grounds for the filing of this Motion based on the bad faith, vexatious, and/or frivolous nature of the case.

---

[10] Setting aside the fact that there was another prosecutor in the room, it is inconceivable that the presentation of such high-profile charges would be done in such an atomized and isolated manner that *no one else* in the U.S. Attorney's office would be aware of what was happening here. To believe that the front office was in the dark is even more unbelievable in light of the "no bill" that was returned after the first presentation to the Grand Jury, as there would have presumably been concerns discussed that grand jurors in this District refused to return indictments stemming from Operation Midway Blitz. And Defendants have always suspected, based on public statements by Administration officials, that there was pressure, if not direction, from Washington D.C. to return an indictment in this case.

### C. Defendants Should be Afforded Time to Further Develop their Claims Based on the Recent Disclosures of Admitted Government Misconduct.

In light of the pending and anticipated issues regarding additional disclosures and discovery that could strengthen Defendant's arguments as to the impropriety of the government's prosecution, as well as potential sanctions proceedings that would run on a parallel track with this Hyde Amendment Motion, Defendants respectfully request that the Court hold this Motion in abeyance for the time being, and provide Defendants with time to amend this motion after further review of currently produced materials, litigating their right to access material that is subject to preservation but not yet produced to defendants, and our request to conduct targeted discovery which is forthcoming.[11] As noted above, cases interpreting the Hyde Amendment have held that defendants can obtain discovery and introduce additional evidence to support their claim, including at an evidentiary hearing, for good cause shown, and Defendants intend to pursue that avenue here. *See Terzakis*, No. 13 CR 339, 2016 U.S. Dist. LEXIS 110553, at \*31 (N.D. Ill. Aug. 19, 2016) (recognizing discovery is permitted in *Hyde* context). Importantly, *the scope of discovery to support a claim under the Hyde Amendment may be broader than the record before the Court. Gardner*, 23 F. Supp. 2d at 1296 (granting discovery to Hyde Amendment claimant and observing that the

---

[11] The Defendants understand that materials are being preserved pursuant to the government's agreement as articulated in Court on May 26, 2026; statutory document retention requirements; litigation hold instructions; and, as the Court noted, the provisions of 18 U.S.C. §1519, which prohibits the destruction of documents to impede or obstruct an investigation, subject to criminal penalty.

law "expressly contemplates an expansion of the record traditionally available to the Court for the purpose of assessing an applicant's claim.") (emphasis added).

The Ninth Circuit has held that the relation-back doctrine applies to permit "prevailing party" defendants to amend timely-filed motions for attorney's fees under the Hyde Amendment, so long as the initial motion is filed within the 30-day window. *United States v. Hristov*, 396 F.3d 1044, 1045 (9th Cir. 2005). Here, potential discovery issues are still live and developing matters before the Court. While Defendants believe the Hyde Amendment entitles them to discovery on the matters at issue, including access to documents and other evidence that is subject to the government's preservation obligations set forth before the Court on May 26, 2026, Defendants, who are evaluating their arguments in the wake of the May 21, 2026, dismissal with prejudice, will seperately file a motion seeking discovery to further bolster their legitimate, well-grounded claims under the Hyde Amendment as summarized briefly herein and is apparent in the record now before the Court.

Accordingly, rather than set a briefing schedule on this initial motion, counsel respectfully request that Defendants be permitted to engage in certain targeted discovery that will be outlined in a forthcoming motion, and then to file an amended or supplemented motion after further discovery on these issues.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully move for an award of their attorneys' fees and litigation expenses under the Hyde Amendment; ask the Court to hold this motion in abeyance pending the conduct of discovery on the issues related to Defendants' Hyde Amendment claims that will further inform this motion and the relief sought herein; and any other relief the Court deems just and proper under the circumstances presented.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*

24