## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | |
| MICHAEL RABBITT, | ) | Judge April M. Perry |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, and BRIAN STRAW | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR LEAVE TO CONDUCT DISCOVERY

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, and Brian Straw (collectively, "Defendants"), by and through their respective undersigned counsel, and pursuant to the Hyde Amendment, 18 U.S.C. § 3006A, and the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), hereby move the Court to grant them leave to conduct discovery, as set forth in detail below. The request for discovery is specifically contemplated and authorized by the Hyde Amendment, 18 U.S.C. § 3006A. Moreover, the requested discovery is essential to guarantee the Defendants a full and fair opportunity to demonstrate the bad faith, vexatious, and/or frivolous nature of this misguided prosecution. In support of this motion, Defendants state as follows:

1

## I.   GOVERNING LAW

As discussed in Defendants' Hyde Amendment Motion, the Court can order discovery for purposes of a Hyde motion when "good cause" is shown. Dkt. 201, p. 14. The language of the Hyde Amendment itself contemplates expansion of the court record in support of Hyde claims:

> To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal.

18 U.S.C. § 3006A (notes).

Multiple courts have exercised their authority to order discovery in a Hyde proceeding for good cause shown, *e.g.*, to allow the defendant to discover and develop evidence to support their claim. *See, e.g., United States v. Gardner*, 23 F.Supp.2d 1283 (N.D.Okla.1998); *United States v. Gugnani*, 178 F.Supp.2d 538 (D. Md. 2002); *United States v. Terzakis*, No. 13 CR 339, 2016 U.S. Dist. LEXIS 110553 (N.D. Ill. Aug. 19, 2016).

In *Gardner*, for example, the court ruled that discovery was appropriate in a Hyde claim proceeding so the defendant could develop the requisite record to meet his burden under Hyde to establish the prosecution involved government misconduct, as opposed to mere mistake. 23 F.Supp.2d 1283. In determining the defendant was entitled to discovery, the court set out a two-part analysis. First, it looked at whether "the objective record" justified further scrutiny. *Id.* at 1295. Second, if further scrutiny was warranted, the court addressed the scope of that inquiry and considered

the scope of discovery requested by the defendant. *Id.*

Based on these factors, the *Gardner* court granted the defendant's motion for discovery over the government's objection, noting the Hyde Amendment "expressly contemplates an expansion of the record traditionally available to the Court for the purpose of assessing the applicant's claim." *Id.* The court noted, "***the Hyde Amendment vests in the Court both the responsibility and the authority to develop the facts in a manner warranted by the circumstances of the case for the purpose of determining whether the conduct of the United States was 'vexatious, frivolous, or in bad faith.'***" *Id.* (emphasis added). *See also, Gugnani,* 178 F.Supp.2d at 546 (holding "the court has discretion to allow discovery" for purposes of a Hyde motion); *United States v. Terzakis,* No. 13 CR 339, 2016 U.S. Dist. LEXIS 110553, at *31 (N.D. Ill. Aug. 19, 2016) (recognizing the court has the authority to allow discovery in *Hyde* context, but finding the defendant there had not shown "good cause" to obtain it).

Here, the facts already known to the Court and set out in Defendants' Initial Hyde Motion easily satisfy the "good cause" standard and the two-part test set out in *Gardner.* First, there can be no doubt that the objective record requires "further scrutiny." The degree of misconduct in the grand jury, coupled with the seven-month cover-up that culminated with multiple federal prosecutors actively concealing misconduct from the Court begs for further scrutiny.

Second, the discovery detailed below is narrowly tailored to the specific issues in this case that bear directly on the bad faith, vexatious, and/or frivolous nature of

this misguided prosecution, including potential vindictiveness as noted by the Court in the May 21, 2026 hearing. This limited discovery is necessary so the Court can be provided with the relevant evidence necessary for the Court to make the requisite findings under the Hyde Amendment. The discovery will also help determine the scope and content of an evidentiary hearing, which Defendants anticipate will be necessary to further develop and present their Hyde claims.

