**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | No. 25 CR 693 |
| | ) | |
| MICHAEL RABBITT, | ) | Judge April M. Perry |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, BRIAN STRAW, | ) | |
| and CATHERINE SHARP | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' MOTION FOR THE COURT TO CONDUCT A
HEARING ON THE PROSECUTORIAL MISCONDUCT IN THIS CASE,
AND FOR TARGETED DISCOVERY IN ADVANCE THEREOF**

Defendants Michael Rabbitt, Katherine Marie Abughazaleh, Andre Martin, Brian Straw, and Catherine Sharp ("Defendants"), by and through undersigned counsel, respectfully request that this Court order certain discovery be produced by the government, and then to hold an evidentiary hearing on the government misconduct in this case to discern the full factual record and inform any potential sanctions for that misconduct. In support of this Motion, Defendants state as follows:

**INTRODUCTION**

There is no doubt the Court can – and should – conduct an evidentiary hearing on sanctions for the prosecutorial misconduct in this case, both the misconduct that is already manifest, and additional misconduct which we anticipate is yet uncovered. It is axiomatic that courts have the authority (if not the obligation) to hold a hearing on misconduct that was perpetrated before it, including after the dismissal or

1

termination of the case – and, importantly, this includes in criminal cases. *Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787, 796-97 (1987) (federal courts have recognized that contempt authority exists independently from the merits of the underlying proceeding because such authority is necessary to vindicate judicial integrity and enforce compliance with lawful court orders – otherwise "what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery.'"); *id.* (prosecutorial misconduct undermines public confidence in the administration of justice and warrants judicial intervention under the courts' supervisory authority); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending"; unanimously holding courts retain authority to impose sanctions even after a voluntary dismissal of the case; civil context under Rule 11); *Ratliff v. Stewart*, 508 F.3d 225, 229-30 (5th Cir. 2007) (the collateral jurisdiction doctrine permits courts to sanction lawyers, even after a final judgment on the underlying merits. 'It is well established that a federal court may consider collateral issues after an action is no longer pending.'"); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073. 1079 (7th Cir. 1987) ("The obligation to answer for one's act accompanies the act; a lawyer cannot absolve himself of responsibility by dismissing his client's suit."); *Charbono v. Sumski*, No. 790 F.3d 80, 85-86 (1st Cir. 2015) ("the contempt power is merely one of many inherent powers that a court possesses; it is not the only type of inherent power that can be deployed"); *id.* ("courts may levy sanctions (including punitive sanctions) for such varied purposes as disciplining

2

attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings" all separate and apart from formal contempt proceedings).

As detailed in Defendants' contemporaneously-filed Motion to Designate a Special Counsel to Investigate Possible Criminal Contempt, it is also clear that a court can appoint a private attorney to prosecute a contempt action against prosecutors who have engaged in misconduct. *Young*, 481 U.S. at 796 (the Court has "the ability to appoint a private attorney to prosecute a contempt action") (emphasis added). Given the circumstances of this matter – including, as set forth below, that the allegations of misconduct and requested discovery go to the top of both the Chicago U.S. Attorney's Office and the highest levels of the Department of Justice ("DOJ") – the appointment of an independent counsel not employed by the DOJ is essential to a fair gathering and presentation of the facts necessary to allow the Court to vindicate its interests in either or both a criminal contempt and sanctions proceeding, and it makes sense to coordinate those separate proceedings through a special counsel, with subpoena power. The public trust cannot and will not be restored by anything less.

## ARGUMENT

In Defendants' Motion to Compel (Dkt. #'s 94 and 113), we requested any communications about this case between, *inter alia*, anyone from the Chicago U.S. Attorney's Office and any official with the Department of Justice or Homeland Security. At the April 7, 2026 hearing on that motion, the Court addressed those requests, giving particular deference to the government's word, at a time when the

3

presumption of regularity still controlled.  Thus, as to Defendants' request for any communications to or from anyone from the DOJ or White House, the Court stated at that time that "they[the prosecutors] have now said there is no such evidence …. Based upon that, I am finding that the defendant's Requests Number 1, 2, 3, 4, 6, 7, and 11 all of which are predicated on improper influence by those outside of the U.S. Attorney's Office, on those inside the U.S. Attorney's Office are moot."  (Tr. 4/7/2026 at 6).

