# EXHIBIT B

<u>Redactions</u> in light gray were added to Exhibit B on June 16, <u>2026</u> by agreement of the parties.

Redactions in black on Exhibit B were a part of the filing made on April 23, 2026.

Case 1:25-cr-20693-DSL Document 129-2 *SEALED* Entered on FLSD Docket 04/23/2026 Page 1 of 29 PageID #:622

CaseCase-cr-25-60-300693-Document-129-22SEALEDOC Filed 06/17/24/23/2626 Page 292 of 29 Page #:22D7#:623

Page 1

RE:  GRAND JURY          ) GRAND JURY

INVESTIGATION            ) NO. 25 GJ 994

BEFORE THE FEDERAL GRAND JURY

(SPECIAL JUNE, 2024 - GRAND JURY)

COLLOQUY

OCTOBER 16, 2025 - THURSDAY

PRESENT:

THE HONORABLE ANDREW J. BOUTROS,

Acting United States Attorney

219 South Dearborn Street

Chicago, Illinois 60604

BY SHERI H. MECKLENBURG and

MATTHEW SKIBA

Assistant United States Attorneys.

CaseCase1:25-cr-25669-30693Document129-22SEALEDFiled05/17/24/23026Page3Page29ofDPage2D8#:624

Page 2

(The Grand Jury, having

reconvened on October 16,

2025, pursuant to adjournment,

met in closed session and

the following proceedings

were had herein.  This transcription

does not contain the testimony given at

this proceeding.)

(Background discussion and laughing.)

MS. MECKLENBURG:  So again, Sheri

Mecklenburg and Matthew Skiba.  We're here again on

25 GJ 994.  ████ ███ ███ ███ ██ ██ ███ ███

██ ███ ██

██ ██ ███ ████ ██ ██ ██ ██

██ ████ ██ ████ ██ ██ ███ ██ ██████ █████

██ █ ██ ██ ██ ██ █ ██ ██ ████ ██ ██ ██

██ ███ ██ █ ███ ███ ██ ██ ███ █

██ ███ ██ ████ ██ ███ ██ █ ███ ██ ██

██ ███ ██ ██ ████ ██ ██ █ ███ ███ ██

██ ███ ██ ██ ██ ███ ██ ██                    09:21:52

██ ██ ██ ███ ███ ██ ███ ███

██ ███ ███ ██ ██ ██ ██ ██ ██ ██ ███ ██

██ ███ ██ ██ ██ ██ ██ ████ ███

██ ███ ██ ██ ██ ██ ███ ██ ██ ██ ███

CaseCase-1:25-cr-00693-Document#119-2SEALEDoFiled:10/24/23264Page29Page29PageID#:625

Page 4

09:23:27

Okay.  So we're going to start -- and remember -- well, I'll do that at the end.  Okay. So let's start with Professor Skiba and our class.

MR. SKIBA:  Good afternoon, everyone. I'm going to try to make this as not boring as possible.  Will be like going back to school again.

So as Sheri alluded to, you know, the question here is whether there is going to be probable cause, so the facts that we presented to you and will present to you match up to what the elements are and what the law is.

So we're going to go through the two statutes that we are presenting to you in this indictment, and we're going to kind of walk through

09:23:45

09:24:00

CaseCase-1r25-cr60530069s3uDecutmen19-22SEALEDt F6/d17/24/23d265Page29Rafe29IPtg22ID0#:626

some of the language to kind of break it down piece by piece to tell you what's relevant for probable cause determination and what's not relevant.

So we're going to start with 372, and I want to make sure this is -- okay. Auto focus. 09:24:33 This is -- can everybody see this okay?

GRAND JUROR: Yes.

MR. SKIBA: Okay. So this is 372, which the title of the statute is Conspiracy to Impede or Injure an Officer. 09:24:57

And so you have the statutory language here. I won't read it to you verbatim unless you want me to, but I've outlined some of the key language that we're going to be talking about.

And so for purposes of this indictment, 09:25:10 here are the elements at the bottom:

So you need two or more people to conspire. And then one of the following. And this is what I outlined above. So one is to prevent by force, intimidation, or threat, the discharging of the 09:25:27 duties, to injure an officer of the United States or its property on account of his lawful discharge of the duties of his office or while engaged in the lawful discharge of his duties.

