IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>*v.*<br><br>MICHAEL RABBITT, KATHERINE MARIE ABUGHAZALEH, ANDRE MARTIN, BRIAN STRAW, and CATHERINE SHARP,<br><br>*Defendants,*<br><br>*and*<br><br>SHERI H. MECKLENBURG,<br><br>*Intervenor-Movant* | No. 25 CR 693<br><br>Judge April M. Perry |

**MOTION OF SHERI H. MECKLENBURG**
**FOR LEAVE TO INTERVENE**

Intervenor-Movant Sheri H. Mecklenburg, individually and by her counsel, Sergio E. Acosta and Joel D. Bertocchi of Akerman LLP, hereby moves for leave to intervene in this case, and specifically in proceedings the Court is conducting with respect to the following motions brought by Former Defendants: ECF Doc. # 226, in which they seek an evidentiary hearing on sanctions claims and discovery in advance of such a hearing; and ECF Doc. # 227, in which they ask the Court to appoint a "special counsel" to investigate and prosecute "responsible persons" for criminal contempt. The United States

has responded to these motions (ECF Doc. # 247), and Former Defendants have now filed their reply (ECF Doc. # 255).

Those motions place Ms. Mecklenburg's professional conduct and integrity squarely before the Court. Ms. Mecklenburg recognizes that there are issues arising out of her grand jury presentations, and she does not seek through this motion to minimize those issues. But Former Defendants go much further. Their filings attribute to her conduct that occurred months after she withdrew from the case; describe her juror colloquy without addressing written Department of Justice guidelines that directly bear on it; and now falsely accuse her of "outright lying" based on video evidence that does not arguably support the accusation, and that she herself obtained and produced to the defense.

The chronology alone demonstrates why she should be heard. As set forth in more detail below, by February 13th of this year Ms. Mecklenburg had formally withdrawn from the instant case when she left Chicago for a detail in Washington. From that point forward, she was no longer assigned to this matter, received no electronic notifications, and was neither notified nor otherwise involved in the later redaction of any grand jury transcripts or hearings the Court held after her departure. In fact, Ms. Mecklenburg only learned of the Court's May 21, 2026 hearing and the events that transpired that evening, when she received a call from a reporter.

Based on Former Defendants' filings, and on other events discussed herein, it is clear both that Ms. Mecklenburg has direct and distinct personal interests in the outcome of these motions, and of any ensuing proceedings the Court authorizes or conducts, and that no other party to this case, including the United States, can fully represent those interests. And while the response of the United States addresses some of the factual and legal issues that implicate those interests, it is especially clear, in light of false assertions made about her in Former Defendants' reply, that there are still factual and legal points Ms. Mecklenburg needs to address in her individual capacity.

In support of this request, undersigned counsel state as follows:

**Intervention in a Criminal Case.** While intervention in a civil case is expressly allowed (and governed) by Fed.R.Civ.P 24, the criminal rules have no corresponding provision. Nonetheless, the Seventh Circuit has recognized the authority of judges to allow a non-party to intervene in a criminal case when that non-party has its own interests in the outcome of the case (or in proceedings being conducted in it) and when asserting those interests requires party status. *See United States v. Blagojevich*, 612 F.3d 558, 559-60 (7th Cir. 2010) ("The Federal Rules of Criminal Procedure lack a counterpart to Fed.R.Civ.P. 24, which allows intervention. But courts have permitted intervention when the potential intervenor has a legitimate interest in the outcome and cannot protect that interest without becoming a party."). As the

Court has explained, the absence of a criminal rule allowing intervention does not "exhaust the procedural authority of federal judges," who have "inherent powers" to allow a number of types of actions not specifically provided for in the criminal rules, including intervention. *United States v. Laraneta*, 700 F.3d 983, 985 (7th Cir. 2012) (allowing non-party intervention in criminal appeal despite absence of intervention provision in either criminal or appellate rules).

In evaluating a request to intervene in a criminal case, the Court can consider the factors that govern intervention in a civil case under Fed.R.Civ.P. 24. *United States v. Schoenfeld*, 2021 WL 4481102, at *1 (E.D. Cal. September 30, 2021). Intervention is generally "the proper mechanism for nonparties to protect interests that may be adversely affected by a trial court's judgment." *Collectanea J. Limited v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2025 WL 891930, at *2 (N.D. Ill. March 31, 2026). Rule 24 allows for intervention as of right when a non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2). And even absent a right to intervene, a court may grant permissive intervention to "anyone who… has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B).