## II.  GOVERNMENT STATEMENTS ON THE NEED FOR FURTHER DISCOVERY ON THESE MATTERS

Based on recent statements by the U.S. Attorney for the Northern District of Illinois, Defendants are optimistic the government is in agreement that further discovery is both necessary and appropriate in this case.  Thus, on June 1, 2026, U.S. Attorney Andrew Boutros issued a public statement about this case reading in part, **"As to the Broadview matter**, we have all learned time and again that quick judgment based on incomplete facts and distant viewing almost never leads to the right or accurate results. … *it is important to all those involved, especially the career prosecutors, that they be given an opportunity to explain their side of the story."* ("Responses by the U.S. Attorney's Office for the Northern District of Illinois to Certain Questions Regarding Various Subjects," dated June 1, 2026, available at: https://aboutblaw.com/blTO (last visited June 4, 2026) (emphasis added).

The Defendants wholeheartedly agree with that sentiment and welcome the opportunity to work with the government in an effort to get the relevant facts out in

the coming weeks.[1]

### III. DISCOVERY REQUESTED

With that, based on the issues raised in the Defendants' Hyde Motion, Defendants respectfully request that the Court direct the government to produce the following discovery to Defendants' counsel, which is relevant and material to Defendants' Hyde claim:

### a. Grand Jury Materials

1. Any documents, exhibits, statements or communications provided or made to the Grand Jury relating to this matter, along with the transcripts and audio recordings of those proceedings which (if any) have not previously been produced by the government.[2]

### b. Issues Raised Related to the "Broadview 6" Grand Jury

2. Identify the dates, participants, and substantive content of all meetings or communications[3] between any member of the Front Office,[4] any NDIL USAO supervisors, any Department of Justice (DOJ) attorney, official or employee,

---

[1] In a separate "Special Report" issued by U.S. Attorney Boutros on June 2, 2026, in describing why he appeared before and spoke to the "Broadview 6" Grand Jury – on the very same date of the government's ***third attempt*** to get that Grand Jury to approve the Broadview 6 indictment – he stated, ***"In such unchartered and unprecedented circumstances, extraordinary measures may be required to restore the rule of law."*** ("Special Report of the United States Attorney's Office for the Northern District of Illinois Regarding Grand Jury Appearances", available at: https://www.justice.gov/usao-ndil/media/1443716/dl?inline (emphasis added) (last visited June 3, 2026). This acknowledgement that there existed "unprecedented circumstances" that required "extraordinary measures" by the government in its dealings with the Grand Jury would also seem to call for further discovery relevant to Defendants' Hyde claim.

[2] This includes the Special June 2024 Grand Jury, and any other grand jury before which this case was presented.

[3] "Communication" includes, by way of example, emails, text messages, memos, notes, voice-mails, phone records, and calendar invites.

[4] The term "Front Office" refers to any member of the management team of the U.S. Attorney's Office for the Northern District of Illinois which included at times relevant to Defendants' motion the U.S. Attorney, the First Assistant, the Chief of the Criminal Division, and any special advisors to the U.S. Attorney.

AUSA Sheri Mecklenburg, and/or AUSA Matt Skiba between September 26, 2025 and October 23, 2025, regarding presenting this case to the grand jury and/or any issues, concerns, misconduct, or irregularities that occurred in relation to the several presentations of the Broadview 6 indictment to the grand jury.

3. Any documents, information or communications regarding issues, concerns, misconduct, irregularities, or factual or legal errors (including the issues identified by the Court on May 21, 2026) that occurred with the presentations of the Broadview 6 indictment to the grand jury.

### c.     The Decision to Indict the "Broadview Six"

4. All documents and communications (including the dates of any meetings) between any member of the Front Office, any NDIL USAO supervisors, any DHS or DOJ attorney, official or employee, and AUSA Sheri Mecklenburg and/or AUSA Matt Skiba regarding the Broadview 6 investigation between September 26, 2025 and October 23, 2025.

5. Any documents, communications, and records between any member of the Front Office or any AUSA in the U.S. Attorney's Office for the Northern District of Illinois and Associate Deputy Attorney General Aakash Singh[5] or Acting Attorney General Todd Blanche relating to the investigation, decision to charge, the proposed indictment, the grand jury proceedings, or the post-indictment proceedings in this case before the Court. From September 19, 2025 through May 31, 2026. (This request includes cell phone records from any cell phone used for such communication with Mr. Singh.)