Similarly, in response to Defendants' request that the government inform the Defendants and the Court what search(es) it conducted in order to be able to make that broad assertion, the Court again relied on the presumption of regularity it earnestly believed in at the time, stating,

> As for the request that the government report exactly how it went about its searches, I don't think it's appropriate to order that. The prosecutors know how to do their jobs. They know that their law licenses in this case are on the line if they do them inappropriately. I am not going to micromanage the specific way they go about the search...

*Id*. at 11.

To put it mildly, the landscape since that time has changed dramatically.  Now, unlike then, the Court knows, *inter alia*:

- There were multiple instances of severe prosecutorial misconduct before the Grand Jury, which the government knew about and did not disclose to the Court or the Defendants – indeed the government actively lied about the existence of that misconduct and sought to hide it from both the Court and the Defendants.

- The government made repeated misrepresentations both to Defense counsel and to the Court that there were no exceptional circumstances or anything unusual about the Grand Jury proceedings in this case. (*See, e.g.*, Dkt. 147, Govt's Resp. to Defs' Mot. to Compel, at 3-4; Dkt. #201, Defs' Hyde Amendment Pet., Timeline at May 6, 2026, and May 21, 2026).

- When ordered to produce the Grand Jury transcripts to the Court, the government redacted the portions of the transcripts showing that severe and repeated prosecutorial misconduct.

- The government at least twice affirmatively failed to correct the expressly stated and obvious misimpressions the Court had about what had been redacted in the Grand Jury transcripts it provided to the Court. (Dkt. #201, Defs' Hyde Amendment Pet., Timeline at Dec. 8, 2025, May 7, 2026 and May 21, 2026).

- Rather than come clean, the government further attempted to conceal the fact of the prosecutorial misconduct before the Grand Jury by dismissing the indictment and filing a Superseding Information which charged the Defendants with the identical misdemeanor charges that had been returned by the Grand Jury.

- Even *after* the stunning proceedings before the Court on May 21, 2026, when the serial prosecutorial misconduct was finally outed by the Court and the government was forced to dismiss the case, later that day the U.S. Attorney himself commended the very prosecutors involved in this case's misconduct as **"courageous"** and having **"fought for the rule of law."** (U.S. Atty Boutros Office-wide email of May 21, 2026) (emphasis added).

Based on all of this (and more), at the hearing on May 21, 2026, the Court lamented, "I do believe deeply in the presumption of regularity and that most government attorneys are doing the best they can to do the right thing. ***That trust has been broken.*** … Also, what I think rears its head again is this idea of vindictive prosecution. … ***We all took the government attorneys' word on a great many things. I, at the time, was operating on a presumption of regular grand jury***

*proceedings, which these clearly were not."* (5/21/2026 Tr. at 22-25 (emphasis added)).

In addition, as the Court is aware, the government's misconduct and lack of candor has now infected other cases in the building, most recently leading the government to dismiss with prejudice serious felony charges against two defendants in the Loretto Hospital case – dismissals that Judge Sharon Johnson Coleman noted seemed to be designed to avoid having to answer questions about the misconduct and lack of candor by the U.S. Attorney's Office. And it is clear that will not be the last case affected by the government's misconduct, and perhaps more importantly its continuing cover-up of that misconduct.

To be sure, the presumption of regularity no longer holds – at least not at this time, in this District. Full facts and transparency are demanded by the conduct at issue, conduct which irreparably harmed the Defendants' rights, lives and livelihoods, thoroughly undermined the grand jury function, and significantly damaged the public's trust in our criminal justice system.

Defendants have asked the Court to approve a first step toward that needed transparency and truth by filing a motion on June 4 seeking certain targeted discovery pursuant to their Hyde Amendment petition – discovery requests informed by defense counsel's intimate knowledge of the facts and circumstances at play here. (Dkt. #206, Defendants' Motion for Discovery pursuant to the Hyde Amendment). Of particular importance in Defendants' discovery requests, the record here *must* be supplemented with any communications about this case between any DOJ official

6

and anyone in the Chicago U.S. Attorney's Office. See, *e.g.*, Dkt. #206 at Request Nos. 2, 4, 5, 6, 9, 12, and 13. As set forth in Defendants' Motion for Leave to Conduct Discovery, for instance, we have particularized reasons to believe DOJ attorney Aakash Singh (and likely others) did, in fact, have communications with the Chicago U.S. Attorney's Office about this case.