CaseCase-1:25-cr-2560930d.693umeDocumeh29-2229SEAFEd: F6/17/24/23/266Paf296Pa49Pafe1D1#:627

Page 6

I'm going to stop a minute on this one.  So that there was some question about last time, is it relevant that he's on his way to work.

We're going to tell you later on that he was engaged in his official duties while he was on his way to work, but regardless, for this statute, there is "or" here, he's either on account of or because of the discharge of his duties, or while engaged in those duties.  And then finally, the other alternative --

MS. MECKLENBURG:  Let me stop you.

MR. SKIBA:  Yeah.

MS. MECKLENBURG:  So that means that it doesn't have to be while he's actually doing his duties.  It also means that they are taking their action -- the conspirators are taking their actions because of his lawful discharge of his duties. Because of who he is or what he does.

MR. SKIBA:  Yeah.

MS. MECKLENBURG:  So I just wanted to --

MR. SKIBA:  Absolutely right.

And then finally, and again the only -- for this second requirement, the one of the following, you only need to find one of these three are met.

CaseCase-1:25-cr-25069-30693-Document 129-22-SEALED* Filed 06/17/24/23/2367-Page 7-af297-Page ID #:628

Page 7

But the last one is to injure the property of an officer of the United States so as to molest, interrupt, hinder, or impede him.

Does anybody have any questions just about the elements before I drill down into some of the specific language? 09:27:05

GRAND JUROR: What's the count?

MR. SKIBA: This is Count 1 of the indictment.

GRAND JUROR: I wasn't here last week. 09:27:18 What is the count?

MS. MECKLENBURG: Okay. So you know that the indictment consists of a single count of 372, Count 1 for all six people charged. And then we have six counts of 111. Each person is charged in a 09:27:34 separate count for 111.

GRAND JUROR: Okay. Both --

MS. MECKLENBURG: 372 and 111. Does that answer your question?

GRAND JUROR: Six people, one count? 09:27:48

MS. MECKLENBURG: No. Six people. One count. First count is for all six.

GRAND JUROR: Got you.

MS. MECKLENBURG: 372, the conspiracy, and

Case 1:25-cr-30069-DJC Document 129-22 SEALED Filed 06/17/24 Page 8 of 29 PageID #:629

Page 8

then a single count for each of them on 111.

So each person is charged in two counts. The first, and then their -- whatever their 111 is.

GRAND JUROR:  Okay.

Case 1:25-cr-00693-SEH Document 29-22 SEALED Filed 06/17/24/23/26 Page 299 Page 29 Page 21 Page ID #:630

MS. MECKLENBURG:  Yes.  Okay.  I'm sorry.

I'll ask Matt to continue.                09:31:26

And thank you to those of you who are staying with an open mind.

MR. SKIBA:  So we're going to -- we're going to just break down some of the more specific

CaseCase-cr-2569630693:Documfile129:22SEALE5D: Filed/24/23/261Page290Page9DP#g21D5#:631

Page 12

language in each of these statutes.  So, we're going to start with the felony count, and that's 372 again.

So I went through the elements.  I'm going to break it down a little bit more specifically.  So 09:31:52 this is what one court said about what Section 372 means.

This court said:  327 is straightforward. It prohibits individuals from conspiring to keep government employees from doing their jobs.  09:32:07

And I think what you -- what we were going to -- what the evidence will show and what you will hear from Agent A is that there was a group of individuals.  They conspired to keep him from doing his jobs.  His job.  Excuse me.  09:32:22

And so the question, one of the questions last week is:  What is a conspiracy?  And so a conspiracy is an express or implied agreement between two or more persons to commit a crime.

So breaking that down further.  An  09:32:42 implied agreement.  So you don't need to have people come together and say, I am -- let's form a conspiracy to commit this crime.  It could be implied by their conduct.