The Seventh Circuit has divided the test for allowing intervention as of right under Rule 24(a) into four elements: (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019); *see also Bost v. Ill. State Bd. Of Elections*, 75 F.4th 682, 686 (7th Cir. 2023).

Permissive intervention under Rule 24(b) is the subject of broad discretion. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). A court may permit it so long as the intervenor has a claim or defense that shares a common question of law or fact with the main action, *Planned Parenthood*, 942 F.3d at 803, and intervention would not cause any "undue delay [or] prejudice to the rights of the original parties," *Bost*, 75 F.4th at 690.[1]

**Intervention by Ms. Mecklenburg.** In this case, as to the two motions identified above (which raise the only issues on which she seeks to intervene), Ms. Mecklenburg will, if either or both are granted, qualify for both intervention as of right and permissive intervention. As to the former, Ms.

[1] An additional requirement may be that "independent jurisdiction" exists for the court to entertain an intervenor's planned claims. *PMC Casualty Corp. v. Virgina Surety Co., Inc.*, 2025 WL 1713555, at *10 (N.D. Ill. June 19, 2025). That requirement is not an issue here, as Ms. Mecklenburg seeks only to intervene on issues the Former Defendants raise, and not to present independent affirmative claims of her own.

Mecklenburg has applied in a timely fashion; indeed, the only reason she did not do so sooner was to be able to assess the positions of both the Former Defendants and the United States on these two motions once they were fully briefed, in order to determine whether intervention would be necessary in order to properly assert her interests. If either motion is granted she will plainly have an interest in subsequent proceedings, as it seems readily apparent that she would be someone against whom Former Defendants would seek sanctions in the proceeding requested in ECF Doc. # 226, and because she figures prominently, by name, in their request to appoint "special counsel" to investigate criminal contempt. Consideration of an award of sanctions against her, or an investigation and possible prosecution of her for criminal contempt, both plainly contemplate "potential impairment" of Ms. Mecklenburg's interests. And while she agrees with the now-expressed institutional positions of the United States (ECF Doc. # 247) that neither sanctions nor a criminal contempt inquiry are warranted based on the identified conduct, she still has a direct and personal interest, unique to her, in proceedings expressly and directly seeking relief against her.

Ms. Mecklenburg also qualifies for permissive intervention. As noted above, it is plain that Former Defendants' motions are, certainly at least in part, directed at her, providing the required common question(s) of law and fact. Indeed, in evaluating this request the Court should consider that Former

Defendants' claims, so far as they have been developed in their motion, are not just *about* (in part) her conduct, but are aimed (in part) at her directly, seeking the imposition of sanctions against her personally as well as asking for the appointment of a prosecutor to investigate her conduct and possibly to prosecute her (among others) for criminal contempt. It is hard to imagine a more direct interest. And while Ms. Mecklenburg agrees with the position of the United States that, *inter alia*, she did not commit "misconduct," that any errors she made did not harm Former Defendants and occurred with no animus or ill will, and that the pursuit of criminal contempt is both legally and factually unwarranted, should the Court grant either or both motions it should exercise its discretion to allow Ms. Mecklenburg to appear, through counsel, to address the Court, consistent with those positions, on specific aspects of her conduct that further demonstrate her actions were taken with no animus or ill will.

**Limited scope of Ms. Mecklenburg's Involvement.** It is important to note, in considering Former Defendants' requests in the subject motions, that the scope of the activities they would address far exceeds any that Ms. Mecklenburg has been, or has been accused of being, involved with. Specifically, in their initial motion seeking discovery related to a potential sanctions hearing, ECF Doc. # 226, Former Defendants identify six areas of purported misconduct about which they seek discovery and a sanctions

hearing. *Id.* at pp. 4-5. Of those areas, though, with the exception of their initial claim of "multiple instances of severe prosecutorial misconduct before the Grand Jury," *id.* at p. 4, none of the remaining conduct Defendants cite involved Ms. Mecklenburg. As has been well documented, she left the U.S. Attorney's Office in February of 2026 for a detail in Washington, formally withdrew from this case at that time (ECF Doc. #s 83, 86), and was not consulted about or involved in any of the later conduct Former Defendants are pursuing, including the manner in which those grand jury matters were addressed before this Court, redactions of grand jury transcripts, dismissal of the indictment and the filing of a superseding information, or any public statements made or actions taken by the U.S. Attorney's Office at the time of any of those events. And Former Defendants' special counsel motion (ECF Doc. # 227) is similar in scope; it refers to conduct that occurred before the grand jury that involved Ms. Mecklenburg, but in Former Defendants' view (as their motion itself says), "what occurred over the course of this deeply flawed prosecution clearly goes well beyond the mistake of any single Assistant United States Attorney." *Id.* at p. 6. This is especially true of events that took place after she withdrew from the case and left for her Washington detail in February.