---

[5] The request regarding Aakash Singh is well-supported based upon publicly available information regarding Mr. Singh's direct involvement in matters of this type, including presentations made to grand juries.

*First*, publicly available reporting indicates that Mr. Singh has played a central role in guiding the prosecution of "top administration targets such as Kilmar Abrego Garcia, James Comey, and Don Lemon" and, of particular note here, ***in seeking "to dismiss [grand] jurors who presented hurdles" when "grand juries refused to indict . . . following mass street arrests."*** Ben Penn, In-Your-Face DOJ Aide Rides Prosecutors for 'Chief Client' Trump, Bloomberg Law, Feb. 19, 2026, https://news.bloomberglaw.com/us-law-week/in-your-face-doj-aide-rides-prosecutors-for-chief-client-trump (emphasis added).

*Second*, ***Mr. Singh engaged in numerous substantive—and now Court-documented—communications directly with the prosecution team in the Abrego-Garcia case.*** Ex. A, Court Order in Case No. 25-cr-115, M.D. Tenn. (Dkt. #312) (identifying numerous specific communications to and from Mr. Singh and the assigned prosecutor related to that prosecution, as well as Mr. Singh's involvement, oversight, and direction to the prosecution team, at pp. 7, 8, 9, 10, 11, 12, 14, 18, 19, 20, 21, 24, 25, 26, 27, 28, 29, 31, and 32).

6. Any documents, communications, and records between any member of the Front Office and any DHS or DOJ attorney, official, or employee from Washington D.C. from September 26, 2025 and October 23, 2025, regarding the potential charges against the six defendants listed in the indictment and/or the grand jury proceedings relating to the indictment(s) presented to the grand jury.

7. Any documents, communications, or information regarding the selection of the six defendants listed in the indictment.

8. Any documents or information discussing the surmised political affiliations or opposition to the current administration of the six defendants listed in the indictment.

### d. Materials Related to USAO Cover-up

9. Identify the dates, participants, and substantive content of all meetings or communications between any member of the Front Office, any NDIL USAO supervisor, any DHS or DOJ attorney, official, or employee, and any AUSA that are related to matters which occurred before the Special June 2024 Grand Jury in this case between September 26, 2025, and May 31, 2026.

10. Any documents, information, or communication(s) related to the decision to redact the Grand Jury transcripts tendered to the Court on April 23, 2026 and/or to render moot the Defendants' request(s) for the grand jury transcripts.

11. Any documents, information, or communications related to (a) the Court's comments at the May 7, 2026, hearing that "there are probably less than 20 or 30 lines out of the three transcripts that were redacted, so . . ."; (b) the Court's comments at the May 18, 2026, hearing that "I want to say there were like 15 lines redacted. If I had to guess, it seems like those were probably related to IT issues playing the video, but I couldn't tell and that's why I asked for it."; and/or (c) the decision(s) not to correct the record regarding the Court's misunderstanding of the volume and/or nature of the redactions to the grand jury transcripts.

12. Identify the dates, participants, and substantive content of all meetings or communications between any member of the Front Office, any NDIL USAO supervisor, any DOJ attorney, official or employee, and any AUSA related to the Court's April 24, 2026 order (Dkt. 130) to produce unredacted grand jury transcripts to the Court.

13. Identify the dates, participants, and substantive content of all meetings or communications between any member of the Front Office, any NDIL USAO supervisor, any DOJ attorney, official or employee, and any AUSA related to

dismissing Count One of the Indictment against defendants.

### e. Front Office Communications with AUSAs Regarding Immigration-Related Cases and the Grand Jury

14. Any documents or information between the Front Office and AUSAs relating to the presentation of ICE / immigration-related cases to any grand jury, including any information regarding the removal (or potential removal) of grand jurors from the proceedings for the time period September 19, 2025 to October 30, 2025.

15. Any documents or information between the Front Office and AUSAs regarding presenting ICE / immigration-related cases to specific grand juries for the time period September 19, 2025 to October 30, 2025.

WHEREFORE, Defendants respectfully request the Court to enter an Order directing the above discovery to be produced within 21 days of the Court's Order.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*