*First*, publicly available reporting indicates that Mr. Singh has played a central role in guiding the prosecution of "top administration targets such as Kilmar Abrego Garcia, James Comey, and Don Lemon" and, of particular note here, ***in seeking "to dismiss [grand] jurors who presented hurdles" when "grand juries refused to indict . . . following mass street arrests."*** Ben Penn, In-Your-Face DOJ Aide Rides Prosecutors for 'Chief Client' Trump, Bloomberg Law, Feb. 19, 2026, https://news.bloomberglaw.com/us-law-week/in-your-face-doj-aide-rides-prosecutors-for-chief-client-trump (emphasis added).

*Second*, ***Mr. Singh engaged in numerous substantive—and now Court-documented — communications directly with the prosecution team in the Abrego-Garcia case.*** Ex. A, Court Order in Case No. 25-cr-115, M.D. Tenn. (Dkt. #312) (identifying numerous specific communications to and from Mr. Singh and the assigned prosecutor related to that prosecution, as well as Mr. Singh's involvement, oversight, and direction to the prosecution team, at pp. 7, 8, 9, 10, 11, 12, 14, 18, 19, 20, 21, 24, 25, 26, 27, 28, 29, 31, and 32).

Notably, the very next morning after Defendants filed their Motion for Discovery – a motion that specifically asked for communications with Mr. Singh and

7

others at the DOJ – the government sent an email to defense counsel stating that the government "do[es] not intend to contest whether you [Defendants] are entitled to fees," and asking Defendants to submit their attorney's fees and expenses for good faith discussion pursuant to Local Rule 54.3(d). While Defendants welcome and accept the government's commitment to pay their attorney's fees and costs (in a precise amount to be determined), a cynical observer might suggest the government's agreement to pay Defendants' legal fees was made largely to avoid having to produce the requested discovery (which appears to have struck a nerve) and a full accounting of its conduct. Still, for reasons set forth in Defendants' contemporaneously filed motion regarding their entitlement to discovery pursuant to the pending the Hyde Amendment motion, Defendants and the government both have a vested and common interest in the requested discovery for its relevance to the impending good faith negotiations about the legal fees to which the government has acknowledged Defendants are entitled.

Separate from that entitlement to discovery as part of the ongoing Hyde Amendment proceedings, any suggestion that offering to settle cuts off discovery should be rejected under the particular circumstances of this case. The Court must not close the door on discovery of additional information that is essential to vindicating the Court's interests and obtaining objective, factual truth in this now scandalous case. *Young*, 481 U.S. at 796-97 (federal courts have recognized that contempt authority exists independently from the merits of the underlying proceeding because such authority is necessary to vindicate judicial integrity and

enforce compliance with lawful court orders – otherwise "what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery.'").

So, whether it is in the context of Defendants' still-pending Hyde petition, or the Court's sanctions proceeding, or a criminal contempt investigation as to which an independent counsel can – and we submit should – be appointed (*id.* at 796 (the Court has "the ability to appoint a private attorney to prosecute a contempt action"), ***the discovery relating to the DOJ's involvement in this case must be pursued and produced***.

We ask that the Court direct the government *immediately* to conduct a search for any emails, text messages, phone calls, memos, notes, or other records of communications between anyone in the Chicago U.S. Attorney's Office and anyone – including Mr. Singh – from DOJ or DHS related to this case. That is, to conduct a search for the records and information requested in Defendants' Discovery Request Nos. 2, 4, 5, 6, 9, 12, and 13 in Docket No. 206 – *including for any evidence of deletion of the called-for materials.*

This is a modest and well-founded request given the facts – and one which imposes minimal burden on the government to conduct. Given the government's documented track record in this case to date, the mere denial that such communications exist – without disclosing whether it conducted even the most basic electronic search for such communications – can no longer hold sway. The government should be ordered to conduct that search and provide the Court with

documentation of how the search was conducted. A naked denial no longer can suffice when such an important issue is at stake.

Once the discovery is produced, we ask that the Court hold an evidentiary hearing (including witness testimony) on the government misconduct in this case and potential sanctions to imposed as a result. Nothing less is required under the unique and deeply troubling circumstances now before this Court.

## CONCLUSION

Accordingly, Defendants respectfully request that the Court grant Defendants' motion; order the discovery specified in Defendant's discovery motion (Dkt. 206) and above be produced promptly; appoint a special counsel to investigate the misconduct involved in this case; hold an evidentiary hearing on the government misconduct and potential sanctions; and grant such other relief as this Court deems appropriate and just.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2900
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson, Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*

**/s/ Cynthia Giacchetti**
Law Office of Cynthia Giacchetti
53 W. Jackson Blvd., Suite 1035
Chicago, Illinois 60604
cg@cgdefense.com
312-939-6440
*Attorney for Catherine Sharp*

11