Case 1:25-cr-20069-DSL Document 129-2 SEALED Filed 06/17/24/23/26 Page 11 Page 29 Page ID #: 632

Page 13

And is what this court -- this is a Third Circuit case. Conspiracy can also be spontaneous, so it doesn't need to be that folks meet ahead of time and that they come to an express agreement. And it could be spontaneous. Plus their overt actions could be enough to establish a conspiracy.  09:33:14

And then once a conspiracy is formed, each person in that conspiracy is accountable for the foreseeable actions of his co-conspirators, his or her co-conspirators.  09:33:33

Yes, ma'am.

GRAND JUROR: So, the act of mirroring someone else doing, impeding without talking and expressly agreeing, we're going to do this together, at the moment, you're saying that constitutes  09:33:48 conspiracy?

So I see them pushing, I'm going to push too. That's a conspiracy you're saying?

MR. SKIBA: Yes.

GRAND JUROR: Under the law?  09:34:00

MR. SKIBA: And that's -- yes. And that's based on a couple of things. One, it's an overt action. They -- it's not they are just thinking in their head, I want to be part of this. They took

Case 1:25-cr-00693-... Document 1-2 *SEALED* Filed 06/17/25 Page 12 of 29 PageID#:633

Page 14

some actions.

They were -- you know, there was a concerted effort to block this, Agent A, from doing his job.

Any other questions about what I have up here?  I'm going to go now into the force, intimidation, and threat language as well as part of the statute.

Okay.  So next I'm going to put up here the next question:  What is force, intimidation, or threat?

So this, this case that I have referenced here out of the Western District of Texas is for a comparable statute.  This is a criminal statute that we are charging here, but there is a civil statute that is more or less the identical language that also has this force, intimidation, or threat language.

Now, this was a case -- and you can see it here -- surrounding a bus with about a hundred cars in the interstate and attempting to control its movements by physically blocking with their vehicles and driving dangerously, could reasonably constitute force.

CaseCase-1:25-cr-2569-30693uDocument#29-22SEALED: Filed: 06/17/24/23/2615age29Rdf29P#g22D8#:634

Page 15

Now, we are not saying that you need to find that it rose to this level of seriousness, but the point is, in this case out of the Western District of Texas, what the court says, the vehicles surrounded another vehicle and physically blocked it 09:35:43 and stopped it from going forward.

That, in that case, constituted force, intimidation, or threat.

What this case also says is, and this a direct quote above: The most commonly understood 09:35:58 dictionary definition of intimidate is to place a person in fear.

Now, as you're going to hear from Agent A in a little bit, you're going to find out that he was in fear for his own life and safety 09:36:12 because of the actions of the co-conspirators.

Does anybody have any questions about this portion of the statute? Okay.

And this is just a preview of what's to come and a recap from last week. 09:36:31

So here is what we expect Agent A to further testify to, and here is what we think the facts show:

That there was a conspiracy implied by the

CaseCase5-cr25069300633uDocument#129-22SEALEDt Filed Filed/04/23/261Page294Paf029Pdg2109#:635

Page 16

conduct of the co-conspirators. They surrounded the car. They banged on his car windows. Some of them were scratching the car. There was chants related to his, Agent A's duties as an ICE Officer.

And as -- as the evidence shows as well, 09:37:07 each of these individuals named in the indictment performed actions that constitute force, intimidation, or threat. And I understand some of this is going to be new for some folks, but this is going to be reviewed for others. We're going to 09:37:28 show the --

GRAND JUROR: I have a question. I'm sorry. Will you go over the names real quick?

MS. MECKLENBURG: Yeah. These are the six people in the indictment. And, Matt, you can go 09:37:39 over that with them. And then what we are going to do right after this is show the video again for those who haven't seen it and to remind those who have, and we'll point out each of the people and what they were doing. 09:37:51

Go ahead, Matt.

MR. SKIBA: Okay. So does anybody, any folks who are new, do they -- do we know the names Michael Rabbitt, Kat Abagazala (phonetic spelling),

Case 1:25-cr-00693-SEAL ED Document 129-2 SEALED Filed 06/17/24/23/26 Page 15 Page 29 ID #:636

Page 17

Kat Sharp, Brian Straw, Andre Martin, or Joslyn Walsh?