Nonetheless, despite her involvement only in grand jury proceedings on three specified days early in the events Former Defendants describe, there is

no question that she is among those against whom Former Defendants seek sanctions and those they would like to see investigated for criminal contempt. While Ms. Mecklenburg agrees with the United States that there is no basis to grant either motion, if the Court does grant one or both of them she requests leave to intervene for the limited purposes described herein.

Based on the positions taken by the United States and Former Defendants now that these motions have been fully briefed, Ms. Mecklenburg plainly has additional legal arguments to make and facts to provide should the Court grant either or both of Former Defendants' motions. In this regard, the Court should be aware that, when notified (through counsel) that she intended to file a motion to intervene, the U.S. Attorney's Office advised that, as a Department of Justice employee, Ms. Mecklenburg was not permitted to file anything on her behalf and could be disciplined or terminated if she did so. Ms. Mecklenburg then notified the U.S. Attorney's Office that she was retiring, effective on September 24, in part so that she can address these issues on her own behalf. The additional legal issues and facts Ms. Mecklenburg would address if permitted to intervene include the following events, summarized here only as examples:

- **October 16 Grand Jury Session and DOJ Grand Jury Guidance**

With respect to the claim that Ms. Mecklenburg improperly "excused"

grand jurors who disagreed with the Government's case, the United States did not point the Court to the Department of Justice, Office of Legal Education's 2023 *Federal Grand Jury Practice Manual* ("GJM"). Specifically, Section 4.4 of the GJM instructs DOJ attorneys, in pertinent part, that "[a]ny jurors who indicate an interest that may interfere with a fair, impartial, and just decision concerning indictment should be asked on the record whether they can put aside any personal bias or prejudice and decide the matter fairly and objectively." It further instructs that "[a]ny jurors who are unable to do so should excuse themselves from deliberating on the case. If a juror declines to do so, and the prosecutor is convinced the juror should be removed, the prosecutor should request that the district court remove the juror from the case."

Ms. Mecklenburg's colloquy with the grand jury on October 16, 2025 was consistent with this guidance. Indeed, Ms. Mecklenburg repeatedly asked whether the grand jurors could listen to the facts and apply the law with an open mind. ECF Doc. #220. At no time did she excuse any grand juror based on his or her "opposition to the government's case." When a grand juror expressly stated that he/she could not listen with an open mind, she correctly (according to the Manual), if perhaps inartfully, told him/her that if he/she could not do so he/she should excuse himself, which he/she then did. That was consistent with the course contemplated by Section 4.4. And the assertion that

Ms. Mecklenburg "excused" a second grand juror is simply inaccurate; that grand juror excused him/herself.

What Ms. Mecklenburg did next further undercuts any suggestion that she was trying to manipulate the composition of the grand jury to produce an indictment. Rather than ask the remaining jurors to indict, Ms. Mecklenburg took advantage of a pause in the presentation to advise the Front Office of the highly unusual, and to her unprecedented, situation regarding the grand jurors who had left the grand jury room. No indictment was sought that day and the session was later discontinued in consultation with and at the direction of the USAO's Criminal Chief.[2]

- **October 16 Re-Presentation After the No-Bill**

The United States accurately notes that on October 9, 2025, the grand jury returned a no-bill, and that on October 16, 2025, Ms. Mecklenburg presented the case again to the same grand jury. But it did not explain that, as required by the Department of Justice Manual, Ms. Mecklenburg expressly and immediately advised the U.S. Attorney and other members of the Front Office of the return of the no-bill on October 9. *See Justice Manual*, Section 9-11.120(A) (following a no bill, the same matter "should not be presented to

[2] It is also worth noting that at least two of the grand jurors who left the October 16 grand jury session returned and were present on October 23, when deliberations actually occurred.

another grand jury or resubmitted to the same grand jury without first securing the approval of the responsible United States Attorney.") Ms. Mecklenburg only re-presented the case on October 16 after receiving the instruction to do so from the U.S. Attorney, which more than satisfies that provision. Indeed, at every turn Ms. Mecklenburg kept the Front Office informed of all developments in the case and followed its instructions.