Does anybody know these individuals?

Okay. Seeing none.

So as I was referencing before, the evidence of -- that we discussed last week, the video, the testimony that from last week and today is going to show that each of these individuals conspired, formed a conspiracy and used force, intimidation, or threats that directly hindered and impeded Agent A from doing his job.

So as the video shows, Michael Rabbitt hung on to the passenger side door -- excuse me -- the passenger side of the car. He pushed and banged on the side of the car.

Kat Abagazala placed herself in the front of the vehicle. She pushed on the front of the vehicle with her hands and body to prevent the car from continuing. And Kat Sharp did the same.

And Brian Straw similarly moved through the crowd to the front of the vehicle and, like Kat Abagazala and Kat Sharp, he pushed up against it with his hands and leveraged his body to prevent it from continuing.

Case 1:25-cr-00693-Document 129-2 SEALED Filed 06/17/24/23/26 Page 296 of 29 Page 221#:637

Page 18

MS. MECKLENBURG: Just to remind you, he was the big guy with the orange hat. And when you see the video, I want you to notice he is not at the front of the vehicle at the beginning. He pushes his way through the crowd to get there so 09:39:34 that he can continue with the rest of the people to impede him.

Go ahead.

MR. SKIBA: Okay. Yeah. And similarly with Andre Martin, like Kat Abagazala and Kat Sharp, 09:39:48 he placed himself in the front of the vehicle. He placed on -- he pushed on the front of the vehicle with his hands and body to prevent the vehicle from continuing.

And finally, Jocelyn Walsh. She was the 09:40:00 individual with the guitar. She wrapped her arm around the driver's side mirror and again prevented the vehicle from continuing.

And it's important to note, and as we expect you to hear from Agent A, it's not that 09:40:19 these -- like these individuals had no choice but to be in the front of vehicle as his car was going.

Now, each one of them had the opportunity to move out of the way and to let

CaseCase:1:25-cr-20693-00693uDocument#129-22SEALEDt Filed: 06/17/24/23/261Page297Pafge29DP#ge2122#:638

Page 19

Agent A move forward; but no, this was like a concerted effort by these individuals to prevent Agent A from doing his job which, again, we're talking about what this statute is about.

Here is, again, what the court said. It's 09:41:00 a straightforward statute. It prohibits individuals from conspiring to keep employees from doing their jobs.

Does anybody have any questions? And we'll talk about the statute more, but does 09:41:15 anybody have any initial questions about this statute so far?

GRAND JUROR: That's very helpful. Yeah.

MR. SKIBA: Okay. Seeing no questions about that, I'm going to next turn to the 09:41:30 misdemeanor count, which is 18 United States Code at 111. And this statute is called Assaulting, Resisting or Impeding Certain Officers or Employees.

And again, I won't read this statute verbatim. We have it here. But here is the 09:41:49 elements for this charge:

Well, the first element is that it needs to be forcible, and the actions, assault, resist, opposes, impedes, intimidates or interferes.

CaseCase-1:25-cr-250693-0693 Document 129-2 SEALED Filed 06/17/24/23/26 Page 298 Page 29 Page ID #:639

Page 20

There needs to be a federal officer, and the actions that were -- the forcible assault, resist, oppose, etcetera, those actions were while the officer was engaged in or was on account of the performance of his official duties.                09:42:25

So, one question from last week is, well, this individual was on the way to, on the way to work.  Does that matter?

And the answer is no.  The first reason that it doesn't matter is the statute                09:42:43 required that he be engaged in his official duties, or the incident must be on account of his official duties or because of his official duties.

And as the evidence shows, at a minimum, these conspirators targeted Agent A                09:43:02 on account of or because of his official duties related to ICE.

But regardless, as the law shows or the case law shows, if an individual is commuting to work in a government issued automobile, and that                09:43:22 automobile is for work-related purposes only, and that individual is duty bound to ensure that nothing bad happens to that automobile, that can qualify as being engaged in his official duties.

Case 1:25-cr-20693-DSL Document 129-2 SEALED Filed 06/17/26 Page 19 of 29 Page ID #:640

Page 21

And as you're going to hear in a little bit from Agent A, this is precisely what was the case here.