The United States also omitted the fact that, following her notification to the Front Office of the no bill on October 9, 2026, the U.S. Attorney directed Ms. Mecklenburg to order an expedited copy of the October 9 grand jury session. She did so and promptly sent it to the Front Office, including the U.S. Attorney, as instructed. She did not try to hide anything she said or did in the October 9 grand jury session.

- **Grand Jury Statements Regarding Law Enforcement Presence**

Former Defendants' Reply alleged, for the very first time, that in the October 16 grand jury session Ms. Mecklenburg was "outright lying" when, in a discussion of the source(s) of the video being shown to the grand jurors, she told them that no law enforcement officers were present at the scene in Broadview. ECF Doc. # 255, at 45-46 and n. 17. As Former Defendants well know, the two videos of the events surrounding the now-dismissed charges that were shown to the grand jury do not depict the presence of any law enforcement

officers. Her statement in the grand jury that "No law enforcement was out there, so they didn't take any video" was based on her review of those two videos. When she was later notified by one of the Former Defendants' attorneys that the Former Defendants considered videos of interactions between protestors and local law enforcement earlier that morning also to be relevant, Ms. Mecklenburg personally secured copies of those videos from the local police department and produced them to the Former Defendants. ECF Doc. # 67. Her review of those videos was the first time Ms. Mecklenburg became aware that Broadview Police bodycam and dashcam footage existed of the very initial portion of the confrontation between the large crowd of protesters and the agent's vehicle.

Former Defendants' accusation of a deliberate lie is reckless, irresponsible and without merit. Ms. Mecklenburg had no reason to lie about police presence, especially when she was actually showing the grand jury video of who was present during the incident, and when she personally obtained and produced the very video footage on which Former Defendants now rely. ECF Doc. # 87 at pp-4-8.

- **Transcript Redactions**

Equally reckless and unsupported is Former Defendants' false claim that Ms. Mecklenburg "sat by silently" at the time redactions to grand jury transcripts were discussed with the court. ECF Doc. # 255 at 45. Of course, and

as Former Defendants also well know, when that happened, Ms. Mecklenburg was not then "sitting by" at all, silently or otherwise; she had left for her Washington detail months before, was not involved in any transcript redactions, had withdrawn from the case and received no notice of the hearings, and was not present at any hearings that occurred after she left.

* * * * *

As noted, these are only examples of the issues on which Ms. Mecklenburg will need to present her positions if the Court allows any of the additional proceedings Former Defendants request. If the Court grants either or both of Former Defendants' motions, Ms. Mecklenburg should be permitted to intervene to address these issues and others with additional information she can provide, including addressing other misrepresentations of her role in events.

To the extent that Ms. Mecklenburg made mistakes, as the Court suggested, she owns them. In particular, she fully acknowledges that she should not have vouched in the October 9 grand jury session. She also understands, as she stated on the record in the grand jury on October 23, that she should not have interacted with two of the grand jurors outside the grand jury room. With respect to those brief interactions, however, as noted by the United States in its response, they were not "substantive discussions about the case" and did not constitute comments "designed to cause prejudice." ECF Doc.

# 247, at 30. Moreover, Ms. Mecklenburg immediately contacted the Front Office about those contacts and promptly memorialized them on the record.

Those acknowledgements, however, do not support the much more serious conclusions Former Defendants urge. At bottom, there is no basis for them to smear her with meritless accusations that she lied or acted in bad faith. The record as a whole shows, and if this motion to intervene is granted will further show, a prosecutor who did not act with animus or ill will, and certainly did not engage in any conduct in contempt of court.

Accordingly, Intervenor-Movant Sheri H. Mecklenburg requests, should the Court grant either or both of Former Defendants' motions (ECF Doc. #s 226 and 227), that it grant her leave to intervene in this case as to any further related proceedings on or resulting from those motions.

Respectfully submitted,

*/s/ Sergio E. Acosta*

Sergio E. Acosta
Joel D. Bertocchi
AKERMAN LLP
71 South Wacker Drive,
47th Floor
Chicago, IL 60606
(312) 634-5700
sergio.acosta@akerman.com
joel.bertocchi@akerman.com

*Counsel for Intervenor-Movant*
*Sheri H. Mecklenburg*

## CERTIFICATE OF SERVICE

I certify that on September 24, 2026 the foregoing pleading was filed electronically using the Court's CM/ECF system, which will accomplish service on all counsel of record.

*/s/ Joel D. Bertocchi*