This was a government issued SUV. He was not allowed to use it for personal use. And it was his duty to ensure that nothing bad happened to his car.

MS. MECKLENBURG: And that, is it fair to say that was the definition that would include that he was engaged in duties --

MR. SKIBA: Correct.

MS. MECKLENBURG: -- and on account of duties if they were attacking him because he was a ICE agent, that would be because of his duties.

MR. SKIBA: That's right.

MS. MECKLENBURG: So there is two different ways that you can go.

MR. SKIBA: The next question, I believe this was also a question raised last week:

Did Agent A need to be assaulted? And the answer to that is also no.

Section 111 applies to those who act forcibly and resist, oppose, impede, and intimidate an officer, again while engaged in or on account of

CaseCase-1:25-cr-25069-30693-Document#129-22-SEALED: Filed: 06/17/24/23/26 Page220 of 29 Page#22125#:641

Page 22

his official duties.

And then finally, on this particular statute, what does forcible mean?

Well, here is what the Seventh Circuit -- we are in the Seventh Circuit. Here is what the pattern jury instructions define "forcibly" to mean.

And this is a quote: Forcibly means by use of force. Physical force is sufficient, but actual physical contact is not required.

A person also acts forcibly if he threatens, attempts to inflict bodily harm upon another with a present ability to inflict bodily harm, but also here, direct contact is not required so long as the conduct places the officer in fear for his life or safety.

And again, as you're going to hear in a little bit, Agent A, we expect him to testify that he was in fear for his life and safety.

If nobody has any questions about Section 111, we just identified a few handful of additional questions that came up last week, and we are -- we had some answers for you here.

So the first is: What is the -- what should Agent A have done? Shouldn't he have stopped

Case Case 1:25-cr-25069-300693 Document 129-2 SEALED Filed 06/17/24 Page 21 of 29 PageID #:642

Page 23

his car?

And the answer to that is -- there is a couple of different questions to that of no.

So neither statute we are presenting today, that's Section 372 or 111, requires that he had stopped his vehicle, so that's irrelevant.                      09:46:25

It's not a personal injury case where the question is who is at fault.  The question is are -- is there probable cause to believe that the elements of 111 and 372 are met.                      09:46:42

But here is the more fundamental point. Even if he had stopped his, his car, if he had stopped it completely before reaching the gate, there was still hindering, impeding him from getting to the gate and further doing his job.                      09:47:00

And he did not have a duty to retreat.  And as you're going to hear, again, you're going to hear from Agent A that what he was concerned about, he had a concern that if he had stopped his car, he would have been a sitting duck.  If he had feared                      09:47:18 that these individuals that were surrounding his car and stopping him from moving forward were going to pull him -- were going to break his window and were going to pull him out of the car.

CaseCase1:25-cr-25069300693.Document#129-22SEAFED: Filed:06/17/04/23/2622age222Rdf29IP#ge2D7#:643

Page 24

The next question is:  What about some of the other witnesses?

There was a truck driver in the area. There was police.

We believe that the video and the testimony 09:47:41 is plain as day.  We only need to establish probable cause, which does not require us and the Grand Jury to present every conceivable witness to this event.

Next question:  What about the other individuals who were surrounding the car?          09:48:01

At this stage it's irrelevant.  We have named six individuals responsible in the indictment and that's all -- the only question is, is there probable cause to believe that they committed these offenses.                                                       09:48:19

And the final question that came up is, well, this is a -- the 111 charge is a misdemeanor. Can the government charge the misdemeanor to another Grand Jury?

Well, the important point is we are in          09:48:37 this case charging both a felony and a misdemeanor, and because we are seeking a felony, cannot -- it's called bifurcate.  We can't pick and choose what we are presenting to the Grand Jury today.

CaseCase5-1:25-cr-306930063.Document#129-2:22SEALEFEd: F6/17/24/23/26723ge223of29DPa#2128:644

Page 25

And so we're going to ask you to return a true bill on each count including Section 111, misdemeanors.

Again, the question on that is probable cause, that the facts that we presented and will present marry up to the law that we presented.  09:49:02

MS. MECKLENBURG:  Show them the video now.

MR. SKIBA:  Certainly.

Case 1:25-cr-00693 Document 1-2 SEALED Filed 10/24/25 Page 24 of 29 PageID #:645

Page 26



MR. SKIBA:  Sheri, a question.

GRAND JUROR:  I noticed -- it is the

CaseCase1:25-cr-20696-306913.Document#129-22SEALED-FILED.Filed.06/17/24/23/2625Page225Pof29IPage130#:646

Page 27

individuals -- (inaudible) if we decide what five of the six you're like a hundred percent, but not the sixth, can we --

MS. MECKLENBURG:  If that's what you decide, yes, you can.                          09:51:24

GRAND JUROR:  Okay.  So it's not all of them together?

GRAND JUROR:  We can do each count individually.

MS. MECKLENBURG:  We can do each count    09:51:27 individually.

(Inaudible.)

You were not here last week.  Okay.

MR. SKIBA:  Sheri, of course I'm having technical difficulties.                          09:51:40

Case 1:25-cr-20069-DMM Document 129-2 SEALED Filed 06/17/24 Page 26 of 29 Page ID #:647

Page 28

GRAND JURY FOREPERSON:  You know, I would say one thing.  When the USA (inaudible) -- was here  09:52:50 last week, the one thing he said that made so much sense -- can I say it?

MS. MECKLENBURG:  Yes.

GRAND JURY FOREPERSON:  This is the accusatory phase, not the guilt-finding phase.  09:52:58

MS. MECKLENBURG:  Right.

GRAND JURY FOREPERSON:  So those are very different things, and our burden of proof is much lower than if we have a trial we have to prove that these people did something.

GRAND JUROR:  To be fair, we only hear one half of the story.  We don't hear the other half.

MS. MECKLENBURG:  That's true.  We can't -- say like when you only hear one half, of course whatever you say is going to sound good because  09:53:19 we're only hearing from you.  But -- I mean, absolutely.  Yes.  But I think that's a great point, and I'm glad that you told me, and I'll remember to say --

CaseCase-1:25-cr-00693-SDocument#129-22SEALED: Filed: 06/17/24/23/2627age297age29IPage#:648

Page 29

GRAND JURY FOREPERSON:  Yes.

MS. MECKLENBURG:  Okay.

MR. SKIBA:  All right.  So this is the first video.

CaseCase5-1r-2506d-300693.Document1e129-22SEAEED:Filed:06/17/24/23/26278age228Page29IPag213#:649

Page 37

MS. MECKLENBURG: We're going to go through it with Agent A, and then if you need it again, we will. We'll pull up the pictures. That's what I'll need for that. (Inaudible). Okay.

(Inaudible.)

I'll tell you ▢▢▢▢ ▢▢▢▢. ▢▢▢▢ is the first name. ▢▢▢▢ is ▢▢▢▢.

GRAND JUROR: Okay.

MS. MECKLENBURG: That's his name.

GRAND JUROR: Okay.                    10:04:25

(Whereupon the witness came in the jury room, and the testimony is not included in this transcript.)

(End of excerpt of 25 GJ 994 ▢▢▢▢ ▢▢▢▢.)

CaseCase-1c:r25-065003u6me3nDocumen1t29:-222SEALEtD:r F6i/1e4/d2:4/230/62P5age229Pag29Pag29D1P#ag:2134#:650

Page 38

C E R T I F I C A T E

JEANINE WATKINS, being first duly sworn, on oath says that she is a Certified Shorthand Reporter doing business in the City of Elgin, County of Kane, and the State of Illinois;

That she reported in shorthand the foregoing audio recording of the proceedings of the Federal Grand Jury in the Grand Jury Room in the United States Courthouse in Chicago, Illinois;

That all speakers have been identified within the transcription based on the content of the said audio recording;

And that the foregoing is a true and correct transcript of her shorthand notes so taken as aforesaid and contains the full content of the said audio recording which was audible and discernible.

*Jeanine Watkins*
JEANINE WATKINS, C.S.R.

C.S.R. License No. 084-001629